**McGuireWoods LLP**
Michael D. Mandel (SBN 216934)
    Email: mmandel@mcguirewoods.com
Ashley R. Li (SBN 317305)
    Email: ali@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone: (310) 315-8200
Facsimile: (310) 315-8210

Sylvia J. Kim (SBN 258363)
    Email:  skim@mcguirewoods.com
2 Embarcadero Center, Suite 1300
San Francisco, CA  94111
Telephone:  (415) 844-9944
Facsimile:  (415) 844-9922

Attorneys for Defendant
BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA HARRISON, an individual, on behalf of herself and all others similarly situated<br><br>          Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A., a business entity, form unknown; and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 3:19-cv-00316-LB<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT:***<br><br>**(1)   NOTICE OF MOTION**<br><br>**(2)   REQUEST FOR JUDICIAL NOTICE**<br><br>**(3)   MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Filed Under Separate Covers*<br><br>**(4)   DECLARATION OF SYLVIA J. KIM**<br><br>**(5)   [PROPOSED] ORDER**<br><br>**Date:      December 5, 2019**<br>**Time:      9:30 a.m.**<br>**Crtrm.:   B – 15th Floor**<br>**Judge:    Hon. Laurel Beeler** |

*Defendant does not waive and expressly reserves its right to further move for summary judgment or partial summary judgment as to any or all of Plaintiff's claims before or after the close of fact discovery, in accordance with the June 11, 2020 dispositive motion hearing deadline.

122549135.8

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

NOTICE OF MOTION AND MOTION ............................................................................. vii

REQUEST FOR JUDICIAL NOTICE .............................................................................. ix

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I.      INTRODUCTION .................................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................................... 2

    A.   PLAINTIFF'S EMPLOYMENT WITH THE BANK .................................................. 2

    B.   THE BANK'S PAY PRACTICES AND PLAINTIFF'S WAGE STATEMENTS ..................... 2

    C.   PLAINTIFF COMMENCES THIS ACTION AGAINST THE BANK ................................ 2

III.    LEGAL ARGUMENT ............................................................................................. 3

    A.   LEGAL STANDARDS APPLICABLE TO SUMMARY JUDGMENT MOTIONS ................... 3

    B.   PLAINTIFF'S FIFTH CAUSE OF ACTION FOR FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS FAILS AS A MATTER OF LAW ............................... 3

        1.   Plaintiff's Claim Is Time-Barred And/Or Substantively Meritless ............. 3

        2.   Plaintiff Has Not Suffered Any Cognizable Injury ..................................... 4

        3.   Plaintiff's Wage Statements Accurately Reported The Wages Paid ........... 5

        4.   Plaintiff Cannot Prove That The Bank Engaged In Knowing And Intentional Violations Of Section 226(a) ..................................................... 7

        5.   Cal. Lab. Code § 226.7 Payments Are Not Subject To Reporting Under Section 226(a) .................................................................................... 8

    C.   PLAINTIFF'S SIXTH CAUSE OF ACTION FOR WAITING TIME PENALTIES FAILS TO THE EXTENT IT IS PREDICATED ON A PURPORTED FAILURE TO PAY MEAL AND REST BREAK PREMIUMS AT TERMINATION ...................................................... 11

    D.   PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR UCL VIOLATIONS FAILS ............... 13

        1.   Monetary Remedies Under The UCL Are Limited To Restitutionary Relief .......................................................................................................... 13

        2.   The UCL Claim Fails To The Extent It Is Predicated On A Failure To Provide Accurate Itemized Wage Statements Or A Failure To Pay Final Wages In A Timely Manner Because Wage Statement Penalties And Waiting Time Penalties Are Not Recoverable As Restitution Under The UCL ...................................................................... 13

3.     The UCL Claim Also Fails To The Extent It Is Predicated On A
Failure To Pay Meal And Rest Break Premiums ........................................ 14

IV.     CONCLUSION ................................................................................................................. 15

ii
DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Angeles v. U.S. Airways, Inc.*,
  2013 WL 622032 (N.D. Cal. Feb. 19, 2013)................................................................4

5

6

*Avina v. Mariott Vacations Worldwide Corp.*,
  2019 WL1785448 (C.D. Cal. Feb 13, 2019)................................................................7

7

8

*Campbell v. PriceWaterhouseCoopers*,
  2008 WL 3836972 (E.D. Cal. Aug. 14, 2008)...........................................................14

9

*Corder v. Houston's Restaurants, Inc.*,
  424 F.Supp.2d 1205 (C.D. Cal. 2006).......................................................................10

10

11

*De La Torre v. American Red Cross*,
  2013 WL 5573101 (C.D. Cal. Oct. 9, 2013) ............................................................4, 5

12

*Francisco v. Emeritus Corp.*,
  2017 WL 7790038 (C.D. Cal. July 14, 2017) ...........................................................15

13

14

*Guerrero v. Halliburton Energy Servs., Inc.*,
  2016 WL 6494296 (E.D. Cal. Nov. 2, 2016) ............................................................12

15

16

*Guerrero v. Halliburton Energy Servs., Inc*,
  231 F.Supp.3d 797 (E.D. Cal. 2017).....................................................................14, 15

17

*Henryhand v. Digital Systems LLC*,
  2014 WL 11728721 (C.D. Cal. May 19, 2014)......................................................11, 12

18

19

*Jones v. Spherion Staffing LLC*,
  2012 WL 3264081 (C.D. Cal. Aug. 7, 2012)......................................................10, 11, 12

20

21

*Magadia v. Wal-Mart Associates, Inc.*,
  2019 WL 2317181 (N.D. Cal. May 31, 2019) ...........................................................7

22

23

*Nguyen v. Baxter Healthcare Corp.*,
  2011 WL 6018284 (C.D. Cal. Nov. 28, 2011) .......................................................9, 10

24

*Parson v. Golden State FC, LLC*,
  2016 WL 1734010 (N.D. Cal. May 2, 2016) ...........................................................15

25

26

*Pena v. Taylor Farms Pacific, Inc.*,
  2014 WL 1665231 (E.D. Cal. Apr. 23, 2014) ...........................................................9

27

*Pulido v. Coca Cola Enters., Inc.*,
  2006 WL 1699328 (C.D. Cal. May 25, 2006).........................................................10

28

*Radobenko v. Automated Equip. Corp.*,
  520 F.2d 540 (9th Cir. 1975).................................................................................3

*Rodriguez v. Old Dominion Freight Line, Inc.*,
  C.D. Cal. Case No. 13-cv-00891 DSF (June 18, 2013) .............................................12

*Rubin v. Wal-Mart Stores, Inc.*,
  599 F.Supp.2d 1176 (N.D. Cal. 2009) ....................................................................14

*Ruelas v. Costco Wholesale Corp.*,
  67 F.Supp.3d 1137 (N.D. Cal. 2014) ......................................................................9

*Sanders v. Old Dominion Freight Line, Inc.*,
  C.D. Cal. Case No. 18-cv-00688 DSF (Sept. 13, 2018).............................................14

*Sherman v. Schneider*,
  C.D. Cal. Case No. 18-cv-08609-AB (Mar. 6, 2019) ............................................6, 7

*Singletary v. Teavana Corp.*,
  2014 WL 1760884 (N.D. Cal. Apr. 2, 2014) ...........................................................12

*Soratorio v. Tesoro Ref. & Mktg. Co., LLC*,
  2017 WL 1520416 (C.D. Cal. Apr. 26, 2017)..........................................................12

*Soratorio v. Tesoro Ref. & Mktg. Co., LLC*,
  2017 WL 8220415 (C.D. Cal. Sept. 11, 2017) ........................................................14

*In re Wal-Mart Stores, Inc.*,
  505 F.Supp.2d 609 (N.D. Cal. 2007) ......................................................................14

*White v. Starbucks Corp.*,
  497 F.Supp.2d 1080 (N.D. Cal. 2007) .....................................................................3

*Woo v. Home Loan Group, L.P.*,
  2007 WL 6624925 (S.D. Cal. July 27, 2007)...........................................................13

**State Cases**

*Brewer v. Premier Golf Prop., LP*,
  168 Cal.App.4th 1243 (2008)...................................................................................9

*Brinker v. Superior Court*,
  53 Cal.4th 1004 (2012).........................................................................................10

*Clark v. Sup. Ct.*,
  50 Cal.4th 605 (2010)............................................................................................13

*Driscoll v. Granite Rock Co.*,
  Santa Clara Sup. Ct. Case No. 1-08-CV-103426 (Sept. 20, 2011) .............................8

*Jaimez v. Daiohs USA, Inc.*,
    181 Cal.App.4th 1286 (2010)..................................................................................................4

*Kirby v. Immoos Fire Protection, Inc.*,
    53 Cal.4th 1244 (2012)..........................................................................................10, 11, 12

*Ling v. P.F. Chang's China Bistro, Inc.*,
    245 Cal.App.4th 1242 (2016)..............................................................................................12

*Maldonado v. Epsilon Plastics, Inc.*,
    22 Cal.App.5th 1308 (2018)..................................................................................................6

*Murphy v. Kenneth Cole Productions, Inc.*,
    40 Cal.4th 1094 (2007)...........................................................................................9, 10, 12

*Naranjo v. Spectrum Security Services, Inc.*,
    ___ Cal.Rptr. ___, 2019 WL 4686516. (Cal. Ct. App. Sept. 26, 2019)..............................11, 12

*Pineda v. Bank of America, N.A.*,
    50 Cal.4th 1389 (2010)........................................................................................................14

*Price v. Starbucks Corp.*,
    192 Cal.App.4th 1136 (2011)................................................................................................4

*Soto v. Motel 6 Operating, L.P.*,
    4 Cal.App.5th 385 (2016)...........................................................................................5, 6, 8

**State Statutes**

Cal. Bus. & Prof. Code § 17200.................................................................................1, 13, 14, 15

Cal. Code Civ. P. § 340(a) ...............................................................................................................3

Cal. Lab. Code § 201...............................................................................................11, 12, 13, 14

Cal. Lab. Code § 203.........................................................................................11, 12, 13, 14, 15

Cal. Lab. Code § 226(a) .....................................................................................4, 5, 7, 8, 9, 10

Cal. Lab. Code § 226(e) ....................................................................................3, 4, 5, 7, 8

Cal. Lab. Code § 226(e)(1)...........................................................................................................4, 7

Cal. Lab. Code § 226(e)(2)(B) ....................................................................................................4

Cal. Lab. Code § 226.7.................................................................8, 9, 10, 11, 12, 13, 14, 15

Cal. Lab. Code § 226.7(b)..............................................................................................................9

Cal. Lab. Code § 226(e)(2)(B)(i) ................................................................................................5

Cal. Lab. Code § 226(e)(2)(B)(ii) ......................................................................................5

**Federal Rules**

Fed. R. Civ. P. 56(c).........................................................................................................3

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

## NOTICE OF MOTION AND MOTION

**TO THE HONORABLE LAUREL BEELER, MAGISTRATE JUDGE OF THE ABOVE-CAPTIONED DISTRICT COURT, AND TO PLAINTIFF ANDREA HARRISON AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on December 5, 2019 at 9:30 a.m. in Courtroom B, 15th Floor of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Bank of America, N.A. ("Defendant" or the "Bank") will and hereby does move the Court, pursuant to Fed. R. Civ. P. 56, for an Order granting partial summary judgment of claims and/or issues raised in Plaintiff Andrea Harrison's ("Plaintiff") First Amended Complaint.  The Motion is brought on the following grounds:

1. Plaintiff's Fifth Cause of Action for failure to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226 fails as a matter of law because:

    A.    Plaintiff's claim is time-barred and/or substantively meritless;

    B.    Plaintiff has not suffered a cognizable injury; and/or

    C.    Plaintiff's wage statements were accurate as to the wages that were *actually paid* to her in each corresponding pay period, which is all that is required under the statute; and/or

    D.    Plaintiff cannot prove that the Bank engaged in a knowing and intentional failure to provide accurate itemized wage statements.

2. Plaintiff's Sixth Cause of Action for failure to pay all wages due upon termination fails as a matter of law to the extent it is predicated on a purported failure to pay meal and rest break premiums at termination because such payments are not "wages" that are subject to the final pay timing requirements under the Labor Code.

3. Plaintiff's Seventh Cause of Action for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), fails as a matter of law to the extent it is predicated on purported wage statement, final pay, and meal and rest break violations, because the remedies for such violations are not recoverable as restitution under the UCL.

1    This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points

2   and Authorities, Request for Judicial Notice, Declaration of Sylvia J. Kim and exhibits thereto, the

3   Court's files and records in this action, such matters of which the Court may take judicial notice, and

4   such other and further evidence and arguments as may be presented at or before the hearing on this

5   Motion.

6

7    DATED: October 25, 2019              MᴄGᴜɪʀᴇWᴏᴏᴅs LLP

8
                                         By:  /s/ Sylvia J. Kim
9                                                Michael D. Mandel
                                                 Sylvia J. Kim
10                                               Ashley R. Li

11                                       Attorneys for Defendant
                                         BANK OF AMERICA, N.A.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
## **<u>REQUEST FOR JUDICIAL NOTICE</u>**

2
**TO THE HONORABLE LAUREL BEELER, MAGISTRATE JUDGE OF THE ABOVE-**

3
**CAPTIONED DISTRICT COURT, AND TO PLAINTIFF ANDREA HARRISON AND HER**

4
**ATTORNEYS OF RECORD:**

5
        Pursuant to Fed. R. Evid. 201(b) and (d), Defendant Bank of America, N.A. ("Defendant" or

6
the "Bank") hereby requests that the Court take judicial notice of the following documents in support

7
of its Motion for Partial Summary Judgment (the "Motion"):

8

9
        <u>Exhibit A</u>:      March 6, 2019 Order entered in *Sherman* v. *Schneider National Carriers, Inc.*,

10
                          United States District Court, Central District of California, Case No. 18-cv-

11
                          08609-AB (JCx), Dkt. #23 therein.

12

13
        <u>Exhibit B</u>:      June 18, 2013 Order entered in *Rodriguez v. Old Dominion Freight Line, Inc.*,

14
                          United States District Court, Central District of California, Case No. 13-cv-

15
                          00891 DSF (RZx), Dkt. #31 therein.

16

17
        <u>Exhibit C</u>:      September 13, 2018 Order entered in *Sanders v. Old Dominion Freight Line,*

18
                          *Inc.*, United States District Court, Central District of California Case No. 18-

19
                          cv-00688 DSF (SHKx), Dkt. #52 therein.

20

21
        <u>Exhibit D</u>:      The Statement of Decision filed in the Superior Court of California, County of

22
                          Santa Clara, on September 20, 2011 in Case No.: 1-08-CV-103426 therein,

23
                          entitled *Brian Driscoll, et. al. v. Graniterock Company.*

24

25
        <u>Exhibit E</u>:      The California Department of Industrial Relations, Enrolled Bill Rep. on A.B.

26
                          No. 3731 (1976) from the legislative history on Cal. Lab. Code § 226.

27

28

Exhibit F:    The Assembly Committee on Labor Relations, Analysis of A.B. No. 3731 (1976) from the legislative history on Cal. Lab. Code § 226.

Exhibit G:    The California Department of Industrial Relations Division of Labor Standards Enforcement ("DLSE") Opinion Letter Re: Electronic Itemized Wage Statements (July 6, 2006).

Exhibit H:    Excerpts of the transcript of the Industrial Welfare Commission ("IWC") Public Hearing of June 30, 2000, available at URL http://www.dir.ca.gov/IWC/PUBHRG6302000.pdf.

Defendant's request is made pursuant to Fed. R. Evid. Rule 201(b) and (d) on the grounds that the foregoing documents are proper subjects for judicial notice because they are records of this Court, other United States District Courts and/or state courts, the California Division of Labor Standards Enforcement, the California Legislature, and/or their contents are not subject to reasonable dispute and they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See, e.g.*, *Stoddart v. Express Servs., Inc.*, 2015 WL 5522142, *3 (E.D. Cal. Sept. 16, 2015) (taking judicial notice of plaintiff's letter to the LWDA because "plaintiff's PAGA claims depend on the sufficiency of the letters' contents and plaintiff does not dispute the letters' authenticity"); *Ovieda v. Sodexo Operations, LLC,* 2013 WL 3887873, *2 (C.D. Cal. July 3, 2013) (taking judicial notice of PAGA notice letters under similar circumstances).

DATED: October 25, 2019          **McGuireWoods LLP**


By:  /s/ Sylvia J. Kim
          Michael D. Mandel
          Sylvia J. Kim
          Ashley R. Li

          Attorneys for Defendant
          BANK OF AMERICA, N.A.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiff Andrea Harrison worked as a Teller at Defendant Bank of America, N.A.'s ("Defendant" or "the Bank") Auburn, California financial center from August 2014 until she went on a leave of absence in **August 2017,** after which she did <u>not</u> return to work for the Bank.  Rather, she remained on a leave of absence until the Bank terminated her employment in June 2018.

As we discuss below, Plaintiff's Fifth Cause of Action in her First Amended Complaint ("FAC") for wage statement penalties pursuant to Cal. Lab. Code § 226 ("Section 226") fails as a matter of law because Plaintiff cannot demonstrate that she experienced a violation of the Labor Code's wage statement requirements during the one-year statute of limitations period applicable to her claim.  Indeed, Plaintiff cannot credibly claim that the Bank failed to itemize wages properly that she did not earn during that period when she was on a leave of absence from the Bank.  Therefore, Plaintiff's wage statement penalties claim is time-barred and/or substantively meritless.  Further, Plaintiff's claim fails for the additional reasons that (1) she cannot establish that she suffered a cognizable injury to warrant imposition of penalties; (2) her wage statements accurately reflected the wages she was actually paid in the corresponding pay period, which is all that is required under the statute; and/or (3) she cannot establish the requisite element that the Bank engaged in a knowing and intentional violation of the wage reporting requirements.

Plaintiff's Sixth Cause of Action for waiting time penalties pursuant to Cal. Lab. Code § 203 ("Section 203") fails as a matter of law to the extent it is predicated on a purported failure to pay meal and rest break premiums at termination because such payments are not "wages" that are subject to the final pay timing requirements of the Labor Code.

Plaintiff's Seventh Cause of Action for unfair competition in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"), fails as a matter of law to the extent it is predicated on purported wage statement violations, final pay timing violations, and meal and rest break violations, because the remedies for such violations are statutory penalties and/or damages that are not recoverable as restitution under the UCL.

Accordingly, as we discuss below, the Court should grant summary judgment in favor of the

1  Bank and against Plaintiff on her Fifth, Sixth and Seventh Causes of Action.

2  ## II.  STATEMENT OF FACTS

3  ### A.  PLAINTIFF'S EMPLOYMENT WITH THE BANK

4  Plaintiff began working for the Bank in or around August 2014 as a non-exempt employee.

5  *See* Deposition of Andrea Harrison ("Plt. Depo.")[1] at 50:24-51:9; FAC at ¶ 9.  From August 2014

6  until her termination on June 15, 2018, she worked as a Teller for the Bank in its Auburn, California

7  financial center.  Plt. Depo. at 36:13-37:23, 51:10-19; FAC at ¶¶ 5, 9.  However, Plaintiff stopped

8  actively work for the Bank when she commenced a leave of absence on **August 24, 2017**, and she

9  remained off of work from then until her termination.  *Id.* at 32:12-24, 336:13-17.  As such, it is

10 undisputed that Plaintiff did not perform any off-the-clock work and was not entitled to (nor missed

11 any) meal or rest breaks on and after August 24, 2017.  *Id.* at 32:12-24, 336:4-25, 342:15-343:3.

12 ### B.  THE BANK'S PAY PRACTICES AND PLAINTIFF'S WAGE STATEMENTS

13 At all times during Plaintiff's employment with the Bank, she was paid on a biweekly basis

14 and issued electronic wage statements for each biweekly pay period.  Plt. Depo. at 321:8-12, 322:17-

15 20.  Plaintiff has not utilized her wage statements for purposes of obtaining a line of credit since 2014.

16 *Id.* at 349:4-20.  In fact, Plaintiff has not provided her wage statements to any third parties for any

17 other reason since 2014, *id.* at 350:11-14, and she cannot identify any monetary damages she has

18 incurred due to the information that was reported on her wage statement.  *Id.* at 350:21-351:3.

19 ### C.  PLAINTIFF COMMENCES THIS ACTION AGAINST THE BANK

20 On December 24, 2018, Plaintiff filed her FAC, alleging that the Bank failed to: (1) pay

21 Plaintiff for all hours worked because her manager prevented her from recording time outside of her

22 scheduled hours; (2) provide timely and uninterrupted meal and rest periods; (3) pay meal and rest

23 break premiums for non-compliant meal or rest periods; (4) furnish accurate itemized wage

24 statements; and (5) timely pay upon termination all meal and rest period premiums and wages for all

25 hours worked.  Plaintiff also alleges that all of the foregoing constitute unfair business practices and

26 seeks restitution under the UCL.

27 ──────────────────

28 [1] All deposition excerpts cited herein are attached to the Declaration of Sylvia J. Kim.

## III.   LEGAL ARGUMENT

### A.   LEGAL STANDARDS APPLICABLE TO SUMMARY JUDGMENT MOTIONS.

Summary judgment is appropriate if the pleadings and affidavits show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  To defeat summary judgment, the nonmoving party must produce "significant probative evidence" outside the pleadings which would convince a rational trier of fact that a genuine issue of material fact exists.  *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1082 (N.D. Cal. 2007) (Walker, C.J.).  The mere existence of a factual dispute will not automatically necessitate denial of the motion; rather, only factual disputes that are material can preclude entry of summary judgment. *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543-44 (9th Cir. 1975).  A fact is material if it is essential to the proper disposition of the claim.  *Id.* at 540.  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *White*, 497 F.Supp.2d at 1082.

### B.   PLAINTIFF'S FIFTH CAUSE OF ACTION FOR FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS FAILS AS A MATTER OF LAW.

Plaintiff's wage statement claim is based on a ostensible derivative theory, claiming that her hours and pay were inaccurate because her wage statements failed to list wages she *should have been paid* but was not paid due to the off-the-clock work and meal and rest break violations alleged in her FAC.  *See* FAC at ¶¶ 66, 67.  Plaintiff's claim fails as a matter of law.

#### 1.   Plaintiff's Claim Is Time-Barred And/Or Substantively Meritless.

Plaintiff's claim for wage statement penalties derives from her contention that the Bank failed to itemize her unpaid wages for the time she worked off-the-clock and/or through meal or rest breaks. But, such a claim is subject to a one-year statute of limitations,[2] Cal. Code Civ. P. § 340(a), and Plaintiff cannot credibly claim that the Bank failed to itemize wages properly that she did not earn

---

[2] Plaintiff may argue that a three-year limitations period should apply to her claim for damages under Cal. Lab. Code § 226(e).  Even assuming that to be the case, her claim still fails as a matter of law because (1) she does not allege a claim for damages in connection with this cause of action in her FAC, and (2) notwithstanding, she cannot identify any damages that have resulted to her from her wage statements.  *See* Plt. Depo. at 350:21-351:3.

during the one-year period prior to the filing of her Complaint (October 26, 2017 through October 26, 2018).  Plt. Depo. at 32:12-24, 336:4-25, 342:15-343:3.  Indeed, Plaintiff's theory is untenable given that she was on a leave of absence during the one-year limitations period applicable to her claim for wage statement penalties, during which Plaintiff does not contend that the Bank failed to pay her any wages or to provide her with meal or rest breaks.  Plt. Depo. at 32:12-24, 336:4-25, 342:15-343:3.  Because Plaintiff has not suffered the purported violations ostensibly giving rise to her Section 226 claim during the applicable limitations period, the claim fails as a matter of law.

### 2.  Plaintiff Has Not Suffered Any Cognizable Injury.

Plaintiff is not entitled to any damages or statutory penalties under Cal. Lab. Code § 226(e)(1) because she cannot establish a required element: that she "***suffer[ed] injury as a result*** of" any such violation. *See* Cal. Lab. Code § 226(e)(1) (emph. added); *Price v. Starbucks Corp.*, 192 Cal.App.4th 1136, 1142-43 (2011).  To establish this element, Plaintiff must allege facts to show that she has suffered a "cognizable injury" amounting to *something more than not receiving a compliant itemized wage statement*.[3]

Cal. Lab. Code § 226(e) ("Section 226(e)") provides that an employee is deemed to suffer an injury when there is an inaccuracy in any of the required information under Cal. Lab. Code § 226(a) *and* the employee cannot "promptly and easily determine from the wage statement alone ... the amount of the gross wages *paid* to the employee *during the pay period*." Cal. Lab. Code § 226(e)(2)(B) (emph. added).  In *De La Torre v. American Red Cross*, 2013 WL 5573101, *6 (C.D. Cal. Oct. 9, 2013), the court dismissed the plaintiff's Section 226 claims for failure to sufficiently allege a cognizable injury under Section 226(e) because, while the plaintiff alleged that the failure to include her bonus payments on her paychecks constituted an inaccuracy, she did not allege that she was unable to "promptly and easily determine" from the wage statement "the amount of gross wages

---

[3] *See Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, *10 (N.D. Cal. Feb. 19, 2013) (Breyer, J.) ("A plaintiff must adequately plead an injury arising from an employer's failure to provide full and accurate wage statements, and the omission of the required information alone is not sufficient."); *Jaimez v. Daiohs USA, Inc.,* 181 Cal.App.4th 1286, 1306 (2010) ("The injury requirement in section 226, subdivision (e), cannot be satisfied simply if one of the nine itemized requirements in section 226, subdivision (a) is missing from a wage statement").

or net wages actually *paid to her during the pay periods at issue*." (Emph. added).  As a result, the court held that the plaintiff had "not alleged actual injury resulting from the inaccuracy on her wage statement as required by Section 226."  *Id.*  Thus, in order to allege a cognizable injury under Section 226(e), Plaintiff must allege that her wage statements were *inaccurate as to the wages actually paid to her* – which they **undisputedly were not**.  Plt. Depo. at 344:17-345:1, 345:20-346:2, 347:9-349:2. Therefore, there is no genuine dispute that Plaintiff has suffered no injury resulting from her wage statements.

Nor can Plaintiff prove injury based on her allegation that she was "not aware that [she was] owed and not paid compensation for missed rest periods and on-duty meal periods, and for all hours worked," *see* FAC, ¶ 68, because, as noted above, she did not work *any hours* for the Bank during the applicable limitations period.  Plt. Depo. at 32:12-24, 336:4-25, 342:15-343:3.

Accordingly, Plaintiff cannot establish that she suffered any damages or injury as a result of the alleged receipt of inaccurate wage statements.

### 3. Plaintiff's Wage Statements Accurately Reported The Wages Paid.

Plaintiff's claim for inaccurate wage statement penalties fails for the separate and additional reason that, under Section 226(e), employers are only required to accurately report wages that the employee is *actually being paid*.  The requirements in Cal. Lab. Code § 226(a) ("Section 226(a)") apply only to *wages that actually were paid*, not to wages that should have been paid.  In other words, a Section 226(a) claim arises only when an employer fails to accurately itemize the wages that were *actually paid* to the employee during the corresponding pay period.  *See* Cal. Labor Code § 226(e)(2)(B)(i)-(ii) (emph. added); *De La Torre*, 2013 WL 5573101, at *6.  Indeed, "this interpretation is also supported by section 226, subdivision (a)'s statutory purpose, which is to *document* the *paid wages* to ensure the employee is fully informed regarding the calculation of *those wages*."  *Soto v. Motel 6 Operating, L.P.*, 4 Cal.App.5th 385, 392 (2016) (emph. in original).  The *Soto* court went on to note that "'[t]he purpose of requiring greater wage stub information is to insure that employees are adequately informed of *compensation received* and are not shortchanged by their employers.'"  *Id.* (quoting Assem. Com. on Labor and Employment, Analysis of Sen. Bill No. 1255 (2011–2012 Reg. Sess.) as amended May 15, 2012, p. 3, italics added).  "Consistent with this purpose,

1   an employer is required to identify only those statutory items that are *part of the employee's current*

2   *monetary compensation* [and] must provide the employee with an itemized statement identifying the

3   specific wages *being paid* at the time of the payment…" *Id.* at 392-93.

4       In *Maldonado v. Epsilon Plastics, Inc.,* 22 Cal.App.5th 1308, 1336 (2018), the court reversed

5   a trial court award of wage statement penalties where the wage statements accurately reflected the

6   wages actually paid to the employee.  In doing so, the court reasoned that the implementation of an

7   unlawful alternative workweek schedule resulting in an underpayment of wages "does not mandate

8   that [employees] also receive penalties for the wage statements which accurately reflected their

9   compensation under the rates at which they had worked at the time." *Id.*  The court held that "it is

10  illogical to think" the Legislature intended to create wage statement penalties in this circumstance;

11  "plaintiffs' counterargument boils down to the proposition that any failure to pay overtime at the

12  appropriate rate also generates a wage statement injury justifying the imposition of wage statement

13  penalties—an apparent unintentional double recovery." *Id.*

14      The court in *Sherman v. Schneider*, C.D. Cal. Case No. 18-cv-08609-AB (JCx) (Mar. 6,

15  2019), followed this reasoning when it dismissed the plaintiff's inaccurate wage statement claim

16  *with prejudice* on the basis that the plaintiff had not alleged that his wage statements failed to

17  accurately report the wages actually paid to him in the corresponding pay period.  Instead, the

18  plaintiff had alleged that the defendant violated Section 226 because the employer's wage statements

19  omitted unpaid time employees spent on the job during their breaks when they were allegedly

20  required to be on call.  RJN, Exh. A (*Sherman* Order) at p. 10.  The *Sherman* court held that the

21  Section 226 claim failed, not only because it was wholly derivative of the plaintiff's other claims

22  that failed to state a claim, but because "[t]he purpose of section 226 is to 'document the *paid wages*

23  to ensure the employee is fully informed regarding the calculation of those wages.'" *Id.* (quoting

24  *Maldonado*, 22 Cal.App.5th at 1337).  As the plaintiff had "alleged only that the amount he was *paid*

25  was incorrect, *not* that the wage statements *inaccurately reflected* the wages he was paid," the court

26  dismissed the claim with prejudice.  *Id.* (emph. added).

27      Here, there is no dispute that Plaintiff's wage statements accurately set forth the wages

28  *actually paid to her during each corresponding pay period* in which she earned any wages.  Rather,

Plaintiff alleges that her wage statements were inaccurate because they failed to list wages she should have been paid but was not paid, and thus predicates her claim solely on the non-inclusion of other wages that she is allegedly owed.  However, the mere failure to include compensation that the employee claims she *should have* been paid does not give rise to Section 226(e) penalties.  *Cf. Avina v. Mariott Vacations Worldwide Corp.*, 2019 WL1785448, *6 (C.D. Cal. Feb 13, 2019) ("It is not enough that [plaintiff] alleges that the statements were inaccurate in order to show injury.").  Thus, even if Plaintiff was entitled to additional compensation that was not reflected on her wage statements, she cannot establish that her wage statements were inaccurate, as wage statements do not violate § 226(a) even if the *amount paid was incorrect*."  *See* RJN, Exh. A (*Sherman* Order) at p. 10 (emph. added).  Accordingly, the claim fails as a matter of law on this basis as well.

### 4. Plaintiff Cannot Prove That The Bank Engaged In Knowing And Intentional Violations Of Section 226(a).

Plaintiff's wage statement claim fails for the additional reason that she cannot prove the Bank engaged in a knowing and intentional violation of Section 226(a).  To seek actual damages or penalties for wage statement violations, a Plaintiff must prove that the Bank committed "*knowing* and *intentional* failure[s] … to comply" with Section 226(a).  *See* Cal. Lab. Code § 226(e)(1) (emph. added).

Recently, in *Magadia v. Wal-Mart Associates, Inc.*, 2019 WL 2317181, *13 (N.D. Cal. May 31, 2019) (Koh, J.), Judge Koh held that "in order to be liable, [the employer] must have willfully intended to issue wage statements that were out of compliance with § 226."  Therefore, "an employer's good faith belief that it is not violating § 226 precludes a finding of a knowing and intentional violation."  *Id.* at *15.

Here, even if the Court should ultimately find the Bank liable for unpaid wages and meal and rest break violations (which it should not), Plaintiff cannot prove that the Bank willfully issued wage statements that were out of compliance.  Indeed, Plaintiff cannot refute that the Bank had a good faith basis for believing that its wage statements complied with Section 226(a) because, as discussed above, they accurately reported all of the wages that were actually paid to Plaintiff in the corresponding pay period (to the extent any such wages were paid during Plaintiff's leave of absence).

**5.    Cal. Lab. Code § 226.7 Payments Are Not Subject To Reporting Under Section 226(a)**

To the extent Plaintiff seeks recovery under Section 226(e) for the purported non-payment of meal and rest break premiums pursuant to Cal. Lab. Code §226.7 ("Section 226.7"), this claim fails, in part, because Section 226.7 payments are *not* included in the list of what *must be itemized on wage statements* under Section 226(a).

First, neither the plain language nor the legislative history of Section 226(a) requires that wage statements itemize such payments for missed meal or rest breaks.  Section 226(a) requires employers to list only nine specific items on an employee's wage statement, none of which include Section 226.7 payments.[4]    Section 226(a) "is highly detailed," and "[w]hen a statute omits a particular category from a more generalized list, a court can reasonably infer a specific legislative intent not to include that category within the statute's mandate."  *Soto*, 4 Cal.App.5th at 391.  Furthermore, if Section 226.7 payments were included in that list, an employee would be further incentivized to forgo his meal and rest breaks in order to obtain a *double recovery*, one in the form of a missed meal and rest break payment under Section 226.7 and another in the form of an inaccurate wage statement penalty under Section 226.  But, this is not the result intended by the California Legislature in enacting Section 226(a).  As the legislative history of Section 226(a) indicates, "the purpose of Section 226 was for transparency, *not* double recovery."[5]  Thus, Section

_____

[4] Section 226(a) requires employers to itemize: (1) gross wages earned; (2) total hours worked; (3) piece-rate units earned; (4) deductions; (5) net wages earned; (6) inclusive dates of pay period; (7) employee's name and social security number or employee identification number; (8) employer's name and address; and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.  Cal. Labor Code § 226(a).

[5] *See* RJN Exh. D, Statement of Decision in *Driscoll v. Granite Rock Co.*, Santa Clara Sup. Ct. Case No. 1-08-CV-103426 (Sept. 20, 2011) at p. 21 (emph. added).  *See also* RJN, Exh. E (Cal. Dept. of Indus. Rels., Enrolled Bill Rep. on A.B. 3731 (1976)) ("Employees would benefit by having an itemized statement of deductions which would include both the gross and net wages so that they will be in a better position to evaluate the *effect of payroll deductions* and their accuracy.") (emph. added); RJN, Exh. F (Assem. Com. on Lab. Rels., Analysis of A.B. 3731 (1976)), p. 1 ("The purpose of requiring greater wage stub information is to insure that employees are adequately informed of compensation *received* and are not shortchanged by their employers.") (emph. added).  Moreover, although the opinion letters of the California Division of Labor Standards Enforcement ("DLSE") are not binding on this Court, they have nevertheless expressed agreement that *transparency* is the goal of Section 226.  *See, e.g.*, RJN, Exh. G (DLSE Op. Ltr. Re: Electronic Itemized Wage Stmts.

226(a) "is intended to ensure that employers provide accurate itemized wage statements to employees, *not to govern employers' obligations with respect to meal [or rest] periods*." *See* RJN, Exh. D, *Driscoll* Stmt. of Dec. at p. 22 (emph. added).

Second, Plaintiff's claim also fails because **Section 226.7 payments "*are not wages earned for the purposes of Section 226(a)*"** because they are actually *liquidated damages*. *Nguyen v. Baxter Healthcare Corp.*, 2011 WL 6018284, *8 (C.D. Cal. Nov. 28, 2011) (emph. added). *See also Pena v. Taylor Farms Pacific, Inc.*, 2014 WL 1665231, *9 (E.D. Cal. Apr. 23, 2014) (holding that Section 226.7 payments "need not be itemized" on wage statements). As the California Supreme Court first acknowledged in *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1113 (2007), "the Section 226.7 payment[ ] … *compensates* the employee for *events other than time spent working*." (Emph. added). Although *Murphy* held that the measure of the remedy provided under Section 226.7 is a "premium wage" for *statute of limitations* purposes, the California Supreme Court concurrently recognized that it is "an amount of compensation" for "*noneconomic injuries*." *Murphy*, 40 Cal.4th at 1113.[6] Indeed, the Section 226.7 payment does not in any way correlate to the amount of time that an employee actually works through a meal or rest break. Rather, the same fixed sum of one full hour of pay is owed, regardless of whether the employee works through only a portion of the meal or rest break or through the entire break.[7] *See* Cal. Lab. Code § 226.7(b);

---

(July 6, 2006)), p. 2 ("The purpose of the wage statement requirement is to provide *transparency* as to the *calculation* of wages.") (emph. added).

[6] *See also Brewer v. Premier Golf Prop., LP*, 168 Cal.App.4th 1243, 1254 (2008) (remedies for missed meal break "include an award in the nature of *liquidated damages* under section 226.7") (emph. added).

[7] Section 226.7 payments have also been characterized as "penalties." During the June 30, 2000 hearing at which the California Industrial Welfare Commission ("IWC") adopted the "hour of pay" remedy for meal break violations, IWC Commissioner Barry Broad clarified that the meal break violation payments are "penalties" intended to "encourage employers not to" deprive employees of meal breaks. *See* RJN, Exh. H (IWC Public Hearing Transcript (June 30, 2000)), at p. 30. Indeed, "penalty" (as opposed to "wage") was the *only* term used throughout the hearing to describe the payments. To that end, *Ruelas v. Costco Wholesale Corp.*, 67 F.Supp.3d 1137, 1143 (N.D. Cal. 2014) (Grewal, M.J.), reflects that Section 226.7 creates a *penalty* for non-provision of meal periods, not a wage. *See also id.* at n. 37 ("Adding a penalty component to the Labor Code will support the underlying purpose of meal periods by encouraging employers to comply with the meal period provisions.") (quoting Department of Finance Enrolled Bill Report Deferred to Department of Industrial Relations, Bill No. AB 2509 at 9). As the *Ruelas* court explains, the California Labor Commissioner also has recognized that the legislative history of Section 226.7 "clearly indicates that the payment was meant to be a penalty." *Id.* at 1143.

*Corder v. Houston's Restaurants, Inc.*, 424 F.Supp.2d 1205, 1208 (C.D. Cal. 2006) (stating that Section 226.7 "does not compensate an employee for additional services rendered"); *Pulido v. Coca Cola Enters., Inc.*, 2006 WL 1699328, *8 (C.D. Cal. May 25, 2006) (recognizing that Section 226.7 is "punitive" with "no correlation to the employee's actual labor").

The California Supreme Court spoke to this issue in *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244 (2012), and expressly acknowledged that Section 226.7 payments are more properly characterized exclusively as ***damages*** and not wages for work performed.  Specifically, the court held that the Section 226.7 payment is intended to pay employees for the **"*nonprovision of meal and rest periods*,"** as distinguished from work performed during the meal period:

> "Section 226.7 is ***not aimed at protecting or providing employees' wages***.  Instead, the statute is primarily concerned with ensuring the health and welfare of employees by requiring that employers provide meal and rest periods as mandated by the IWC. [Citation]  When an employee sues for a violation of *section 226.7*, he or she is suing because an employer has allegedly 'require[d] [the] employee to work during [a] meal or rest period mandated by an applicable order of the Industrial Welfare Commission.' [Citation]  In other words, ***a section 226.7 action is brought for the nonprovision of meal and rest periods, not for the 'nonpayment of wages'***." *Id.* at 1255 (brackets in orig.) (emph. added).

The foundation for distinguishing between "wages" that an employee *earns* for *performing work*, on the one hand, and the "premium pay" under Section 226.7 that compensates for a *non-compliant meal and rest break*, on the other, as set out in *Kirby*, was laid in *Brinker v. Superior Court,* 53 Cal.4th 1004 (2012):

> "The employer that refuses to relinquish control over employees during an owed meal period violates the duty to provide the meal period and owes compensation [and a Section 226.7 payment] for hours worked.  The employer that relinquishes control but nonetheless knows or has reason to know that the employee is performing work during the meal period, has not violated its meal period obligations [and owes no Section 226.7 payment], but nonetheless owes regular compensation to its employees for time worked." *Brinker*, 54 Cal.4th at 1040 n. 19.

Thus, pursuant to *Murphy*, *Brinker* and *Kirby*, Section 226.7 payments are akin to *damages* and not compensation for work performed.  Therefore, the *Nguyen* court explicitly held that Section 226.7 payments are "*properly considered liquidated damages, not wages earned for the purposes of Section 226(a)*" and are consequently *not* subject to the reporting requirements in Section 226(a). *Nguyen,* 2011 WL 6018284 at *8 (emph. added).  Similarly, in *Jones v. Spherion Staffing LLC*, 2012 WL 3264081, at *8-9 (C.D. Cal. Aug. 7, 2012), the court held that "Plaintiff cannot advance a claim

1  for noncompliant wage statements pursuant to [S]ection 226(a) … based solely on alleged violations

2  of [S]ection 226.7" because: (1) the legal violation underlying a Section 226.7 claim is the "non-

3  provision of meal and rest periods and the corresponding failure to 'ensur[e] the health and welfare

4  of employees,' not the nonpayment of wages"; (2) "a finding that [Section 226.7] wages can form

5  the basis for claims under [S]ection 226" could result in an "improper, multiple recovery by the

6  employee"; and (3) the *Kirby* decision demonstrates that *Murphy*'s holding that the Section 226.7

7  payment is calculated as a wage was limited to the specific issue of determining which statute of

8  limitations applies.  Likewise, in *Henryhand v. Digital Systems LLC*, 2014 WL 11728721, *14 (C.D.

9  Cal. May 19, 2014), the court found the decision in *Jones* well-reasoned and persuasive and held

10  that a plaintiff "cannot advance claims for noncompliant wage statements … based solely on alleged

11  violations of Section 226.7."

12  Most recently, on September 26, 2019, the California Court of Appeal issued its decision in

13  *Naranjo v. Spectrum Security Services, Inc.*, ___ Cal.Rptr. ___, 2019 WL 4686516. *16 (Cal. Ct.

14  App. Sept. 26, 2019), where it held that Section 226 remedies are not available based on a failure to

15  pay Section 226.7 premium payments for meal break violations.  To that end, the court reasoned

16  that "Section 226, subdivision (e)(1) entitles an employee to minimum fixed penalties or 'actual

17  damages' 'not to exceed . . . $4,000,' plus attorney fees if the itemized statement omits gross and

18  net 'wages earned.' Section 226.7's premium wage is a statutory remedy for an ***employer's conduct***,

19  ***not an amount 'earned' for 'labor, work, or service . . . performed personally by the [employee]***.'

20  (§ 200, subd. (b).)"  *Id.* (emph. added).  Therefore, Plaintiff's Section 226 claim fails to the extent

21  it is predicated on an alleged failure to itemize Section 226.7 payments.

22  For all of the foregoing reasons, summary judgment should be granted in favor of the Bank

23  on Plaintiff's claim for wage statement violations.

24  **C.   PLAINTIFF'S SIXTH CAUSE OF ACTION FOR WAITING TIME PENALTIES FAILS TO THE EXTENT IT IS PREDICATED ON A PURPORTED FAILURE TO PAY MEAL AND REST BREAK PREMIUMS AT TERMINATION.**

26  Plaintiff's claim for waiting time penalties pursuant to Cal. Lab. Code § 203 ("Section 203")

27  fails to the extent it relies on a failure to make Section 226.7 meal and rest period payments at

28  termination because such payments do not constitute "wages earned" under Cal. Labor Code § 201

("Section 201") for purposes of incurring waiting time penalties under Section 203.  Section 201 provides, in pertinent part, that "[i]f an employer discharges an employee, the *wages earned* and unpaid at the time of discharge are due and payable immediately."  (Emph. added).  But, Section 226.7 payments are not "wages earned" for purposes of triggering Section 203 liability because, as the California Supreme Court acknowledged in *Murphy*, 40 Cal.4th at 1113, "the Section 226.7 payment[ ] … *compensates* the employee for *events other than time spent working*."  (Emph. added). On this basis, several district courts have held that Section 203 waiting time penalties are not available based on a failure to make Section 226.7 payments at termination.  *See* RJN, Exh. B, *Rodriguez v. Old Dominion Freight Line, Inc.*, C.D. Cal. Case No. 13-cv-00891 DSF (RZx) (June 18, 2013) at p. 8 ("*Kirby* forecloses the possibility of an action under [S]ections 201 and 203 for the nonpayment of wages" and "makes clear that an employer who owes an employee a premium wage under [Section] 226.7 is not also liable for a violation of § 203."); *accord Soratorio v. Tesoro Ref. & Mktg. Co., LLC ("Soratorio I")*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) (noting that the plaintiff conceded that section 226.7 unpaid meal and rest break penalties were not applicable to section 203 waiting time penalties because they are not wages earned).[8]

      The California Court of Appeal has reached the same conclusion, holding:

> We understand that the remedy for a section 226.7 violation is an extra hour of pay, but the fact that the remedy is measured by an employee's hourly wage does not transmute the remedy into a wage as that term is used in section 203, which authorizes penalties to an employee who has separated from employment without being paid.

*Ling v. P.F. Chang's China Bistro, Inc.*, 245 Cal.App.4th 1242, 1261 (2016).

      More recently, as noted above, in *Naranjo*, 2019 WL 4686516 at *16, the California Court of Appeal distinguished Section 203 penalties from Section 226.7 payments, holding that "Section 203

---

[8] *See, e.g., Singletary v. Teavana Corp.*, 2014 WL 1760884, *4 (N.D. Cal. Apr. 2, 2014) (Grewal, M.J.) ("*Kirby* clarified that the wrong at issue in Section 226.7 is the non-provision of [meal] breaks, not a denial of wages.  As such, this case falls under *Kirby's* characterization of Section 226.7's payment as penalties, not wages, governs here."); *Jones*, 2012 WL 3264081 at *9 (holding that "Plaintiff cannot advance a claim for … failure to pay wages due upon termination based solely on alleged violations of [S]ection 226.7."); *Henryhand*, 2014 WL 11728721 at *14 (same); *Guerrero v. Halliburton Energy Servs., Inc.*, 2016 WL 6494296, *8 (E.D. Cal. Nov. 2, 2016) (affirmatively citing *Jones* and holding that unpaid Section 226.7 payments do not trigger liability under Section 203).

penalizes an employer that willfully fails 'to pay . . . any wages' owed to a fired or voluntarily separating employee.  The penalty is paid to the employee, not for 'labor, work, or service . . . performed personally by the [employee]' (§ 200, subd. (b)), but for the employer's recalcitrance. Read this way, **an employer's failure, however willful, to pay section 226.7 statutory remedies does <u>not</u> trigger section 203's derivative penalty provisions for untimely wage payments**." (Emph. added).

Accordingly, Section 226.7 payments are *not* "wages earned," and therefore are not subject to any payment obligation under Section 201.

### D.   PLAINTIFF'S SEVENTH CAUSE OF ACTION FOR UCL VIOLATIONS FAILS

#### 1.   Monetary Remedies Under The UCL Are Limited To Restitutionary Relief

Under the UCL, a private plaintiff's "remedies are generally limited to injunctive relief and restitution."  *Clark v. Sup. Ct.*, 50 Cal.4th 605, 610 (2010).  "In describing the difference between restitutionary and compensatory relief, California courts have noted that *restitution* describes relief in which a defendant is asked to *return something he wrongfully received*, while *damages* describe relief in which a defendant is asked to *compensate a plaintiff for injury suffered* as a result of the defendant's conduct."  *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, *3 (S.D. Cal. July 27, 2007) (emph. added).

Here, Plaintiff seeks restitution under the UCL based on the Bank's alleged "failure to pay Class members wages and compensation they earned through labor provided," and by "issuing wage statements containing false and/or misleading information about the time the Class members worked and the amount of wages or compensation due."  *See* FAC at ¶ 77.  As we discuss next, Plaintiff's UCL claim is legally defective to the extent it derives from purported failures to provide accurate wage statements, pay final wages in a timely manner, and pay meal and rest break premiums.

#### 2.   The UCL Claim Fails To The Extent It Is Predicated On A Failure To Provide Accurate Itemized Wage Statements Or A Failure To Pay Final Wages In A Timely Manner Because Wage Statement Penalties And Waiting Time Penalties Are Not Recoverable As Restitution Under The UCL

It is well settled that the remedies for a violation of the wage statement requirements of

1   Section 226 and the final pay timing provisions of Section 201 are penalties, which are not

2   recoverable as restitution under the UCL because they are punitive in nature. *See, e.g.*, *Pineda v.*

3   *Bank of America, N.A.*, 50 Cal.4th 1389, 1304 (2010) (holding that "section 203 penalties cannot be

4   recovered as restitution under the UCL"); *Guerrero v. Halliburton Energy Servs., Inc*, 231 F.Supp.3d

5   797, 807 (E.D. Cal. 2017) (dismissing UCL claim for Section 203 and 226 penalties because they are

6   "not subject to restitution under the UCL"); *Campbell v. PriceWaterhouseCoopers*, 2008 WL

7   3836972, *6 (E.D. Cal. Aug. 14, 2008) (holding that penalties under Sections 203 and 226 were not

8   cognizable under the UCL because the remedies afforded by those sections were penalties, not

9   restitution); *In re Wal-Mart Stores, Inc.*, 505 F.Supp.2d 609, 619 (N.D. Cal. 2007) (Armstrong, J.)

10  (same); *Rubin v. Wal-Mart Stores, Inc.*, 599 F.Supp.2d 1176, 1179 (N.D. Cal. 2009) (Armstrong, J.)

11  (same). Therefore, to the extent Plaintiff's UCL claim is premised on purported violations of Sections

12  203 and 226, it fails as a matter of law, and judgment thereon should be granted in favor of the Bank.

13            **3.    The UCL Claim Also Fails To The Extent It Is Predicated On A Failure**
              **To Pay Meal And Rest Break Premiums**
14

15          Although it is not clear from Plaintiff's FAC allegations that she seeks to pursue a claim for

16  UCL violations on the basis of an alleged failure to make meal and rest break premium payments, to

17  the extent she does in fact attempt to premise her UCL claim on purported break violations, it fails

18  because Section 226.7 payments are not subject to restitution under the UCL.

19          Section 226.7 payments are not recoverable as restitution because, as discussed above, they

20  are essentially ***liquidated damages*** that are intended to compensate for events ***other than time spent***

21  ***working*** and do not in any way correlate to the amount of time that an employee actually works

22  through a meal or rest period.   Thus, Section 226.7 payments are akin to damages that are not

23  intended to ***compensate*** for the ***injury*** of being ***deprived of legally-compliant breaks*** and are ***not***

24  ***subject to restitution*** as a matter of law. *See, e.g.*, RJN, Exh. C, *Sanders v. Old Dominion Freight*

25  *Line, Inc.*, C.D. Cal. Case No. 18-cv-00688 DSF (SHKx) (Sept. 13, 2018) at p. 5 (holding that

26  "Section 226.7 payments are not restitution for purposes of the UCL"); *Soratorio v. Tesoro Ref. &*

27  *Mktg. Co., LLC ("Soratorio II")*, 2017 WL 8220415, *5 (C.D. Cal. Sept. 11, 2017) (dismissing UCL

28  claims based on Section 226.7 payments, because "the 'additional hour of pay' an employer must pay

a non-exempt employee who is denied a meal…break under section 226.7 is much more akin to a section 203 'waiting time' penalty than to wages that an employee has already bargained for and earned through his or her labor."); *Francisco v. Emeritus Corp.*, 2017 WL 7790038, *6 (C.D. Cal. July 14, 2017) (holding that "this Court finds that 226.7 premium payments do not constitute restitution for purposes of the UCL"); *Guerrero*, 231 F.Supp.3d at 807-08 ("[Section] 226.7 wages do not constitute restitution recoverable under UCL" and granting motion to dismiss claim pertaining to Section 226.7 payments); *Parson v. Golden State FC, LLC*, 2016 WL 1734010, *6-7 (N.D. Cal. May 2, 2016) (Tigar, J.) (dismissing UCL claims predicated on alleged violations of Section 226.7 because Section 226.7 payments are not subject to restitution under the UCL).

## IV.    CONCLUSION

For all of the foregoing reasons, the Court should grant partial summary judgment in favor of the Bank, as set forth herein.

DATED: October 25, 2019              **McGuireWoods LLP**


By:    _____/s/ Sylvia J. Kim_____
            Michael D. Mandel, Esq.
            Sylvia J. Kim, Esq.
            Ashley R. Li, Esq.

            Attorneys for Defendant
            Bank of America, N.A.

**Exhibit A**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL SHERMAN, on behalf of himself, all others similarly situated, and the general public,<br><br>    Plaintiff,<br><br>v.<br><br>SCHNEIDER NATIONAL CARRIERS, INC., et al.,<br><br>    Defendants. | Case No. CV 18-08609-AB (JCx)<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Before the Court is Defendant Schneider National Carriers, Inc.'s ("Defendant") Motion to Dismiss and/or Strike Second Amended Complaint ("Motion," Dkt. No. 17). Plaintiff Randall Sherman filed an opposition and Defendant filed a reply. The Court heard oral argument on February 15, 2019. The Motion to Dismiss is **GRANTED**.

## I.    PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff's Second Amended Complaint ("SAC," Dkt. No. 16) asserts nine wage and hour claims under the California Labor Code and one claim under the Unfair Competition Law, Cal. Bus & Prof. Code § 17200, et seq. ("UCL"), on behalf of himself and a number of classes of employees, against his former employer.

Plaintiff alleges that he was employed as a non-exempt truck driver by Defendant, a trucking company, from October 7, 2017 to November 7, 2017. SAC ¶¶

1.

**Exhibit A**

1   30, 31, 43. Plaintiff alleges that the various labor code violations all occurred during

2   his employment and that they are the result of common company policies and/or

3   practices. The Court will further describe each alleged claim as it assesses whether

4   Plaintiff pled them adequately.

5       Defendant moves to dismiss all of Plaintiff's claims for failure to state a claim

6   on various bases.[1]

7   **II.   LEGAL STANDARD**

8       Fed. R. Civ. Proc. 8 requires a plaintiff to present a "short and plain statement

9   of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

10  Under Fed. R. Civ. Proc. 12(b)(6), a defendant may move to dismiss a pleading for

11  "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

12      To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide

13  enough factual detail to "give the defendant fair notice of what the . . . claim is and the

14  grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

15  The complaint must also be "plausible on its face," that is, the "complaint must

16  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

17  plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,*

18  550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to

19  relief above the speculative level." *Twombly,* 550 U.S. at 555. "The plausibility

20  standard is not akin to a 'probability requirement,' but it asks for more than a sheer

21  possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a

22  formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550

23  U.S. at 555.

24      A court may dismiss a complaint under Rule 12(b)(6) based on the lack of a

25  cognizable legal theory or the absence of sufficient facts alleged under a cognizable

26  legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

27

28  _____

[1] The Order does not reach each and every ground for dismissal Defendant moves on.

2.

1   When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual

2   allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

3   But a court is "not bound to accept as true a legal conclusion couched as a factual

4   allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

5          The court generally may not consider materials other than facts alleged in the

6   complaint and documents that are made a part of the complaint. *Anderson v.*

7   *Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider other

8   materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has

9   alleged the existence of the materials in the complaint or the complaint "necessarily

10  relies" on the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

11  (citation omitted). The court may also take judicial notice of undisputed facts that are

12  contained in extrinsic materials. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649

13  (9th Cir. 1988); *Lee*, 250 F.3d at 689-90.

14  **III.    DISCUSSION**

15      **A. Plaintiff Fails to State a Claim for Failure to Pay Straight Time and**

16          **Overtime (First and Second Causes of Action)**

17         Plaintiff's first (SAC ¶¶ 97-110) and second (SAC ¶¶ 111-119) causes of action

18  assert that Defendant failed to pay Plaintiff straight time and overtime based on a

19  number of factual theories, including that Defendant engaged in "rounding" and "time

20  shaving," required uncompensated pre- and post-shift work, auto-deducted meal

21  periods, and required Plaintiff to respond to phone calls and messages during

22  uncompensated meal periods. *See* SAC ¶¶ 7, 10, 103, 104, 106, 101, 117, 154.

23  Defendant argues that Plaintiff pled no facts whatsoever as to any of these theories

24  except the last one, and in opposition, Plaintiff abandons all theories but the last.

25  Insofar as Plaintiff's first and second causes of action are based on these abandoned

26  and ill-pled theories, they are **DISMISSED WITH PREJUDCE**.

27         As to Plaintiff's claim that Defendant failed to pay him straight time or

28  overtime for meal breaks for which he was required to be available to answer phone

3.

1    calls, Defendant contends that Plaintiff failed to allege "facts showing that there was a

2    specific week in which he was entitled to but denied minimum [or overtime] wages."

3    *Landers v. Quality Communications, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014)

4    (articulating Rule 8 standard for analogous claims under the FLSA).[2] Plaintiff

5    responds that he does not have to more specifically identify any particular workweek

6    because Defendant denied him straight pay and overtime as a consequence of its

7    uniform policy of requiring employees to respond to phone calls during meal breaks.

8    Plaintiff further argues that he does sufficiently identify workweeks by alleging that it

9    occurred for every week he worked.

10        The Court has carefully considered *Landers* and finds that it requires a plaintiff

11   to plead facts showing that there is *some* workweek in which he was deprived a

12   minimum wage or overtime pay, not that it requires a plaintiff to specifically identify

13   such a workweek. *Accord Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th

14   Cir. 2015) (characterizing *Landers* as holding "that plaintiffs in these types of cases

15   must allege facts demonstrating that there was at least one workweek in which they

16   worked in excess of forty hours and were not paid overtime wages"). *Landers* rejects

17   the notion that a plaintiff must plead an approximate number of unpaid hours, so it

18   would be incongruous to interpret its "given workweek" language as requiring a

19   plaintiff to plead the workweek with particularity. Furthermore, "the plausibility of a

20   claim is 'context-specific' []" so a "plaintiff may establish a plausible claim by

21   estimating the length of her average workweek during the applicable period and the

22   average rate at which she was paid, the amount of overtime wages she believes she is

23

_____

24   [2] Although *Landers* discussed the Rule 8 standard in the context of a wage claim
     under the Fair Labor Standards Act ("FLSA"), this Court, like many others, finds that
25   the same pleading standard applies to analogous California Labor Code violations in
     federal court. *See, e.g., Dawson v. HITCO Carbon Composites, Inc.*, 2017 WL
26   7806618, *4 (C.D. Cal. Jan. 20, 2017) (applying *Landers* to Labor Code violations);
     *Soratorio v. Tesoro Ref. & Mktg. Co.*, LLC, 2017 WL 1520416, *5-6 (C.D. Cal. Apr.
27   26, 2017) (same); *Raphael v. v. Tesoro Ref. & Mktg. Co. LLC*, 2015 WL 4127905, *2
28   (C.D. Cal. July 8, 2015) (same).

4.

Exhibit A

1  owed, or any other facts that will permit the court to find plausibility." *Landers*, 771

2  F.3d at 645.

3       Here, Plaintiff has not pled either his minimum wage claim or his overtime

4  claim adequately. As to the minimum wage claim, Plaintiff directs the Court to the

5  following allegation:

6       "[Defendant] imposed a policy in which Plaintiff and Non-Exempt

7       Employees receive no compensation when they work during meal

8       periods. In short, despite California's requirement that employees be

9       totally free of employer control during meal periods, [Defendant]

10       commands its drivers to keep their phones with them and turned on at

11       all times to respond to all calls and telephone messages as soon as

12       possible. Put differently, [Defendant], deliberately implements a

13       policy which required Plaintiff and Non-Exempt Employees—

14       including during unpaid meal periods—to keep their cell phone

15       activated so that they can respond to all calls and telephone messages

16       as soon as possible."

17       Opp'n 4:12-21 (quoting SAC ¶ 103). Although this allegation establishes that

18  Defendant had a policy that required its employees to work during meal periods yet

19  didn't pay them, conspicuously absent is an allegation that, as a result of this policy,

20  Plaintiff did actually keep his phone activated during meal breaks so he could respond

21  to Defendant's phone calls. Without an allegation that Plaintiff conducted himself in

22  accordance with this policy and therefore worked during his meal breaks without pay,

23  Plaintiff has not plausibly alleged a violation, nor can it be plausibly inferred that

24  there is such a workweek when this happened.

25       Plaintiff's overtime claim also relies on the above inadequate allegation, and

26  therefore fails to plead facts establishing the premise of this claim: that he worked

27  through meal breaks. The overtime claim is inadequately pled for an additional

28  reason: Plaintiff fails to plead facts that establish that there was any week in which he

Exhibit A

1   worked in excess of 40 hours and was therefore entitled to overtime. *See Landers*, 771

2   F.3d at 646 (overtime claim failed because complaint lacked " 'sufficient detail about

3   the length and frequency of [his] unpaid work to support a reasonable inference that

4   [he] worked more than forty hours in a given week' ") (citation omitted). Plaintiff

5   alleges that he  "worked approximately 10-12 hours per day each day he worked for

6   Defendant," SAC ¶ 114, but he does not plead how many days per week he typically

7   worked, so Plaintiff does not establish that he worked 40 hours in any week as

8   necessary to trigger entitlement to overtime. Plaintiff points to his allegation that

9   Defendant "failed to pay overtime when employees worked over eight (8) hours per

10  day and when employees worked over forty (40) hours per week," SAC ¶ 113, but this

11  is simply a generalized allegation and is devoid of facts plausibly establishing that any

12  such violation actually occurred.

13         Plaintiff has not adequately pled his first and second claims for relief so they

14  are **DISMISSED**.

15         **B. Plaintiff Fails to State a Claim for Meal and Rest Period Violations**

16              **(Third and Fourth Causes of Action)**

17         Plaintiff's third (SAC ¶¶ 120-159) and fourth (SAC ¶¶ 160-180) causes of

18  action assert that Defendant fails to provide meal periods and rest breaks in violation

19  of the California Labor Code, Wage Orders, and applicable regulations. As with the

20  first and second causes of action, Plaintiff's SAC asserts numerous bases for these

21  alleged violations that he abandons in his opposition, including, among others, that

22  Defendant simply did not provide meal and rest breaks; that excessive work, chronic

23  understaffing, and time pressure prevented employees from taking breaks; and that

24  supervisors discouraged employees from taking breaks. Indeed, the SAC is devoid of

25  factual allegations that establish any of these scenarios. Insofar Plaintiff's third and

26  fourth claims are based on these abandoned and ill-pled theories, they are

27  **DISMISSED WITH PREJUDICE**.

28

6.

Exhibit A

1    The only ground that Plaintiff presses is that Defendant required Plaintiff to be

2    on call during meal and rest breaks because it required employees to answer

3    Defendant's phone calls during those times. But just as with the first and second

4    causes of action, although Plaintiff pleads that Defendant had a policy of requiring its

5    employees to be on call during meal and rest breaks, the SAC does not expressly

6    allege that Plaintiff did in fact stay on call during these times and was thereby

7    deprived of control-free meal and rest breaks. The Court has carefully considered all

8    of the specific allegations Plaintiff discusses in its opposition, but they fall short. The

9    following is the most detailed allegation Plaintiff points to in his opposition:

10       "Defendant, through supervisors and dispatch, would call Plaintiff's

11       and similarly situated Non-Exempt Employees' personal cellular

12       phones during and throughout routes to check-in on them, change

13       routes, and/or ensure they were making on-time deliveries.

14       "Dispatch and supervisors did not cease calling Plaintiff and similarly

15       situated Non-Exempt Employees during [meal periods & rest breaks].

16       Every day and every shift throughout the statutory period—e.g.,

17       including October 2017 through November 2017 when Plaintiff

18       worked for [Defendant]—Plaintiff and similarly situated Non-Exempt

19       Employees the members of the proposed class had to remain at the

20       ready—including during [meal periods & rest breaks]—to respond to

21       calls from [Defendant]. Plaintiff and similarly situated Non-Exempt

22       Employees were told by their supervisors that they would have to

23       answer calls and respond to calls as soon as possible. This policy did

24       not relent during [meal periods & rest breaks], and Plaintiff and

25       similarly situated Non-Exempt Employees were not told this uniform

26       policy and practice was inapplicable during [meal periods & rest

27       breaks]. And, dispatch and/or supervisors did call regardless of

28

Exhibit A

1    whether Plaintiff and similarly situated Non-Exempt Employees were

2    taking a [meal period or rest break]."

3    Opp'n 7:26-8:7 (quoting SAC ¶¶ 138-139, 167-168). These allegations assert

4    that Defendant called its employees, including Plaintiff, throughout the day, including

5    during meal and rest periods; that Defendant required employees to respond as soon as

6    possible; that Defendant did not instruct employees that this policy did not apply

7    during meal and rest periods; and that Defendant called employees regardless of

8    whether they were on a meal or rest break. But these allegations fall short of alleging

9    that Defendant required employees to respond to its calls *during* their breaks, and that

10   they *did in fact* remain on call pursuant to such a requirement. Plaintiff was employed

11   as a truck driver, so it is plausible that he took meal and rest breaks at different times

12   and that Defendant would not know when exactly those breaks were on any given day.

13   The mere fact that Defendant called during rest periods and required employees to

14   respond as soon as possible does not necessarily mean that Defendant required

15   employees to answer the phone during their meal and rest breaks, and that employees,

16   including Defendant, did in fact remain on call pursuant to such a requirement. Such

17   allegations are necessary to establish a plausible claim. Because the SAC lacks such

18   allegations, Plaintiff's meal and rest period claims are inadequately pled and are

19   **DISMISSED**.

20        **C. Plaintiff Fails to State a Claim for Failure to Provide Accurate Wage**

21             **Statements (Fifth Cause of Action)**

22   Plaintiff's fifth cause of action (SAC ¶¶181-197) is that Defendant violated

23   Labor Code §§ 226(a), 1174, and 1175; Wage Order No. 9; and Cal. Code Reg., Title

24   8, § 11040.  Section 226(a) requires an employer itemize certain information on wage

25   statements, § 1174 requires employers to keep certain employment records and furnish

26   them to the Labor Commission, § 1175 establishes that a violation of § 1174 is a

27   misdemeanor, the sections of Wage Order 9 that Plaintiff relies on require an

28

8.

1    employer to maintain certain records, and Cal. Code Regs., Title 8, § 11040, is a broad

2    regulation covering many aspects of employment.

3          Defendant argues that there is no private right of action for violating any of

4    these provisions except for Labor Code § 226(a), and although Plaintiff characterizes

5    this argument as "misplaced," *see* Opp'n 12:2-3, he simply describes how Defendant

6    allegedly violated some of these provisions but fails to show that there is a private

7    right of action for any of them. The Court deems Plaintiff's failure to address this

8    argument as conceding its merit. *See Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3

9    (C.D. Cal. Oct. 6, 2011) ("the Court finds that Plaintiff concedes his recordkeeping

10   claim should be dismissed by failing to address Defendants' arguments in his

11   Opposition."); *Tatum v. Schwartz*, 2007 WL 419463, *3 (E.D. Cal. Feb.5, 2007)

12   (granting motion to dismiss because plaintiff "tacitly concede[d] this claim by failing

13   to address defendants' argument in her opposition"). Furthermore, the Court discerns

14   no private right of action associated with these provisions. The claim under the Cal.

15   Code Reg. Title 8 § 11040 fails for the additional reason that Plaintiff fails to defend it

16   in any way, such as by pointing to the subsection of this expansive regulation that

17   Defendant allegedly violated. Therefore, the Court **DISMISSES WITH**

18   **PREJUDICE** Plaintiff's fifth claim insofar as it is based on violations of Labor Code

19   §§ 1174 and 1175, Wage Order No. 9, and Cal. Code Reg. Title 8 § 11040.

20         That leaves Plaintiff's claim that Defendant violated Labor Code § 226(a). As

21   relevant, § 226(a) requires an employer to "furnish to his or her employee . . . an

22   accurate itemized statement in writing showing (1) gross wages earned, (2) total hours

23   worked by the employee . . ., (4) all deductions . . . , (5) net wages earned, (6) the

24   inclusive dates of the period for which the employee is paid . . ." Cal. Lab. Code §

25   226(a). Defendant argues that Plaintiff failed to plead any facts going to its alleged

26   failure to show deductions and pay period dates, and in opposition Plaintiff apparently

27   abandons these bases. These abandoned bases for this claim are therefore

28   **DISMISSED WITH PREJUDICE**.

Exhibit A

1        Otherwise, Plaintiff alleges that the wage statements Defendant provided

2    violated § 226(a) because they did not show the correct number of hours worked or

3    wages earned because they omitted unpaid time employees spent on the job during

4    their meal and rest breaks when they were allegedly required to be on call. This claim

5    is wholly derivative of Plaintiff's third and fourth claims, and because Plaintiff has

6    failed to state those claims, this claim likewise fails.

7        The wage statement claim fails for additional reasons. "The purpose of section

8    226 is to 'document the *paid wages* to ensure the employee is fully informed

9    regarding the calculation of those wages.' " *Maldonado v. Epsilon Plastics, Inc.*, 22

10    Cal. App. 5th 1308, 1337 (2018). Here, Plaintiff has alleged only that the amount he

11    was paid was incorrect, not that the wage statements inaccurately reflected the wages

12    he was paid. In fact, Plaintiff's opposition implicitly concedes that the wage

13    statements accurately stated the wages actually paid. Accordingly, the wage

14    statements do not violate § 226(a) even if the amount paid was incorrect. *See id.* at

15    1337 (the underpayment of wages "does not mandate . . . penalties for the wage

16    statements which accurately reflected their compensation").

17        Finally, damages and penalties are available only where a plaintiff can plead an

18    injury as result of the inaccurate wage statement. The injury that corresponds to the

19    alleged violation here is that "the employee cannot promptly and easily determine

20    from the wage statement alone . . . (i) [t]he amount of the gross wages or net wages

21    paid to the employee during the pay period." Cal. Labor Code § 226(e)(2)(B)(i). The

22    SAC does not plead that Plaintiff was unable to determine from the wage statements

23    the amount of gross or net wages paid, or any facts that could support such an

24    assertion. Thus, Plaintiff has not pled an injury.

25        For all of the foregoing reasons, Plaintiff fails to state a claim for providing

26    inaccurate wage statements. Furthermore, this claim is foreclosed by Plaintiff's

27    implicit concession that the wage statements accurately state the wages Defendant

28    actually paid to Plaintiff. Accordingly, Plaintiff cannot state a factually or legally

Exhibit A

1   sufficient claim, so amendment is futile, and this last component of the fifth cause of

2   action is **DISMISSED WITH PREJUDICE**.

3      **D. Plaintiff Fails to State a Claim For Failure to Pay All Wages Due At**

4         **Termination (Sixth Cause of Action)**

5      Plaintiff's sixth cause of action (SAC ¶¶ 198-209) is that Defendant failed to

6   pay him all wages due at the time of his termination in violation of Labor Code §§

7   201-203. This claim is wholly derivative of Plaintiff's inadequate claims 3 and 4 that

8   Defendant failed to pay him for meal and rest breaks for which he was on call, so this

9   claim likewise fails. The SAC also fails to plead facts concerning Plaintiff's own final

10  paycheck, such as when he received it. This claim is therefore **DISMISSED**.

11     **E. Plaintiff's Seventh and Eighth Causes of Action Are Wholly Derivative**

12        **of Counts 1-6 And Are Therefore Dismissed**

13     Plaintiff's seventh cause of action (SAC ¶¶ 210-213) under the Private

14  Attorneys General Act, Labor Code § 2698 ("PAGA") and his eighth cause of action

15  (SAC ¶¶ 214-223) under the UCL are wholly derivative of counts 1-6, all of which are

16  dismissed. These claims are therefore also **DISMISSED**.

17     **F. Plaintiff's Ninth and Tenth Causes of Action Are Dismissed**

18     In his opposition, Plaintiff withdraws his ninth (SAC ¶¶ 224-231) and tenth

19  (SAC ¶¶ 232-239) causes of action for failure to produce personnel and wage records.

20  These claims are therefore **DISMISSED WITH PREJUDICE**

21  //

22  //

23

24

25

26

27

28

11.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Second Amended Complaint is **GRANTED** as follows:

- Plaintiff's First, Second, Third, Fourth, Sixth, Seventh, and Eighth Causes of Action are **DISMISSED WITH LEAVE TO AMEND** *only* insofar as they are based on the theory that Defendant denied Plaintiff meal and rest breaks because it required him to be on-call during those breaks. These causes of action are **DISMISSED WITH PREJUDICE** insofar as they are based on any other factual theories.
- Plaintiff's Fifth, Ninth, and Tenth Causes of Action are **DISMISSED WITH PREJUDICE** in their entirety.

Plaintiff must file a Third Amended Complaint within 21 days of the issuance of this order or the case will be deemed dismissed with prejudice. Any Third Amended Complaint must eliminate all allegations rendered moot by this Order or it may be stricken.

**IT IS SO ORDERED.**

Dated: March 06, 2019

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

| Case No. | CV 13–891 DSF (RZx) | Date | 6/18/13 |
|---|---|---|---|
| Title | Marco Rodriguez v. Old Dominion Freight Line, Inc. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     (In Chambers) Order GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss (Docket No. 19)

        The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7–15.

## I.    INTRODUCTION

        Marco Rodriguez brings claims for violation of California Business and Professions Code § 17200 *et seq.* (UCL Claims), violation of California Labor Code §§ 201 and 202, Violation of California Labor Code § 226(a), wrongful termination in violation of public policy, retaliation in violation of public policy, intentional infliction of emotional distress (IIED), and defamation against Old Dominion Freight Line, Inc. (ODFL).  ODFL moves to dismiss Rodriguez's First Amended Complaint (FAC).

        From March 2010 to January 5, 2012, Rodriguez worked as a "Pick-Up and Delivery" driver for ODFL, a non-exempt and hourly position.  (FAC ¶ 3.)  He earned $18.85 per hour at the time of his termination.  (Id.)  During his time with ODFL, Rodriguez was employed in ODFL's "Less than Truckload" (LTL) shipping business.  (Id.)  This business generally consists of intrastate transportation of relatively small packages and freight.  (Id.)

        From April 2010 to late-2011, Rodriguez worked on a regular route between ODFL's Montebello terminal to areas in the San Fernando Valley.  (Id. ¶ 12.)  He thereafter worked as an "on-call" Pick-Up and Delivery driver until he was terminated.

        Rodriguez alleges that on average he worked 50 hours per week and that he

Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

regularly worked 60 hours per week.  (Id. ¶ 13.)  ODFL classified Rodriguez as "part-time" and did not provide him with benefits such as health insurance.  (Id.)  Rodriguez alleges that ODFL failed to pay him at the proper overtime rate and that ODFL failed to provide uninterrupted meal periods and rest breaks.  (Id. ¶¶ 13, 17.)  Rodriguez claims that ODFL required employees to "clock-in" and "clock-out" for meal periods on handheld devices immediately after starting their shifts and that ODFL would require him on occasion to indicate — fraudulently — on his handheld device that he took his meal period from 7:30 a.m. to 8:00 a.m.  (Id. ¶ 17.)

Rodriguez claims that he was told by ODFL's dispatcher, "Marty," that ODFL's policy was to pay overtime for shifts of 13 hours or more only.  (Id. ¶ 14.)  He alleges that he has nine wage statements dated between May 7, 2010 and January 6, 2012 that all indicate "small payments of overtime for shifts of 13 hours or more only."  (Id.)

Rodriguez was terminated on January 5, 2012 for "poor performance."  (Id. ¶ 21.)  He claims the reasons for his dismissal were pretextual and that he was terminated in retaliation for complaining about ODFL's overtime policy and failure to provide required meal and rest breaks.  (Id. ¶¶ 21–22.)  He claims that he was denied subsequent employment as a result of ODFL telling his prospective employers that he was terminated for "poor performance."  (Id. ¶ 26.)  Specifically, Rodriguez claims that he received an offer of employment on October 1, 2012 with a October 22, 2012 start date that was rescinded due to ODFL's statements about his performance.  (Id.)

Rodriguez also brings several class action claims.

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (alteration in original) (internal quotation marks omitted).  But Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for failure to state a claim upon which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson, 551 U.S. at 94.  However, allegations contradicted by matters properly subject to judicial notice or by exhibit need not be accepted as true, Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), and a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "Nor does a complaint suffice

Exhibit B

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

if it tenders naked assertion[s] devoid of further factual enhancement." Id. (alteration in original) (internal quotation marks omitted).  A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Ruling on a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief." Id. at 1950 (alteration in original) (citation and internal quotation marks omitted).

"Normally, when a viable case may be pled, a district court should freely grant leave to amend." Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011).  Leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured by the allegation of different or additional facts. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

### III.   DISCUSSION

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  The Court dismissed Rodriguez's Complaint on April 2, 2013 because he failed to respond to ODFL's motion to dismiss and failed to notify the Court that he had elected to amend his pleading as Rule 15(a)(1) permits.  (Docket No. 11.)  The Court's order permitted Rodriguez to file an amended complaint no later than April 24, 2013.  (Id.)  Rodriguez filed his FAC on April 24, 2013.  (Docket No. 16.)  As the Court provided Rodriguez until April 24, 2013 to file his amended complaint and did not place restrictions on any amendment, the Court will allow Rodriguez to add the wrongful termination claim and class action claims in his FAC.

In any event, as Rule 15(a)(2) provides that, in considering amendments to pleadings, "[t]he court should freely give leave when justice so requires."  This rule should be interpreted and applied with "extreme liberality," Roth v. Garcia Marquez, 942 F.2d 617, 628 (9th Cir. 1991), and leave to amend "should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Yakama Indian Nation v. State of Wash. Dep't of Revenue, 176 F.3d 1241, 1246 (9th Cir. 1999) (internal quotation marks omitted); see also Foman, 371 U.S.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

at 182 (identifying these factors).  It is far from clear that permitting the amendments here would prejudice ODFL, create undue delay, or that the amendments were sought in bad faith.  The new claims and amendments in Rodriguez's FAC are permissible.

### A.      Individual UCL Claims

Rodriguez bases his UCL claims on violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, failure to provide meal and rest breaks as required by California Labor Code § 226.7, failure to timely pay wages on termination in violation of California Labor Code §§ 201 and 202, and failure to provide accurate itemized wage statements in violation of California Labor Code § 226(a).

"The UCL 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (citations and quotation marks omitted)).  "Virtually any law — federal, state or local — can serve as a predicate for an action under Business and Professions Code section 17200."  Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1361 (2010) (citations and quotation marks omitted).

### 1.      FLSA Violations

ODFL wrongly argues that Rodriguez's FLSA violation allegation fails because Rodriguez "fails to allege any facts that could show he was not exempt from the overtime provisions under . . . the FLSA."  (ODFL's Mot. to Dismiss 7 (citations omitted)).  "An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies."  Reich v. Am. Driver Serv., Inc., 33 F.3d 1153, 1156 (9th Cir. 1994) (citation and quotation marks omitted).  Rodriguez has pleaded that ODFL's business "consists of intrastate transportation, wholly within the State of California . . . ."  (FAC ¶ 11.)  He has adequately pleaded that the FLSA applies and that ODFL is subject to the FLSA's regulations and overtime provisions.  See Reich, 33 F.3d at 1155 (footnote omitted) ("Any motor carrier that engages in wholly intrastate commerce . . . is subject to the Secretary of Labor's jurisdiction, and consequently, to the maximum hours provisions of the FLSA").  While ODFL may ultimately be exempt from the FLSA's requirements, any exemption inquiry is necessarily fact-intensive.  See id. at 1155–56.  Such an inquiry is ill-suited to a motion to dismiss.

The FLSA requires that "no employer shall employ any of his employees who in a workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives

Exhibit B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

compensation" for hours worked beyond forty hours "at a rate not less than one and one half times the rate at which he or she is regularly employed." 29 U.S.C. § 207(a)(1). "To establish a claim for failure to pay overtime under the FLSA, the plaintiff must aver that: (1) defendant was plaintiff's employer; (2) plaintiff worked more than forty hours in a week; and (3) plaintiff did not receive compensation for his employment in excess of the forty hours." McKeen-Chaplin v. Franklin Am. Mortg. Co., No. C 10–5243 SBA, 2011 WL 4082543, at *3 (N.D. Cal. Sept. 13, 2011) (citation and quotation marks omitted).

Rodriguez has alleged that he worked more than 40 hours per week without adequate overtime compensation. (FAC ¶¶ 13, 24, 40.) He has adequately pleaded a violation of the FLSA and satisfied the requirements of Federal Rule of Civil Procedure 8(a)(2). In addition to his allegations regarding working 50 hours per week on average, Rodriguez specifically points to nine wage statements in which he alleges he was paid overtime for shifts of 13 hours or more only. (FAC ¶ 14.) This is more than enough to satisfy the pleading requirements of Rule 8(a)(2).

## 2.    Meal and Rest Break Violations

Rodriguez also bases his UCL claim on ODFL's alleged violation of California Labor Code § 226.7. (See FAC ¶¶ 17, 18, 41.) "State law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday." Brinker Rest. Corp. v. Super. Ct., 53 Cal. 4th 1004, 1018 (citations omitted). "Labor Code section 226.7, subdivision (a) prohibits an employer from requiring an employee 'to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission [(IWC)].'" Id. (footnote omitted). ODFL argues that Rodriguez's UCL claim based on a § 226.7 violation is deficient because Rodriguez's UCL claim is inadequately pleaded under Rule 8 and because § 226.7 violation payments are not subject to restitution under the UCL.

Rodriguez's UCL claim is adequately pleaded with respect to § 226.7. He specifically alleges that he was not provided a lawful meal period or rest break. (FAC ¶¶ 17, 41.) He further alleges that he was not provided the pay required by § 226.7 in lieu of a rest break. (Id. ¶ 18.) Rodriguez details specific practices, (e.g. id. ¶ 17), and instances, (e.g. id. ¶ 19), in the FAC. These allegations are plainly sufficient under Rule 8(a)(2) to support Rodriguez's UCL claims with respect to the alleged § 226.7 violations.

Claims for § 226.7 violations are actionable as UCL claims. Under relevant California law, payments owed for § 226.7 violations are restitutionary in nature and are therefore actionable under the UCL. See Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1099–1100 ("We conclude that the remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations . . ."); Brinker, 53 Cal. 4th at 1018 (citations omitted) ("Employers who

Exhibit B

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### MEMORANDUM

violate these requirements must pay premium wages"); see also Brandon v. Nat'l R.R. Passenger Corp. Amtrak, No. CV 12–5796 PSG (VBKx), 2013 WL 800265, at *4 (C.D. Cal. Mar. 1, 2013) (citations omitted) ("Plaintiff seeks restitution for unpaid meal and rest periods and unreimbursed business expenses. These expenses are restitutionary and therefore recoverable under the UCL"); Ordonez v. Radio Shack, No. CV 10–7060 CAS (MANx), 2011 WL 499279, at *6 (C.D. Cal. Feb. 7, 2011) (citations omitted) ("The Court concludes that plaintiff's UCL claim can be maintained to the extent it is based on allegations of section 226.7").

ODFL argues that Kirby v. Immoos Fire Prot., Inc., 53 Cal. 4th 1244 (2012) stands for the proposition that a UCL restitution claim cannot be maintained when the basis for the UCL claim is an alleged §226.7 violation. Kirby held that "section 226.7 claims do not constitute 'action[s] brought for the nonpayment of wages' within the meaning of section 218.5." Id. at 1259.

However, Kirby also reaffirmed that "the remedy for a violation of the statutory obligation to provide IWC-mandated meal and rest periods is 'one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.'" Id. at 1256 (quoting § 226.7(b)). Thus, if, as Rodriguez alleges, ODFL failed to provide him the required meal and rest breaks, he is entitled to one additional hour of pay for each work day in which he was not provided the required breaks. In a UCL claim, "restitution means the return of money to those persons from whom it was taken or who had an ownership interest in it." Shersher v. Super. Ct., 154 Cal. App. 4th 1491, 1497 (2007) (citation and quotation marks omitted). Regardless of whether ODFL's failure to pay Rodriguez what he was owed under § 226.7 is considered a wage, he has alleged that he is owed money and may thus maintain a UCL restitution claim to obtain the money he is owed. Rodriguez has adequately pleaded an actionable UCL claim for violation of § 226.7.

### 3.    Labor Code §§ 201

For the reasons below, Rodriguez may maintain a UCL claim for Labor Code § 201 violations only for unpaid overtime compensation. He may not maintain a UCL claim for money owed for required meal period and rest breaks that were not provided as Labor Code sections 201 and 202 do not permit recovery for unpaid meal and rest breaks. The portion of his UCL claim based on violations of Labor Code § 201 is dismissed with prejudice.

### 4.    Labor Code § 226(a)

As explained below, Rodriguez may not maintain a claim for the provision of

Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

inaccurate wage statements in violation of California Labor Code § 226(a).  Accordingly, he may also not maintain a UCL claim on this basis.  This portion of his UCL claim is dismissed without prejudice.

**B.    Individual Labor Code §§ 201 and 203 Claims**

Rodriguez claims that ODFL failed to timely pay all wages owed to him on his termination, including all overtime, meal period, and rest break pay.  (FAC ¶¶ 52–53.)

California Labor Code § 201(1) requires that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."  Under California law, "'[w]ages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Labor Code § 200(a).  California Labor Code § 203 provides:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 . . . any wages of an employee who is discharged . . . the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days . . . .

As explained above, Rodriguez has adequately pleaded an FLSA claim and, as such, has stated a claim for unpaid overtime wages.  He may pursue a § 201(a) claim to recover those unpaid wages.

Section 203 entitles a terminated employee to "waiting time penalties" of up to 30 days' wages if the employer "willfully fails to pay" the employee any outstanding wages immediately upon termination.  Choate v. Celite Corp., 215 Cal. App. 4th 1460, 155 Cal. Rptr. 3d 915, 922 (2013) (citing Cal. Labor Code § 201).  "To act willfully, an employer need not act with a deliberate evil purpose."  Id. (citation and quotation marks omitted). "Rather, the employer need only intentionally fail or refuse to perform an act which was required to be done."  Id. (citation and quotation marks omitted).  "However, an employer's reasonable, good faith belief that wages are not owed may negate a finding of willfulness."  Id. (quoting Cal. Code Regs. tit. 8, § 13520(a)).  Rodriguez has alleged that he complained to ODFL's plant manager, his direct supervisor, regarding ODFL's allegedly unlawful overtime policy.  (FAC ¶ 19.)  He has also alleged that several wage statements indicate that he was not paid the proper overtime amounts.  (Id. ¶ 14.) Rodriguez has sufficiently pleaded that ODFL intentionally failed or refused to pay him what he was due.  He has adequately pleaded a § 203 violation with respect to unpaid overtime compensation.

Exhibit B

Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Rodriguez may not, however, pursue section 201 and 203 claims for the non-payment of premium wages due as a result of ODFL failing to provide required meal periods and rest breaks.  Kirby forecloses the possibility of an action under sections 201 and 203 for the nonpayment of wages.

> When an employee sues for a violation of section 226.7, he or she is suing because an employer has allegedly "require[d] [the] employee to work during [a] meal or rest period mandated by an applicable order of the Industrial Welfare Commission."  (§ 226.7, subd. (a).)  In other words, a section 226.7 action is brought for the nonprovision of meal and rest periods, not for the "nonpayment of wages."

> Sections 201 and 202 provide a useful contrast to section 226.7.  Section 201 provides that when "an employer discharges an employee, the wages earned and unpaid at the time of the discharge are due and payable immediately" (§ 201, subd. (a)), and section 202 provides that when an "employee has given 72 hours previous notice of his or her intention to quit, . . . the employee is entitled to his or her wages at the time of quitting" (§ 202, subd. (a)).  When an employee sues on the ground that his or her former employer has violated one of these provisions, the suit is an "action brought for the nonpayment of wages."  In other words, the employer's nonpayment of wages is the basis for the lawsuit.  By contrast, when an employee sues on the ground that his or her employer has violated section 226.7, the basis for the lawsuit is the employer's nonprovision of statutorily required rest breaks or meal breaks. . . .

> The failure to provide required meal and rest breaks is what triggers a violation of section 226.7.  Accordingly, a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks.

53 Cal. 4th at 1255–57.  Kirby makes clear that an employer who owes an employee a premium wage under § 226.7 is not also liable for a violation of § 203.  See Jones v. Spherion Staffing LLC, No. LA CV11–06462 JAK (JCx), 2012 WL 3264081, at *8–*9 (C.D. Cal. Aug. 7, 2012) ("For several reasons, the Court finds that Plaintiff cannot advance a claim for . . . failure to pay wages due upon termination pursuant to section 203 based solely on alleged violations of section 226.7").  As Rodriguez cannot maintain a § 203 claim on the basis of unpaid compensation due under § 226.7 as a matter of law, this portion of his § 203 claim is dismissed with prejudice.

Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

**C.      Individual Labor Code § 226(a) Claims**

Rodriguez has failed to adequately plead a Labor Code § 226(a) claim.  Labor Code § 226(a) "sets forth nine itemized requirements for a wage statement."  Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1142 n.4 (2011).[1]  "To recover damages under section 226, subdivision (e), an employee must suffer injury as a result of a knowing and intentional failure by an employer to comply with the statute."  Id. at 1142 (footnote omitted).  "The injury requirement in section 226, subdivision (e), cannot be satisfied simply because one of the nine itemized requirements in section 226, subdivision (a) is missing from a wage statement."  Id.

As currently pleaded, Rodriguez's alleged injury, the non-payment of overtime wages owed, did not arise "as a result of a knowing and intentional failure" of ODFL to list the proper hourly rate for overtime.  In fact, Rodriguez alleges that he was able to determine that he was not properly compensated for all hours he considered to be overtime hours because the wage statements were "accurate" in the sense that they listed the hourly rate that ODFL actually applied to hours worked.  (See FAC ¶ 14.)  By contrast, Price held that a cognizable injury in fact arises from, for example, cases in which plaintiffs "sufficiently alleged (and presented evidence) of an injury arising from inaccurate or incomplete wage statements, which required those plaintiffs to engage in discovery and mathematical computations to reconstruct time records to determine if they were correctly paid."  192 Cal. App. 4th at 1143 (citations omitted).  Rodriguez pleads that he "independently knew that [ODFL's] overtime policy was unlawful" and specifies that he was paid overtime in "similar position[s] with similar duties . . . for shifts over 8 hours per day and/or 40 hours per week."  (FAC ¶ 16.)  Rodriguez has failed to state a claim for a § 226(a) violation.

While it appears Rodriguez is unable to state a § 226(a) claim as a matter of law, he may amend the FAC as it is not certain that any amendment would be futile.

**D.      Wrongful Termination in Violation of Public Policy**

As explained above, Federal Rule of Civil Procedure 15(a)(2) dictates that Rodriguez be permitted to amend his complaint to include a wrongful termination claim.  This claim will not be dismissed.

---

[1] The relevant § 226(a) requirement is that a wage statement lists "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. . . ."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

**E.     Retaliation in Violation of Public Policy**

Rodriguez has sufficiently pleaded his retaliation in violation of public policy claim.  (See FAC ¶¶ 69–75.)  He has alleged sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  In any event, ODFL's arguments regarding temporal proximity and admissibility are more properly addressed in a motion for summary judgment.

**F.     Intentional Infliction of Emotional Distress (IIED)**

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  Hughes v. Pair, 46 Cal. 4th 1035, 1050 (2009) (citations and quotation marks omitted).

Taking his allegations as true, Rodriguez has done enough under California law to survive a motion to dismiss as to his IIED claim as he has alleged that ODFL had knowledge of the falsity of its conduct, including making allegedly false representations to the California Employment Development Department, (FAC ¶¶ 22–27), and retaliating against him, which allegedly constitutes outrageous conduct, (id. ¶¶ 69–71, 75), and that such conduct could cause the "severe emotional distress, anxiety" and other injuries Rodriguez claims, (id. ¶¶ 88).  See Nazir v. United Airlines, Inc., 178 Cal. App. 4th 243, 288 (2009) (reversing a grant of summary judgment on an IIED claim and explaining that "[a] claim for distress arising out of employment is not barred where the distress is engendered by an employer's illegal discrimination practices . . . [n]either discrimination nor harassment is a normal incident of employment" (citations and quotation marks omitted)).  Rodriguez has done enough to provide ODFL with fair notice of the scope and substance of his IIED claim and questions as to admissibility and applicable evidence supporting the claim are best addressed in a motion for summary judgment.

**G.     Defamation**

"Defamation is an invasion of the interest in reputation.  The tort involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage."  Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999) (citations omitted).  "Publication means communication to some third person who understands the defamatory meaning of the statement and its application

Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

to the person to whom reference is made." Id.  " Publication need not be to the 'public' at large; communication to a single individual is sufficient." Id. (quotation marks omitted) (citing Cunningham v. Simpson, 1 Cal. 3d 301, 306 (1969)).

"Under the 'common-interest privilege,' codified in California in Civil Code section 47, subdivision (c) . . . a defendant who makes a statement to others on a matter of common interest is immunized from liability for defamation so long as the statement is made 'without malice.'" Lundquist v. Reusser, 7 Cal. 4th 1193, 1279 (1994) (footnote omitted).

> [I]n enacting section 47(c), the Legislature intended to codify without change the common law common-interest privilege.  At common law, that privilege embodied a two-step analysis, under which the defendant bore the initial burden of demonstrating that the allegedly defamatory communication was made upon a privileged occasion, and the plaintiff then bore the burden of proving that defendant had made the statement with malice.

Id. at 1208.  "Courts have consistently interpreted section 47, subdivision (c) to apply in the employment context." Noel v. River Hills Wilsons, Inc., 113 Cal. App. 4th 1363, 1369 (2003) (citation omitted).  Further, the plain text of § 47(c) makes clear that it "applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant."

As currently pleaded, Rodriguez's defamation claim concerns statements regarding "poor performance" made to a prospective employer.  (FAC ¶ 93.)  Section 47(c) clearly applies to his defamation claim.  As he has failed to allege that the statements were made with malice, his claim is deficient.  Rodriguez's defamation claim is dismissed without prejudice.

## H.   Class Claims

Motions to dismiss class allegations are rarely granted. See, e.g. In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) (explaining that "dismissal of class allegations at the pleading stage should be done rarely and . . . the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery") (citations and quotation marks omitted). The Ninth Circuit has explained that "[a]lthough a party seeking class certification is not always entitled to discovery on the class certification issue, the propriety of a class action cannot be determined in some cases without discovery [and] the better and more

Exhibit B

Exhibit B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 942 (9th Cir. 2009) (citations and quotation marks omitted). "District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted lies within the sound discretion of the trial court." Id. (citations and quotation marks omitted). ODFL's motion is premature and the Court declines to consider its substantive arguments at this time.

## I.    Injunctive Relief

Former employees may not seek injunctive relief because they "would not stand to benefit from an injunction . . . at [their] former place of work." Walsh v. Nev. Dep't of Human Res., 471 F.3d 1033, 1037 (9th Cir. 2006). Rodriguez is a former employee. (See FAC ¶ 3.) Rodriguez seeks "injunctive relief to ensure compliance with this section, pursuant to California Business & Professions Code § 17200 . . . ." (FAC Prayer ¶ 8.) His legal basis for injunctive relief is unclear, however, as he argues only that he "seeks injunctive relief only as is necessary to enforce the restitution, including, if necessary, the appointment of a receiver." (Pl.'s Opp'n 23.) He cites no cases or statutory support for the propriety of his injunction request and the scope or effect of his requested injunctive relief is entirely unclear from the FAC. The injunctive relief request is dismissed without prejudice.

## J.    Damage Claims

Rodriguez seeks punitive damages for his wrongful termination, retaliation, IIED, and defamation claims. As noted above, his wrongful termination, retaliation, and IIED claims will not be dismissed. "California law long has recognized that discharges in violation of public policy may be actionable torts for which punitive damages can be recovered under Civil Code section 3294." Commodore Home Sys., Inc. v. Super. Ct., 32 Cal. 3d 211, 220 (1982) (citations omitted). California Civil Code § 3294 provides "that punitive damages are available in all noncontractual civil actions unless otherwise limited." Id. at 217.

Rodriguez brings claims directly against his employer. (See, e.g., FAC ¶¶ 68, 72, 75–76). An action for wrongful discharge in violation of public policy "can only be asserted against an employer." Miklosy v. Regents of Univ. of Cal., 44 Cal. 4th 876, 900 (2008). A corporation such as ODFL "is a legal fiction that cannot act except through its employees or agents, a corporation and its employees generally function as a single legal unit and are the same legal person for purposes of applying various tort, agency, and jurisdiction principles." Kight v. CashCall, Inc., 200 Cal. App. 4th 1377, 1392 (2011)

Exhibit B

**Exhibit B**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

(citations omitted).  Civil Code § 3294(b) applies because it states that "[a]n employer shall not be liable" for punitive damages "unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice."  As ODFL is a corporate employer, in order to maintain his punitive damage claims, Rodriguez must allege that the relevant "advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  See Miklosy, 44 Cal. 4th at 900 ("An individual who is not an employer cannot commit the tort of wrongful discharge in violation of public policy; rather, he or she can only be the agent by which an employer commits that tort").  He fails to do so.  For example, he does not plead any facts about the knowledge or intentions of any "officer, director, or managing agent of" ODFL.

As Rodriguez's IIED and retaliation claims are brought directly against ODFL, they are also subject to the § 3294(b) limitation.  Rodriguez's punitive damage claims are dismissed without prejudice.

Rodriguez brings Labor Code §§ 201 and 203 claims for "actual, consequential, and incidental losses and damages."  ODFL properly points out that the statutory language of sections 201 and 203 provide only for the payment of wages due, § 201, and penalty wages, § 203.  There is no provision for "consequential, and incidental losses and damages."  Rodriguez's "consequential, and incidental losses and damages" claim is dismissed without prejudice.

**K.     Attorneys' Fees under California Code of Civil Procedure § 1021.5**

"Section 1021.5 codifies California's version of the private attorney general doctrine, which is an exception to the usual rule that each party bears its own attorney fees."  Robinson v. City of Chowchilla, 202 Cal. App. 4th 382, 390 (2011) (citing Olson v. Auto. Club of S. Cal., 42 Cal. 4th 1142, 1147 (2008)).  "The purpose of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases."  Id. (citing Graham v. DaimlerChrysler Corp., 34 Cal.4th 553, 565 (2004)).  A court may award attorneys fees under § 1021.5 to:

> (1) a successful party in any action (2) that has resulted in the enforcement of an important right affecting the public interest if (3) a significant benefit has been conferred on the general public or a large class of persons, (4) private enforcement is necessary because no public entity or official pursued enforcement or litigation, (5) the financial burden of private enforcement is such as to make a fee award appropriate, and (6) in the interests of justice the

**Exhibit B**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

fees should not be paid out of the recovery.

Id. (footnote omitted).  As the class allegations remain, it remains possible for Rodriguez to satisfy the second and third criteria above.  The attorneys' fees request will not be stricken.

## IV.   CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.  The FAC is dismissed with leave to amend consistent with this order.  An amended complaint must be filed and served no later than July 9, 2013.  Failure to file by that date will waive the right to do so.  The Court does not grant leave to add new defendants or new claims.  Leave to add defendants or new claims must be sought by a separate, properly noticed motion.  Defendant's response will be due July 30, 2013.

IT IS SO ORDERED.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| EUGENE SANDERS, et al.,<br>Plaintiffs,<br><br>v.<br><br>OLD DOMINION FREIGHT<br>LINE, INC., et al.,<br>Defendants. | CV 18-688 DSF (SHKx)<br><br>Order GRANTING in PART<br>and DENYING in PART<br>Motion to Dismiss and Strike<br>(Dkt. 43) |

Plaintiffs Eugene Sanders, Doug Butler, Darrel Foley, George Renner, Roger Schrader, and putative class members are or were truck drivers for Defendant Old Dominion Freight Line, Inc.  Dkt. 42, Third Am. Compl. (TAC) ¶ 1.  Plaintiffs allege they were denied minimum wages, accurate wage statements, final wages, reimbursements, and meal and rest breaks in violation of California law.  Id.

On June 25, the Court granted Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint because it provided "little more than threadbare, generic, and conclusory allegations."  Dkt. 41 at 1.  Defendant now moves to dismiss parts of the TAC and to strike certain allegations.[1]  The Court deems

---

[1] Together with its motion, Defendant filed a request for judicial notice of decisions and orders from unpublished cases and various other public documents.  Dkt. 43.  The request, which is unopposed, is granted.  Fed. R. Evid. 201(b).

Exhibit C

this matter appropriate for decision without oral argument.  <u>See</u>
Fed. R. Civ. P. 78; Local Rule 7-15.  The motion is GRANTED in
PART and DENIED in PART.

## I.   LEGAL STANDARDS

### A. <u>Rule 12(b)(6)</u>

Federal Rule of Civil Procedure 12(b)(6) allows an attack on
the pleadings for failure to state a claim upon which relief can be
granted.  "[W]hen ruling on a defendant's motion to dismiss, a
judge must accept as true all of the factual allegations contained
in the complaint."  <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).
However, the court need not accept as true "allegations that
contradict matters properly subject to judicial notice or by exhibit"
or "allegations that are merely conclusory, unwarranted
deductions of fact, or unreasonable inferences."  <u>St. Clare v. Gilead
Scis., Inc.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008).  A complaint must
"state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp.
v. Twombly</u>, 550 U.S. 544, 570 (2007).  This means that the
complaint must plead "factual content that allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).
"The plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that a
defendant has acted unlawfully."  <u>Id.</u>

### B. <u>Rule 12(f)</u>

A district court "may strike from a pleading an insufficient
defense or any redundant, immaterial, impertinent, or scandalous
matter."  Fed. R. Civ. P. 12(f).

Exhibit C

Exhibit C

## II.   DISCUSSION

### A. Motion to Dismiss

#### 1. UCL Violation (First Cause of Action)

California's Unfair Competition Law (UCL) prohibits "any unlawful, unfair or fraudulent business act . . . ." Cal. Bus. & Prof. Code § 17200.  Defendant moves to dismiss Plaintiffs' UCL claim to the extent it is based on denial of meal and rest breaks because (1) it fails to state a claim and (2) meal and rest break payments are not subject to restitution under the UCL.

Section 226.7 prohibits an employer from requiring an employee to work during a meal or rest or recovery period mandated by statute, regulation, standard, or wage order.  Cal. Lab. Code § 226.7(b).  An employer who fails to comply must pay an additional hour of pay for each workday that a meal or rest break is not provided.  Id. § 226.7(c).  Pursuant to California's Industrial Welfare Commission Wage Order 4–2001, an employer is required to provide at least a thirty-minute meal period per five-hour work period.  Cal. Code Regs. Tit. 8, § 11040(11).

a.  Failure to state a claim

The Court previously dismissed the meal and rest break claims because those allegations did nothing more than recite the statutory elements.  Order at 4-5.  The TAC adds several new allegations, including that:  (1) Defendant gave specific work tasks to Plaintiffs but did not carve out times for meal or rest breaks; (2) Defendant required Plaintiffs to miss breaks to ensure work was completed in a time frame mandated by Defendant; (3) Defendant required Plaintiffs to take uninterrupted routes with meal breaks scheduled after eight hours, instead of five hours; (4) on average, Plaintiffs worked 9.53 hours per workday and sometimes over twelve hours; and (5) Defendant knew Plaintiffs were denied

Exhibit C

breaks due to Defendant's "burdensome workload and time constraints," but nevertheless refused to compensate Plaintiffs accordingly.  TAC ¶ 44.

Defendant contends Plaintiffs have offered only conclusory allegations that do not satisfy Rule 8.  Mot. at 17-22.  Plaintiffs' allegations state a plausible claim that Defendant deprived Plaintiffs of meal and rest breaks.  Plaintiffs explain that Defendant's strict timetables and route planning meant they could not take a meal or rest break.  "[I]f an employer makes it difficult for employees to take a break or undermines a formal policy of providing meal and rest periods, there are sufficient grounds to find a violation of the California Labor Code."  Varsam v. Lab. Corp. of Am., 120 F. Supp. 3d 1173, 1179 (S.D. Cal. 2015).  Unlike Defendant's cited cases, Plaintiffs' allegations identify specific actions taken that impeded or discouraged them from taking meal and rest breaks.  Such allegations are sufficient at this stage of the proceeding.  See, e.g., Rodriguez v. Cleansource, Inc., No. CV 14-789-L, 2015 WL 5007815, at *7 (S.D. Cal. Aug. 20, 2015) (allegations that employer assigned an excessive amount of work and valued productivity over taking breaks were sufficient to state a claim); Fobroy v. Video Only, Inc., No. CV 13-4083-EMC, 2014 WL 6306708, at *2 (N.D. Cal. Nov. 14, 2014) ("Maintaining a work schedule for employees that makes it difficult or impossible for employees to take a break has been found sufficient to find a violation of the California Labor Code or applicable wage orders.").

   b.  Section 226.7 payments under the UCL

Plaintiffs' UCL claim seeks "such relief as may be necessary to restore to them the money and property" which Defendant has acquired or of which Plaintiffs have been deprived.  TAC ¶ 51. Defendant contends the UCL provides only for injunctive relief

4

Exhibit C

Exhibit C

and restitution; damages are not recoverable.  See Mot. at 22 (citing Clark v. Superior Court, 50 Cal. 4th 605, 610 (2010)).[2]

For purposes of the UCL, restitution is intended to "restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003).  "Restitution focuses more on employee conduct; a plaintiff has an ownership interest in earned wages." Francisco v. Emeritus Corp., No. CV 17-2871-BRO, 2017 WL 7790038, at *5 (C.D. Cal. July 14, 2017) (citing Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 168 (2000)) ("Once earned, those unpaid wages become property to which the employees were entitled.").  But "a section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks." Kirby v. Immoos Fire Protec., Inc., 53 Cal. 4th 1244, 1257 (2012).

The Court concludes that Section 226.7 payments are not restitution for purposes of the UCL.  The Court is guided by the California Supreme Court's decision in Pineda v. Bank of America, N.A., 50 Cal. 4th 1389, 1401 (2010), which held that waiting time penalties awarded under Section 203 were not restitution under the UCL.  Section 203(a) provides that, if an employer willfully fails to timely pay final wages, "the wages of the employee shall continue *as a penalty*" for up to 30 days.  Id. at 1392 (quoting Cal. Lab. Code § 203(a)).  Contrasting waiting time penalties with unpaid overtime, the court explained that wages awarded under Section 203 "would not restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest" because "it is the employers' action (or inaction) that gives rise to section 203 penalties"; unpaid overtime "arises out of *the*

---

[2] Defendant does not challenge Plaintiffs' request for injunctive relief.  See TAC ¶¶ 52, 53.

Exhibit C

*employees'* action, i.e., their labor." Id. at 1401-02 (citation omitted).

Pineda's reasoning applies with equal force to Section 226.7. "Much like under Section 203(a), wages awarded for failure to provide rest breaks under Section 226.7 would not be earned by the employee who has given his or her labor to the employer in exchange for that property." Francisco, 2017 WL 7790038, at *6 (citation omitted). Instead, "[i]t is the 'employers' action (or inaction)' that gives rise to a Section 226.7 claim and remedy." Id. (citing Pineda, 50 Cal. 4th at 1401-02).

Defendant's motion to dismiss portions of Plaintiff's UCL claim that are predicated on payments owed under Section 226.7 is GRANTED WITH PREJUDICE.

## 2. Failure to Provide Itemized Wage Statements (Third Cause of Action)

Section 226 requires employers to keep accurate itemized pay statements setting forth, among other things, gross and net wages, and the total number of hours worked. Cal. Lab. Code § 226(a)(1), (2), (5). To recover damages, an employee must allege that he or she "suffer[ed] injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)." Id. § 226(e)(1); see Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1142 (2011).

The TAC alleges that because Defendant paid Plaintiffs only a flat amount per work assignment, the pay stubs issued to Plaintiffs failed to correctly state their hours worked, gross wages, and net wages, and during some pay periods failed to list any hours worked by Plaintiffs when they did, in fact, work hours for Defendant. TAC ¶¶ 10, 70. Defendant's knowing and intentional failure to comply with Section 226 caused Plaintiffs damages, including costs expended to calculate the true time worked and

Exhibit C

the amount of employment taxes that were not paid, both of which were difficult to estimate.  Id. ¶ 71.

    a.  Failure to state a claim

Defendant contends Plaintiffs' allegation that it "knowingly and intentionally" failed to comply with Section 226(a) is conclusory.  At the pleading stage, however, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Reinhardt v. Gemini Motor Transp., 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012) (quoting Fed. R. Civ. P. 9(b)).  Plaintiffs' simple allegation that Defendant's failure was "knowing and intentional" suffices to state a claim at this juncture.  Id.  In addition, Plaintiffs allege a regular practice by Defendant of failing to record and pay for time worked.  See, e.g., TAC ¶ 70 (alleging that Defendant's wage statements were routinely incorrect due to Defendant's practice of paying a flat amount per work assignment).  It can reasonably be inferred from Plaintiffs' allegations that Defendant knowingly and deliberately failed to pay wages it knew were owed.

    b.  Lack of an injury

Defendant argues the TAC fails to allege a cognizable injury.  Section 226(e) was amended on January 1, 2013, and now provides that an "injury" occurs when the employee fails to provide accurate and complete information as required by subsection (a) and the employee "cannot promptly and easily determine from the wage statement alone" the information that subsection (a) requires the employer to provide.  Cal. Lab. Code § 226(e)(2)(B).  "'[P]romptly and easily determine' means a reasonable person would be able to readily ascertain the information without reference to other documents or information."  Id. § 226(e)(2)(C).  Here, Plaintiffs allege they received wage statements that were inaccurate with respect to hours and wages,

Exhibit C

and that the true time worked was difficult to determine.  See TAC ¶¶ 70, 71.  These allegations are sufficient to satisfy the injury requirement.

    c.  Wages actually paid

    Defendant contends Plaintiffs do not allege that their wage statements were inaccurate in reporting wages *actually paid* to them.  Defendant's interpretation is not supported by the statute: "Every employer . . . shall furnish . . . an accurate itemized statement in writing . . . ."  Cal. Lab. Code § 226(a).  "If the statement must be accurate as to both wages earned and total hours worked, then accurate payment of inaccurately recorded hours would violate the statute."  Pena v. Taylor Farms Pac., Inc., No. CV 13-1282-KJM, 2014 WL 1665231, at *9 (E.D. Cal. Apr. 23, 2014).  Defendant cites, Soto v. Motel 6 Operating, L.P., 4 Cal. App. 5th 385, 392-93 (2016), which considered whether vacation pay must be listed on each itemized wage statement and is not helpful.

    d.  Whether Section 226.7 payments are "wages"

    Defendant argues that to the extent Plaintiffs' wage statement claim relies on Section 226.7, it fails as a matter of law because meal and rest period compensation does not constitute a "wage" under the Labor Code.

    Here, Soto is relevant and supports defendant's position: like vacation pay, meal and rest break payments are not required to be itemized.  The Court also agrees with the authorities cited by Defendant that conclude the Section 226.7 payment is not a payment for time worked.  The Third Cause of Action cannot be based on Section 226.7 payments.

Exhibit C

### 3. __Nonpayment of Wages (Fourth Cause of Action)__

An employer is liable for its willful failure to timely pay "any wages of an employee who is discharged or quits . . . ." Cal. Lab. Code § 203.

The TAC alleges the various dates of employment for the named Plaintiffs, and that when those Plaintiffs left employment with Defendant, they were not compensated for all of their work. TAC ¶¶ 1, 78. Defendant "intentionally failed" to pay those wages when they were due. TAC ¶ 78.

Defendant contends the TAC does not sufficiently allege that it willfully failed to timely pay wages. As with Plaintiffs' wage statement claim, however, the TAC's allegations that Defendant acted "intentionally" and had a pattern and practice of not paying wages, are sufficient to state a claim. Defendant also repeats its argument that meal and rest break payments are not "wages" under Section 203. As discussed above, the Court will decide this issue once briefing is more developed.

### 4. __PAGA Penalties (Sixth Cause of Action)__

Plaintiffs' Private Attorney General Act (PAGA) claim rises or falls with their other claims. See Price, 192 Cal. App. 4th at 1147. Plaintiffs' PAGA claim thus survives to the extent it is based on the claims for failure to pay minimum wages, inaccurate wage statements, nonpayment of wages, and failure to reimburse.

### B. __Motion to Strike__

Defendant moves to strike certain allegations in paragraph 85 of the TAC. Specifically, Defendant objects to the reference to Section 204, which requires that wages be paid on a semi-monthly schedule. See Cal. Lab. Code § 204(a). The Court again agrees with Defendant that there are no plausible allegations in the TAC

Exhibit C

Exhibit C

that Defendant failed to pay wages in compliance with the <u>timing</u> requirements set forth in section 204; instead, Plaintiffs' allegations appear to be that certain wages were not paid at all. <u>See</u> <u>Hadjavi v. CVS Pharmacy, Inc.</u>, No. CV 10-4886-SJO, 2010 WL 7695383, at *2 (C.D. Cal. Sept. 22, 2010) ("California Labor Code Section 204(a) deals solely with the timing of wages and not whether these wages were paid, and Plaintiffs fail to allege that Defendants failed to maintain two regular pay days each month, within the dates required in California Labor Code Section 204(a)."). Plaintiffs criticize one of Defendant's many cited cases in support but provide no authority of their own. The reference to Section 204 is stricken as immaterial.

### III.   CONCLUSION

Defendant's motion to dismiss portions of Plaintiffs' UCL claim and failure to provide accurate itemized statements claim that are predicated on payments owed under Section 226.7 is GRANTED WITH PREJUDICE. The reference to Section 204 in paragraph 85 of the TAC is STRICKEN. Defendant's motion is otherwise DENIED.

Defendant must file an answer no later than October 12, 2018.

IT IS SO ORDERED.

Date:  September 13, 2018

Dale S. Fischer
United States District Judge

Exhibit C

Exhibit D

**E-FILED**
Sep 20, 2011 9:05 AM
David H. Yamasaki
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
Case #1-08-CV-103426 Filing #G-35133
By R. Walker, Deputy

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| BRIAN DRISCOLL, KENNETH GALLARDO, DONALD HOPF, CHRIS NOWAK and BRAD STORM, | Case No.: 1-08-CV-103426 |
| Plaintiffs, | |
| vs. | **STATEMENT OF DECISION** |
| GRANITE ROCK COMPANY, a California corporation, and DOES 1-50, inclusive, | |
| Defendants. | |
| JOHN MASON, and other similarly situated employees, | |
| Plaintiffs, | |
| vs. | |
| GRANITE ROCK COMPANY, and DOES 1-20, | |
| Defendants. | |

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

1

Exhibit D

Pursuant to Code of Civil Procedure § 632 and Rule 3.1590, California Rules of Court, the Court issues this final Statement of Decision after considering Plaintiffs' Request for Statement of Decision on Principal Controverted Issues ("Plaintiffs' Request") of September 6, 2011 and Defendant's Response and Proposed Statement of Decision of September 16, 2011.

## I.     PROCEDURAL BACKGROUND

Concrete ready-mix drivers Driscoll, Gallardo, Hopf, Nowak and Storm, none of whom work for Defendant at this time, filed this lawsuit on January 17, 2008.  Plaintiffs assert causes of action for: (1) missed meal compensation under Wage Order 1; (2) waiting time penalties under Labor Code § 203; (3) penalties for inaccurate paystubs based on Labor Code § 226(e); (4) the default penalty under PAGA, Labor Code § 2699(f); and, (5) restitution and injunctive relief under Business and Professions Code § 17200.  Plaintiffs represent a certified class of approximately 200 current and former ready-mix drivers.  The *Driscoll* action was consolidated with *Mason v. Graniterock*, Case No. CIV474411 (San Mateo County Superior Court).

Plaintiffs' principal claim is that Graniterock failed to provide off-duty meal periods and/or failed to pay Plaintiffs one additional hour of pay for duty-free meal periods.

This action was tried over approximately 14 days from June 20 through July 13, 2011, in Department 1 of the above entitled court, the Honorable James P. Kleinberg presiding without a jury.  During the trial 55 witnesses testified and 285 exhibits were admitted into evidence.  Harvey Sohnen, Esq., Patricia Kelly, Esq., Joe Clapp, Esq., Jason Rabinowitz, Esq. and Susan Garea, Esq. appeared for Plaintiffs.  Alan Levins, Esq., Laura Hayward, Esq. and Alison Hightower, Esq. appeared for Defendant.

Having heard and observed the testimony of witnesses, considered the documentary evidence presented, having reviewed the written submissions of the parties, having considered the argument of counsel, and being fully advised, the Court finds and rules as follows:

//

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

2

## II.    FACTUAL BACKGROUND AND THE NATURE OF THE BUSINESS

Graniterock operated the first concrete ready-mix plant in California.  (RT 1324:5-14)
Eighty percent of Graniterock's non-management, non-office employees are unionized.  (RT
1327:24-27)  Graniterock currently has five branches; an additional two branches closed during
the class period due to the economy.  (RT 1328:4-1329:25) Each branch is staffed by concrete
mixer drivers who deliver concrete to Graniterock's customers and by dispatchers who
schedule the drivers and coordinate the deliveries of individual loads to customers.  Drivers do
not have a regular schedule. (RT 174:11-15; 303:27-304:8)  When a driver arrives at work, he
does not know how long his day will last, and unless he has communicated to his dispatcher
that he would like an off-duty meal that day, he does not know whether he will be asked to
work through his meal.  When drivers are directed to work through their meal periods, they are
subject to the dispatcher's direction and control throughout the thirty minute period.  They are
paid a premium wage for this time at a rate determined by collective bargaining agreements or
company policy, depending on the branch and date involved.  Graniterock has used form On-
Duty Meal Period Agreements ("ODMPAs") since the end of 2000.

The physical properties of concrete dictate Graniterock's business.   Concrete is a
mixture of rock, sand and cement.  Adding water to the mixture causes a chemical reaction that
hardens it.  For this reason, the mixer truck drum must rotate when it contains concrete or
concrete residue.  The truck must be turned on and monitored when the drum rotates.  (RT
1336:10-25; Exh. 532)

The parties stipulated that concrete is a perishable product that cannot be stored.
Furthermore, if more than one load of concrete is being poured in the same form or structure,
subsequent loads must be poured in a continuous fashion to avoid cold joints, or areas where
concrete does not bond, creating a weakness in the structure.  (RT 220:13-26; 532:20-533:3;
Exh. 562)  Freshly batched concrete generally must be poured within 90 minutes of batching,
as required by CalTrans and by customers based upon industry practice and American Concrete

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

3

Institute (ACI) or American Society of Testing and Materials (ASTM) specifications. (Exh. 562) Projects such as schools and hospitals may require concrete to be poured within 60 minutes. (RT 1332:14-27) If it is later determined that there is a defect that can be traced to pouring expired concrete, the concrete may have to be removed, which is often 120 times as expensive as initially pouring the concrete, and customers will seek to recover these "back charges" from the concrete supplier. (RT 7/7 114:25-115:20)

Plaintiffs are all former employees of Graniterock. No current employees testified during Plaintiffs' case.

## II.    DISCUSSION

This case is the reverse of the more familiar pattern where the plaintiff focuses on facts and defendant relies on the law. Here, relying principally on statutes and regulations, Plaintiffs have essentially argued that California law (at least to their principal claim) is self-evident to the degree that Defendant had two choices: either grant the subject employees a meal break or pay the penalty proscribed by law.

Plaintiffs' counsel stated their position as follows in closing argument: "Now the facts in this case are relatively undisputed. There are a few little facts along the margin. But by and large, we know what this case is about. The major dispute is a legal dispute not a factual dispute. ..." Tr. 1578 at 16-19.

Plaintiffs have taken the position that Judge Joseph Huber's April 23, 2010 ruling granting Plaintiffs' motion for summary adjudication as to Defendant's First Affirmative Defense leaves Defendant without much, if anything, left to say. That ruling is not as significant as it first appears, as discussed below.

### A.    Graniterock's On-Duty Meal Period Agreement

California law recognizes that there are circumstances, and industries, where an employee will be precluded from being relieved of all duty during his meal period. Since 2001,

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

4

Wage Order 1 has authorized employees to work an "on duty" meal period "when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to." Wage Order 1-2001 § 11(C). The written agreement must state that the employee may, in writing, revoke the agreement at any time. *Id.*

Graniterock's "on-duty meal period agreement" ("ODMPA") states: "I understand that I may revoke this Waiver Agreement at any time by providing at least one (1) working day's advance written notice to my Manager of my decision." (e.g. Exh. 273).  When Defendant's President and CEO Bruce Woolpert and Human Resources Director Shirley Ow drafted the ODMPA in anticipation of January 2001 changes to the Wage Order, they included the Wage Order language that the ODMPA could be revoked at "any time" but observed that the Wage Order was silent on how quickly an employer needed to act after receiving the revocation. Graniterock has argued, and continues to advance the proposition that one day was the shortest reasonable notice to process revocation and provide the required meal period.  That provision resulted in a court decision that remains actively debated in this case.

**B.     The Court's April 23, 2010 Order**

Judge Huber's April 23, 2010 Order (the "April 23 Order") held that the "one day notice" revocation provision did not comply with the Wage Order and granted Plaintiffs summary adjudication of the First Affirmative Defense asserted by Graniterock.

That Order reads as follows, in pertinent part:

"Defendant's 1st Affirmative Defense states: "The nature of Plaintiffs' work frequently prevented them for being relieved of all duty for a thirty minute meal period and Plaintiffs were signed to *valid, written on-duty meal period agreements.*" (emphasis supplied).  Even if it is assumed for purposes of argument that the "nature of the work" performed by ready-mix drivers does not readily allow for off duty meal periods Plaintiffs' motion may go forward based on their assertion that Defendant cannot possibly satisfy a required element for a valid

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

5

ODMPA; that it expressly allow the employee to revoke it "at any time" provided it is done in writing. It is undisputed that the three versions of ODMPAs entered into by Defendant and its driver employees (exemplars of which are included in Defendant's verified responses to requests for admissions presented by Plaintiff) each required one working day's notice before the employee's request to revoke the ODMPA would become effective.

"Plaintiffs' initial burden is met here simply by their presenting and comparing the language of Wage Order 1, sec. 11(C) with the language in each of the three versions of Defendant's ODMPAs requiring one working day's advance written notice before drivers could revoke their concessions to the employer and have off-duty meal periods again. Wage Order 1, sec. 11(C) states, referring to ODMPAs, that "The written agreement shall state that the employee may, in writing, revoke the agreement at any time." This language is not ambiguous, nor is giving it a logical common-sense interpretation an "absurd" result as Defendant argues. The Order is issued under the authority of remedial statutes meant to be construed broadly to promote the worker protections provided. A required delay of one business day before a driver may revoke their ODMPA is simply not compatible with the Wage Order's clear requirement that an employee must be able to revoke it in writing "at any time."

"When the burden shifts to Defendant it is unable to raise any triable issues of material fact as to whether its ODMPA language fully complies with Wage Order No. 1 (or 9) and can therefore serve as an affirmative defense. Neither Defendant nor any other employer is the judge of what is the shortest reasonable notice period, the Legislature is, and to date it has declined to allow a one working day's delay on an employee's ability to cancel their ODMPA "at any time" anywhere but in the health care industry. Wage Order 4 establishes that the Legislature knew how to select a one working day waiting period before an employee could revoke an ODMPA when it chose to. The language of Wage Order 1 (and 9) establishes that it has chosen not to do so outside of the health care industry. The most logical interpretation of "at any time" is the same day, not after one working day. A driver who presents his employer with a written revocation of his ODMPA must be allowed an off-duty meal period that same

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

6

day. This is not an absurd result and whether this is inconvenient to Defendant is simply irrelevant[1]."

Indeed, Plaintiffs have gone further. The Court posed this question to Plaintiffs' counsel at closing argument:

THE COURT:  When you say they are invalid on their face, you are basing that on the order that was signed by this Court in April of 2010; correct?

MR. CLAPP:  That is correct.

THE COURT:  And if the on-duty meal period agreement had not said that Graniterock was to have 24 hours advanced notice, if it had said — if it had said immediately, or upon request, or something like that, would we — would you even have a case?

MR. CLAPP:  Yes, your Honor.

THE COURT:  How would you have a case if that were so?

MR. CLAPP:  Because we would be in here trying to persuade you that the

---

[1] Defendant did not move for reconsideration of this order, choosing instead to seek a writ from the District Court of Appeal. The Court of Appeal did not grant the writ. Nevertheless, because of the importance of this affirmative defense, this Court examined whether the prior ruling could be appropriately modified or severed in some fashion. The doctrine of law of the case provides that where an *appellate court* states in its opinion a principle of law necessary to its decision, the principle becomes the law of the case for later proceedings. (*Bovard v. American Horse Enterprises, Inc., et al.* (1988) 201 Cal.App.3d 832, 841.) Law of the case "deals with the effect of the first appellate decision on the subsequent retrial or appeal." (9 Witkin, *Cal. Proc.* 5th (2008) Appeal, §§ 459, 460.

California courts in general adhere to the belief that judges should not revisit interlocutory orders ruled on by a previous judge. *People v. Riva* (2003) 112 Cal.App.4th 981, 991.) In *Metropolitan Water Dist. Of Southern California v. Campus Crusade for Christ, Inc.* (2005) 37 Cal.Rptr.3d 598, the Fourth Appellate District ruled that based on "fundamental principles of judicial comity, efficiency, and the rule of law" a superior court judge could not overturn rulings on motions in limine made by a previous judge on the same case. (*Id.* At p. 609.) The Second Appellate District came to a similar conclusion in a criminal case in which a judge increased the bail for a criminal defendant awaiting trial because he believed that the first judge did not comply with statutory requirements. (*In re Alberto* (2002) 102 Cal.App.4th 421.) The court said that the power of one judge to vacate an order made by another judge is limited due to policy considerations: "For one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court." (*Id.* At p. 427.) cf. *Lacey v. Betrone* (1952) 109 Cal.App.2d 107

The rule against vacating an interlocutory ruling by a previous judge is especially strong when concerning motions that have been fully litigated through written motions and noticed hearings. *Green v. State Farm Fire & Casualty Co.* (1990) 224 Cal.App.3d 1583, 1589. The summary adjudication order fits into this category, as it was fully briefed and included a full hearing.

Defendant did not ask this Court to overturn the April 23 Order. In any event, the Court declines to do so *sua sponte* under the circumstances and principles presented.

---

nature of the work did not prevent these drivers from taking meal periods.

THE COURT: Are you saying the Court should determine how to run this business?

MR. CLAPP: No, we are not. Not even slightly, your Honor. They have basically two options here. What they can do is one of two things. If they believe the nature of the work prevents them from running it through the meal periods, they can either get a valid on-duty meal period, which for some reason they don't want to do; or, as I mentioned, they can pay the additional hour of pay, your Honor.

Significantly, the parties stipulated that the one-day notice language did not deter any driver from revoking his or her ODMPA. (RT 1129:10-12; Exh 563) That stipulation provides, in part:

"(3) The one-day revocation provision in the ODMPA has nothing to do with the [driver's] decision not to revoke the ODMPA;"

Thus, the sole impact of the "one-day notice" revocation provision was at most a one-day delay in providing an off-duty meal period *to those drivers who revoked their ODMPA*. However, damages by drivers who did not revoke, and damages for any driver in excess of one day's meal period compensation, are not legally tenable. *Starbucks Corp. v. Superior Court*, 168 Cal.App.4th 1436 (2008).

Graniterock contends that even if it provided on-duty meal periods that contravened the Wage Order, nevertheless it simultaneously provided off-duty meal periods that did comply with the Wage Order. Graniterock argues that it provided these off-duty meal periods in two ways: First, by informing drivers that they were not required to enter into the On-Duty Meal Period Agreements (or could revoke them if they had already entered into the Agreements); and second, by informing drivers that they could simply ask the dispatchers to take off-duty meal periods. Graniterock argues that it was the drivers themselves who chose to waive their right to take off-duty meal periods.

Plaintiffs bear the burden of proving that Graniterock did not provide meal periods and

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

8

the evidence does not support Plaintiffs' position on the issue of missed meal compensation. The Court finds that Graniterock did not require, expect or train its drivers to involuntarily sign an ODMPA or to work through lunch; Graniterock had a legally compliant meal period policy published in its handbook and the drivers made their decisions voluntarily. The Court further finds that during the class period, Graniterock informed drivers that they could ask dispatchers for off-duty meal periods and the dispatchers acceded to these requests. The drivers thus each determined on a daily basis whether they wanted an off-duty meal period. The evidence showed that those few drivers who refused to sign ODMPAs were given off duty meal periods or they received a "Code 38" payment that equaled one hour of pay. (RT 446:26-447:7; 1076:16-23; Exh. 242)  It is undisputed that only three Graniterock drivers revoked their ODMPA and that each of those drivers received an off-duty meal period on the very next occasion possible. (RT 506:5-7,19-27; Exh. 419,426; RT 7/11 1493:17-1494:17 (Crews); RT 506:8-10, 507:6-11 Exhs. 422, 427; RT 7/111493:17-1494:17 (Marketello); RT 377:1-16 (Nelson)). Thus, Plaintiffs offered no evidence that any delay or damage occurred. While Mr. Nelson testified that he had revoked the agreement 24 hours beforehand because of the one-day's notice provision (RT 7/11 1536:18-21), the Court does not give weight to this self-serving, after-the-fact testimony because Mr. Nelson was inconsistent with respect to compliance with the terms of the ODMPA. He also claimed that he was "retaliated against" *by being given off-duty meals* after he revoked his waiver. (RT 7/11 1537:6-25)  His bias, moreover, was evident. *(*RT7/11 1538:19-1541:8; Exh. 571.)

Defendant has argued that, without exception, the employees didn't want what Plaintiffs claim the law provided, but rather preferred to "work through lunch" and leave early. The Court finds this argument supported by the vast weight of the evidence.

**C.    *Brinker* and *Lamps Plus***

The question of whether an employer must *mandate* that rest and meal breaks are taken is currently unsettled (see *Brinker Restaurant Corp. v. Superior Court* (2008) 165 Cal.App.4[th]

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

9

25 [de-published pending review, *Brinker Restaurant Corporation v. S.C. (Hohmbaum)* (2008) 196 P.3d 216] and *Lamps Plus Overtime Cases* (2011) 195 Cal.App.4th 389 [de-published pending review, *In re Lamps Plus Overtime Cases*, 2011 Cal. LEXIS 7468])

While cognizant of the appeals pending before the Supreme Court, in ruling on *motions in limine* this Court determined that the word "provide" as used in Wage Order 1 and California Labor Code Sections 226.7 and 512 means to make meal periods "available," to not "frustrate or prevent" taking of meal periods.  It does not mean the employer must "ensure" that meal periods are actually taken.  *Lamps Plus Overtime Cases*, 195 Cal.App.4th 389, 402 (2011), *review granted*.  This Court reaches the same conclusion based on the weight of authorities to date.

This interpretation is consistent with the state Supreme Court decision in *Murphy v. Kenneth Cole Productions*, 40 Cal.4th 1094, 1104 (2007), where the Court described the one hour's wage to be owed to "an employee *forced to forego* his or her meal period" because that employee "has been deprived of the right to be free of the employer's control during the meal period[,]"(emphasis added) not when employees are simply "permitted" to work through a meal.  Many federal courts that have squarely considered the meaning of the same statutory and regulatory provisions have concluded that "an employer [must] *offer* meal breaks, without forcing employers actively to ensure that workers are taking these breaks."  In *White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1088 (N.D. Cal. 2007), the court held that "the employee must show that he was *forced to forego* his meal breaks as opposed to merely showing that he did not take them..."  *Id.*  The court noted that if the employer had to ensure that each employee actually took a 30 minute meal break "employees would be able to manipulate the process and manufacture claims by skipping breaks or taking breaks of fewer than 30 minutes," and the court declined to find a rule that "would create such perverse and incoherent incentives."  *Id.* at 1089.

In *Brown v. Federal Express Corp.* 249 F.R.D. 580, 584-85 (C.D. Cal. 2008), the court likewise interpreted "provide," noting that "[r]equiring enforcement of meal breaks would

place an undue burden on employers whose employees are numerous or who, as with Plaintiffs, do not appear to remain in contact with the employer during the day." The court in *Marlo v. United Parcel Service, Inc.*, 2009 U.S. Dist. Lexis 41948 at *27 (C.D. Cal. May 5, 2009) characterized this interpretation as "the most natural reading of the statute's language."

The Court finds *Cicairos v. Summit Logistics*, 133 Cal.App.4th 949 (2005), cited by Plaintiffs to be distinguishable, since in that case the employer interfered with employees' right to take meal periods.

Plaintiffs contend that the "provide" standard requires that the employer affirmatively schedule a meal period to distinguish from its duty to simply "authorize and permit" rest periods. However, there is no requirement that an employer affirmatively schedule meal breaks, as the court held in *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008). Further, in *Kenny* the court opined that even under the scenario where an employee might choose to work through meals to earn more tips or to avoid keeping a valued customer waiting, meals could still be "provided" if employees were not forced or pressured to forego them. In any event, Plaintiffs' interpretation could not apply at Graniterock where nothing during the day is scheduled other than the first load.

Further, Plaintiffs' assertion that an employee must be relieved from all control during an off-duty meal period (citing *Morillion v. Royal Packing Co.*, 22 Cal.4th 575 (2000)) is off the mark. Whether an employee was *provided the opportunity* to take an off-duty meal in which the employer relinquishes all control is a separate issue from whether an employee who decided to work during his meal period and/or was under the employer's control was paid for that time. Graniterock is only required to relieve from its control *those drivers who elected to take an off-duty meal period.* The Court rejects Plaintiffs' assertion that the correct legal standard is that the employer must guarantee or ensure that an employee takes a 30 minute off-duty meal period or the employer has "engaged, suffered or permitted" an employee to work. In any event, the Court finds that the drivers who took on-duty meal periods did so voluntarily and without any compulsion, coercion or interference by Graniterock.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

11

### D.   Defendant's Compliance with the Law and "Code 38" Pay

Graniterock's written meal period policies (which are contained within its Employee Handbook) notified all drivers that they are entitled to a 30 minute off-duty meal period. (Exhs. 205-208)  Under this policy, drivers are free from Graniterock's control during their 30 minute off-duty meal.  (RT 370:11-25)  Many drivers acknowledged having received and reviewed this policy.  (RT 1004:13-22; 1023:16-26; 1064:17-22)  In addition, since 2000, Graniterock posted the Wage Order and mandatory state and federal postings at each branch advising employees of their right to an off-duty meal period. (RT 1311:4-21; Exhs. 550, 552)

In December 2000, anticipating the January 2001 changes to the Wage Order, Ms. Ow and Mr. Woolpert drafted a letter to Graniterock employees outlining California law and advising drivers that they had a right to an off-duty meal period, but that if they wished to, they could sign an ODMPA to indicate that they chose to work through their meals.  The drivers received premium pay of double time or time and a half plus an additional 15 minutes added to their time cards at regular or overtime rates for working through lunch pursuant to collective bargaining agreements and/or Company policy. (RT 455:21-456:21; Exhs. 516-520)  The letter advised drivers that if they did not sign an ODMPA and were asked to work through a meal they would get one hour of pay in addition to applicable premium pay. (RT 495:26-496: 12; Jt. Exh. 9)

It is undisputed that most, if not all, of the drivers signed these ODMPAs, and only three ever revoked.  Regardless of the validity of the one day's notice provision in the ODMPA, the ODMPA served as a statement of the employee's preference.  Plaintiffs failed to prove that the drivers were forced, expected, or trained to involuntarily sign ODMPAs or to miss off-duty meal periods against their will.  Moreover, numerous drivers testified that despite signing an ODMPA, they understood that they could get a meal at any time without revoking their ODMPA.  For instance, Bruce Nicholson understood he could ask for an off-duty meal at any time because it was in the Handbook and "it was told to us." (RT 902:4-10)  Kelly Sones knew she could ask for time off without revoking her ODMPA.  (RT 919:12-15)  Brian

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

12

Sheridan testified that "anytime we want lunch all we have to do is ask for it." (RT 938:10-14)

Richard Walrod knew he could have asked for lunch off on the same day, but chose not to. (RT 1145:22-1146:17)

Plaintiffs offered no evidence that any driver who requested a meal period was denied one. Some requested meals by revoking or not signing an ODMPA. (RT 1075:2-1076:15; 1083:10 – 1084:8, Exh. 419; 1085:15-27; 1086:19-26) Notably, Graniterock paid an extra hour of regular pay, referred to as "Code 38 pay," to drivers who did not sign an ODMPA and who were not relieved from its control for a 30 minute off-duty meal period. (RT 446:26-447:7; 1076:16-23; Exh. 242) Others asked for meals without revoking their ODMPA and were given them even when they made the request the same day. Dispatcher (and class member) Dave Fontes reported that if someone asks for an off-duty meal, he does "whatever it takes" to give that meal period. (RT 417:10-17) Dispatcher Terri Galvin bent over backwards to accommodate her drivers' personal requests for time off. (RT 400:4-11) Driver Jerry Pineda, who asked for unpaid lunch for appointments, or to pick up his kids, after which he would return to work, stated "[the dispatchers] always worked with my schedule, because they know I'm a single parent." (RT 981:6-24) Marc Fanning received an off-duty meal to take care of personal business when he requested it that same morning. (RT 971:12-972:2) Brian Sheridan (RT 938:15-939:4) and Pete Diaz had the same experience. (RT 1134:14-20) Graniterock affirmatively informed drivers that they could take off-duty meal periods if they wished. (Exhs. 205-208; RT 1311:4-21; Exhs. 550, 552) Plaintiffs offered no evidence to prove that drivers were unaware of their ability to obtain off-duty meal periods. Therefore, the weight of the evidence established that drivers were aware of the availability of off-duty meal periods and exercised the ability to take off-duty meal period regardless of whether an ODMPA was signed or on file. (*E.g.* RT 919:12-15; 938:10-14)

However, the vast majority of drivers—including Plaintiffs—voluntarily chose to eat on the job—not because they were forced or even pressured to do so, but because they wanted to. It is undisputed (and was stipulated to) that there was ample down time during the drivers' days

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

13

during which they had time to eat while at the plant or a customer site.  (Exh 563)  It is significant that none of the named Plaintiffs/Class representatives testified that he wanted off-duty meal periods.  Plaintiffs' rebuttal witness, Tom Nelson, testified that he asked for off-duty meals, but when he received them, he felt that this was a form of retaliation.  (RT 7/11 1537:16-23)  That testimony did not ring true.  Every single current employee has signed an ODMPA indicating his/her preference to work through meals.  (RT 487:18-22)

Drivers preferred to eat on-duty in order to get home earlier, to receive a premium for working through lunch, and/or because they did not wish to sit around "twiddling their thumbs" off-the-clock.  Ryan Fontes would rather get paid to work through lunch and go home and enjoy his family.  (RT 343:25-344:17)  Bruce Nicholson wanted to get off early to coach basketball.  (RT 904:17-905:5)  Brian Sheridan worked through lunch because "who wouldn't want to" get paid extra premium and get home early.  (RT 936:22-25; *see also* Kelly Sones (RT 917:26-918:5), Mark Fanning (RT 969:24-970:3), Jerry Pineda and Fred Eisenstadt (RT 980:3-5; 991:10-21).

Drivers complained to their dispatchers about having to take off-duty meals and asked to be given other work instead.  Former dispatcher Patty Carter testified that drivers saw being asked to take meal periods as "punishment" and told her they preferred to continue working.  (RT 313:18-314:2)  Ed Yancey testified that drivers pled with him to go home, to help the batch man, "help Glen in the shop," to shovel debris, or do anything rather than take an off-duty meal.  (RT 379:12-26)  When Terri Galvin tells her drivers to take off-duty meals "they get angry with [her]."  (RT 398:19-26)  David Fontes' drivers denote "no lunch" on their timecards with a happy face.  (RT 413:11-13)

Drivers opted to work through lunch even knowing that they were agreeing not to get the one hour's pay.  (*E.g.* Nicholson (RT 912:4-7); Fanning (RT 973:12-18); Pineda (RT 982:18-983:4); Rodriguez (RT 1005:2-5).)  This is because the drivers knew that if they did revoke, they would get more off-duty unpaid meals, which they did not want.  *E.g.*, Tom Regan believed that if he revoked, the dispatcher would "probably break me for lunch every day."

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

14

1  (RT 1024:25-1025:4) Others shared this sentiment. (*E.g.* Sones (RT 918:22-25); Sheridan (RT

2  940:15-21); Amparan (RT 1063:20-26).) Thus, while Graniterock dispatchers did direct

3  drivers as to which customer sites they needed to deliver concrete to and when, drivers elected

4  whether or not they wanted to take an off-duty meal by notifying the dispatcher. The evidence

5  showed that the drivers' requests for an off-duty meal period were granted. Plaintiffs failed to

6  show that Code 38 pay was not given in the event such requests could not be granted. The

7  practice of other companies is not persuasive as to whether Graniterock had any legal

8  obligation under the Labor Code to pay its drivers who chose to forego off-duty meal periods.

9        It is particularly probative that no employee has ever complained or filed a grievance

10  regarding meal periods. Nor has the Union filed any such grievance. (RT 486:24-487:17)

11  Graniterock reasonably relied on this conduct by the drivers and Union representatives—as

12  well as the written agreements they signed and chose not to revoke—as evidencing the drivers'

13  stated desire to not take off-duty meal periods whenever possible. Evid. Code § 623.

14        In summary on this issue, the Court finds that Plaintiffs have not proven that

15  Graniterock forced any driver to forego an off-duty meal period. Graniterock has affirmatively

16  notified its employees that they are entitled to a 30 minute off-duty meal period free from its

17  control through its policies, postings and communications. Graniterock did nothing to interfere

18  with drivers' ability to take an off-duty meal period. Rather, drivers did not take off-duty meal

19  periods because they did not want them. No one went hungry – they ate during their downtime.

20  While the dispatchers did not ask each employee every day whether s/he wanted an off-duty

21  meal period, every driver stated that if asked s/he would say s/he did not want one. The law

22  does not require that the dispatchers ask each day because that would be an exercise in futility.

23  Even if the Court were to adopt the "suffer or permit" legal standard that Plaintiffs advocate, it

24  would still find that Graniterock exercised at least reasonable care to see that its employees

25  received off-duty meal periods. Plaintiffs therefore have not met their burden of proof and

26  judgment on their First and Fifth Causes of Action must be entered for Graniterock. Since all

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

15

of the remaining causes of action are dependent upon Plaintiffs proving that meal periods were not provided, judgment for Graniterock on these causes of action shall be entered as well.

### E.    Plaintiffs' Damages Claims

Beyond the merits of their liability claims, Plaintiffs have the burden of proving as an essential element of their case that they suffered damage and the amount of the monies they seek under Section 17200. *Carpenter Foundation v. Oakes*, 26 Cal.App.3d 784, 799 (1972); Evid. Code § 500. Plaintiffs rely on the testimony of Dr. Levine to establish a violation rate, and upon Dr. Drogin to calculate damages and penalties based on that violation rate. The Court finds this testimony unreliable and unpersuasive.

To qualify to testify as an expert witness, a person must have "special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." Evid. Code § 720(a). It does not follow, and the Court is unaware of any authority, that permitting a witness to testify in an expert capacity because of their credentials compels the Court to credit their testimony. Dr. Levine was not shown to be an expert in coding techniques and the mistakes he made in his coding process and his failure to use an appropriate scientific method establish that he is not so qualified. (RT 7/7 14:10-19:20) The Court accordingly does not find Dr. Levine to be qualified as an expert to render the proffered opinions seeking to establish a "violation rate" for Graniterock's concrete-mixer drivers.

Even if Dr. Levine were qualified, his conclusions as to a violation rate, or which drivers were not provided meal periods on given days, are speculative, lack foundation, and are unreliable. An expert witness "does not possess a *carte blanche* to express any opinion within the area of expertise." *Jennings v. Palomar Pomerado Health Systems, Inc.*, 114 Cal.App.4th 1108, 1117 (2003) (striking expert testimony on causation); Evid. C. § 801. Dr. Levine did not use accepted scientific techniques to ensure that his analysis was reliable. For instance, Dr. Levine failed to ensure that the population from which the sample was drawn was correct, and thus included a timecard of driver Brad Tarp that was outside the correct population (because it was from a date before the relevant time period), which was extrapolated to hundreds of cards.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

16

RT 7/7 14:3-15:7)  Dr. Levine failed to ensure that the population he analyzed included all of the timecards.  (*Id.*)  Only after Graniterock noted these mistakes did Dr. Levine fix them.  (RT 7/7 14:10-19)  Dr. Levine did not take measures to ensure that all mistakes were found and corrected.  (RT 7/7 16:8-18:22)

Dr. Levine did not use a consistent set of coding rules that could be independently verified—he offered no written rules and Defendant's expert, Dr. Levy, was unable to replicate his analysis.  (RT 7/7 RT 18:23-27)  Dr. Levine failed to conduct any validation process to ensure that his coding reflected reality.  (RT 7/7 16:8-18:22)  The fact that a timecard from one Mr. McElroy was erroneously assumed to be a "no lunch" when he had the day off with pay, highlights that Dr. Levine's process made unsupported assumptions.  (RT 625:13-626:9)  Even Dr. Levine admitted at trial that he was not sure "it [was] the wise thing to do" to have re-coded McElroy's timecard, because by so doing, "there is inconsistency" in following his own coding rules.  (RT 625:24-626:15)  Dr. Levine testified that he relied on plaintiffs' counsel, Mr. Clapp, to tell him how to code the cards.  (RT 605:26-607:7)  While an expert may rely on hearsay, "it should be considered an improper matter unless the elements of necessity and indications of reliability are present" and without them "a finding against reasonable reliance by an expert is justified."  *Korsak v. Atlas Hotels, Inc.*, 2 Cal.App.4th 1516, 1524 (1992).  Dr. Levine's reliance on unspecified hearsay is not a reliable method of obtaining information, particularly where no evidence was admitted to evaluate what information plaintiffs' counsel imparted or how he obtained it.  Dr. Levine never established that his method of coding the timecards accurately reflected the experiences of the class, since Dr. Levine relied on what Plaintiffs' counsel told him rather than on any direct evidence of how the drivers completed their timecards or how Graniterock interpreted the time cards.  Dr. Levine could not cure these deficiencies by reducing the violations based on Graniterock's criticisms of his specific coding decisions because the entire process utilized by him was so unreliable as to be of insufficient probative value.

In summary, even if the Court were to admit Dr. Levine as a qualified expert and

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

17

conclude that Graniterock failed to "provide" the class meal periods, the Court concludes that the reliability of Dr. Levine's opinions and conclusions as to who missed meal periods is sufficiently in doubt that they are not persuasive. Plaintiffs thus failed to prove the number of missed meal periods for the class (or the "violation rate").

### F.     Dr. Drogin's Analysis

Plaintiffs' damages expert, Dr. Drogin, in turn relied on Dr. Levine's suspect coding which he assumed was done perfectly. (RT 686:19-24; 1520:24-28; Pltfs. Ex. 9) While expert opinion testimony may be premised on material that is not itself admitted into evidence, the material that forms the basis for an expert's opinion testimony must be reliable. *Korsak*, 2 Cal.App.4th at 1524; Evid. Code § 801(b). As our Supreme Court noted, "an expert's opinion which rests on assumptions of fact without evidentiary support or on speculative or conjectural factors has no evidentiary value . . . and may be excluded from evidence." *Lockheed Martin Corp. v. Superior Court*, 29 Cal.4th 1096, 1110 (2003)(citations omitted). This Court therefore does not rely upon either Dr. Drogin's calculation of a violation rate, or the damages calculated based on those violation rates, because they lack foundation, being based entirely on Dr. Levine's unreliable analysis.

Even assuming Dr. Drogin could rely on Dr. Levine's analysis, his damages calculations remain unpersuasive. For example, Dr. Drogin does not provide the true margin of error—only the margin of error based on the assumption that the coding was done perfectly. The real margin of error could be higher than 10%, which is too high to be reliable based on *Bell v. Farmers Insurance Co.*, 115 Cal.App.4th 715 (2004), noted by Dr. Drogin as supporting a 10% margin. Further, *Bell v. Farmers* is distinguishable based on its unusual facts. In that case, both experts agreed on a method to calculate unpaid overtime and on the average or mean amount of overtime worked. *Id.* at 753. This average overtime was based on deposition testimony of 295 persons—not an expert's interpretation of time records. Most importantly, the court in *Bell* considered only whether the trial court abused its discretion in adopting its trial

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

18

1   management plan and whether the use of statistical inference violated due process. *Id.* at 747.

2   The court found that Farmers had waived its objections to the procedure and to the "one hour"

3   of overtime margin of error used by Dr. Drogin. *Id.* at 755. By contrast, Graniterock objected

4   to the qualifications of Dr. Levine and to the admission of the opinions of both Dr. Levine and

5   Dr. Drogin, including their methodology and margin of error. (RT 650:15-651:9; 672:7-673:9;

6   675:21-28; 679:26-680:4; 681:21-27; 685:12-17)

7       Moreover, the Court finds Dr. Drogin's attempted projection of damages for the time

8   period after March 31, 2011, (Pltfs. Exh. 8) speculative and unreliable, even if Dr. Levine's

9   coding was assumed to be entirely accurate. Dr. Drogin ignored his own data that showed that

10   violation rates dropped from 89% to 81% over time, and instead assumed that the violation rate

11   stayed the same in 2010 and 2011, including during the time period after March 31, 2011, for

12   which Dr. Drogin and Dr. Levine had no data. (RT 7/7 37:2-38:12) Dr. Drogin did not dispute

13   that his small sample size means that the range of damages calculated is extremely broad. His

14   calculated margin of error—without considering the error rate in coding the timecards—is plus

15   or minus 14.84%, or roughly 30% of the claimed projected damages for this time period. (RT

16

17   7/7 38:17-39:10)

18       Damages must be proven with a reasonable certainty. "Damages which are uncertain,

19   contingent, or speculative cannot be recovered." *American Poultry Feeder Co. v. Wedel*, 213

20   Cal.App.2d 509 (1963) (reversing damages award). Plaintiffs failed to establish that the

21   timecards showed when (if ever) members of the class were not "provided" meal periods as

22   that term is defined above (that being times when class members were frustrated or prevented

23   from taking off-duty meal periods). Plaintiffs consequently failed to prove the number of times

24   (if any) Graniterock drivers were not provided 30 minute uninterrupted off-duty meal periods

25   when employed for more than six hours in a day, or the number of times that Graniterock did

26   not pay one hour's pay in such instances. As a result, Plaintiffs did not meet their burden of

27   proving ascertainable damages or the entitlement to restitution with a reasonable certainty, an

28   essential element of their First and Fifth Causes of Action. Since the Court has not found that

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*              19

Plaintiffs proved damages, the Court need not discuss the amount of offset that might be appropriate based on the premium pay that Graniterock proved that it paid the drivers.[2] Judgment for Graniterock shall be entered on these causes of action and the remaining penalty causes of action which are dependent thereon and discussed below.

### G.    Penalty Causes of Action

Plaintiffs seek waiting time penalties under Labor Code § 203.  Since Plaintiffs have not met their burden to prove that meals were not provided, to establish a violation rate or to demonstrate with reasonable certainty the amount of damages that should flow from any failure to provide meal periods, the Court finds that Plaintiffs are not entitled to these penalties. Moreover, these penalties are not assessed when the parties have a good faith dispute regarding whether meal periods were "provided" to drivers.  Graniterock has shown that its CEO had a good faith belief that the nature of the work justified on-duty meal periods and that its meal period agreement was valid, relying upon the result of an action brought by the concrete mixing trade association in 2005 that such ODMPAs were appropriate for the industry.  (RT 497:18-498:28, 1322:13-1323:5; Exh. 562)[3]  The Court finds no credible evidence of pressure to sign ODMPAs.  Even though the form of the ODMPA was not revised, Graniterock never enforced the one day revocation period, including after the April 23, 2010 Order, and even if Plaintiffs could claim that it did, only three drivers revoked and they were offered meal periods promptly. The fact that Graniterock had a process to pay "Code 38" pay and in fact did pay the one hour's wage (Ex. 242) to drivers who did not sign ODMPAs or revoked and were directed to work through lunch demonstrates its good faith attempt to comply with the law.

---

[2] However, the Court observes that an offset would be legally available to Graniterock if damages had been proven, and further notes that the testimony of Dr. Levy computing the amount of offset was undisputed.

[3] The Court is concerned that Mr. Woolpert continued at trial to contend the "one-day's" notice in Defendant's ODMPA was legitimate.  A refusal of Defendant to abide by the Court's decision is a separate issue which may serve as the basis for further proceedings.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

20

Exhibit D

Plaintiffs contend that Graniterock's interpretation of its ODMPA was not reasonable, relying on the April 23, 2010 order.  Plaintiffs cite no authority that previously so held, and thus the dispute between the parties was in good faith.  As the court held in *Amaral v. Cintas*, 163 Cal.App.4th 1157, 1209 (2008), the fact that the defense ultimately proves unsuccessful does not mean the dispute was not in good faith.  *Id.* at 1202.  While Plaintiffs contend that after Judge Huber's ruling Graniterock could not have had any good faith dispute, the evidence shows that Defendant did not enforce the "one day's written notice" after the April 23 Order.  Plaintiffs assert that Graniterock never informed its drivers that it was not enforcing the one-day notice provision in the ODMPA after the April 23 Order, but this assertion is irrelevant since Plaintiffs stipulated that the one-day revocation provision had nothing to do with any driver's decision not to revoke the ODMPA.  (RT 1129:10-12; Exh. 563)  The Court finds that Plaintiffs did not prove that Graniterock acted "willfully" within the meaning of Section 203.  Since Plaintiffs failed to prove the essential elements of this claim, as well as failing to prevail on their First Cause of Action, the Court therefore grants judgment in favor of Graniterock on Plaintiffs' Second Cause of Action.

## H.   Plaintiffs' Third Cause Of Action For Wage Statement Penalties

Labor Code § 226(a) specifies nine categories of information that must be provided on wage statements, including the hours worked.  Plaintiffs contend that Graniterock violated Section 226(a) not because it excluded any of these categories, but because Graniterock failed to state that Plaintiffs had earned one additional hour of pay for meal periods not provided, the very issue in this case.  The legislative history shows that the purpose of Section 226 was for transparency, not double recovery.  *See* Cal. Dept. of Indus. Relations, Enrolled Bill Rep. on A.B. No. 3731 (1976) at p. 1 ("[e]mployees would benefit by having an itemized statement of deductions which would include both the gross and net wages so that they will be in a better position to evaluate the effect of payroll deductions and their accuracy."); Assem. Com. On Lab. Relations, Analysis of A.B. No. 3731 (1976), pp. 1-2 ("The purpose of requiring greater

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

21

wage stub information is to insure that employees are adequately informed of compensation received and are not shortchanged by their employers.") The DLSE has agreed that the purpose of the wage statement requirement is to provide transparency as to the calculation of wages." Cal. DLSE Op. Ltr (May 17, 2002), p. 3; Cal. DLSE Op. Ltr (July 6, 2006), p. 2. This Court granted judicial notice of these documents, finds them persuasive and adopts their reasoning. *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 324 (2005).

In keeping with this legislative history, courts have interpreted the purpose of Section 226 to be a statutory requirement that employers provide sufficient, itemized wage-related statements that the employee may easily determine whether he or she has been appropriately compensated for hours worked. *Wang v. Chinese Daily News, Inc.*, 435 F.Supp.2d 1042, 1050-51 (C.D. Cal. 2006).

The Court finds that § 226(a) is intended to ensure that employers provide accurate itemized wage statements to employees, not to govern employers' obligations with respect to meal periods. Graniterock indicates on the statements when a penalty hour is given, denoting it as Code 38 pay. Consequently, since Plaintiffs admit that Graniterock's wage statements accurately stated the pay they *were* provided, and because there is a separate Labor Code section addressing the one hour meal period penalty, judgment is granted on this cause of action.

In addition, to prevail Plaintiffs must show that the class "suffer[ed] injury as a result of a knowing and intentional failure by an employer to comply" with the requirements of Section 226(a). *Elliot v. Spherion Pacific Work*, 572 F.Supp.2d 1169, 1179-80 (C.D. Cal. 2008). Plaintiffs have not offered such proof of injury. Plaintiffs concede, as they must, that Code 38 pay was clearly shown on the wage statements when it was paid. (Jt. Exh. 11) Thus whether the class was paid for meal periods missed was not hidden nor did it require computation. The only evidence Plaintiffs offered is that they had difficulty determining when meal periods were missed. (RT 1607:18-28) But this is not the type of "injury" contemplated by the statute since there is no legal requirement that wage statements provide this information. Plaintiffs are

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*                                                                22

Exhibit D

1   attempting to bootstrap the one hour's pay that they seek in their Fifth Cause of Action as

2   evidence of injury for this cause of action, resulting in a double recovery.

3          Even assuming that Plaintiffs were able to overcome their hurdles in proving a § 226(e)

4   claim, Dr. Drogin's penalty calculations (Pltfs. Ex. 10) assume that the violations are spread

5   randomly across the drivers' days, weeks, locations and time, as well as across drivers, despite

6   evidence that the number of missed meal periods was not the same from driver to driver nor

7   randomly spread across locations or time periods.   The Court concludes that Dr. Drogin's

8   random distribution methodology biased his penalty calculation upwards. (RT 7/7 41:4-45:17;

9   Exh. 554)   Dr. Levy's testimony established that as a result of Dr. Drogin's biased

10  methodology, Dr. Drogin inflated the total penalties by spreading penalties from those drivers

11  who reach the cap of $4,000 to other employees who were not entitled to recover additional

12  penalties.   (Id.)   The Court therefore rejects Plaintiffs' penalty calculation and finds that

13  Plaintiffs failed to meet their burden of proving the amount of penalties to which they would be

14  entitled, even assuming they were able to prove each of the other essential elements of this

15  claim, which they have not done.

16

17         Further, if Plaintiffs could prove injury, they still must show that the inaccuracies in the

18  wage statements were "knowing and intentional."  Lab. Code § 226(e).  Plaintiffs claim that

19  because Graniterock "knew" it was violating Labor Code Section 226.7 in not paying one

20  hour's wage that it automatically knowingly and intentionally violated Section 226(e).  Yet, the

21  two obligations are not identical and thus proof of violation of one statute does not prove a

22  knowing and intentional violation of the other.  Graniterock disputes in good faith that the one

23  hour penalty pay is due. (RT 7/7 116:13-117:5)  Plaintiffs consequently did not prove a

24  knowing and intentional inaccuracy in Graniterock's wage statements.  The Court finds this an

25  independent reason to grant judgment in Graniterock's favor on this Third Cause of Action, and

26  as   a   result   enters   judgment   for   Graniterock   on   this   cause   of   action.

27  //

28

Driscoll, et al. v. Granite Rock Company
Santa Clara County Superior Court, Case No. 1-08-CV-103426
Statement of Decision

23

**I.     Plaintiffs' Claim for Penalties Under PAGA**

Plaintiffs seek the default penalty under PAGA, Labor Code § 2699(f), based on an alleged violation of Labor Code § 226.7, which requires one hour's pay for meals that were not provided.  Since Plaintiffs have not met their burden to prove that meals were not provided or to establish a violation rate, the Court finds that Plaintiffs are not entitled to PAGA penalties.

**J.     The Higher "Subsequent Violation" Rate to Calculate Penalties Under PAGA**

Plaintiffs cannot obtain penalties that might be awarded under Labor Code Section 2699(f) for more than the $100 per pay period rate as no court or agency has found Graniterock to have violated Labor Code § 226.7.  Labor Code § 2699(f) provides two penalty rates: "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation;" and "two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."  Plaintiffs interpret the statute to apply the "subsequent violation" rate to every pay period after the very first pay period up to the date of judgment.  But Plaintiffs have no legal authority to support this interpretation.  To the contrary, similar statutory language referencing "initial" violations has been held to refer to *all* violations before a court judgment or administrative citation, whereas "subsequent" violations references those occurring after a judgment was rendered.

In *Amaral*, the court interpreted the amount of penalties to be imposed under Labor Code §§ 210 and 225.5, which provide for "a civil penalty...(a) for any initial violation, one hundred dollars ($100) for each failure to pay each employee; (b) for each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee...."  The Court held that this language contemplates the imposition of repeated penalties for each pay period that an "initial violation" continues.  Therefore, a "subsequent" violation (which carries a double penalty) means something other than an underpayment occurring after the first pay period.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

24

In *Amalgamated Transit Union Local v. Laidlaw Transit Services*, 2009 U.S. Dist. Lexis 69842 (S.D. Cal. Aug. 10, 2009), the court likewise interpreted the penalty rate under Labor Code § 558, which provides that "[f]or any initial violation, fifty dollars ($50.00) for each underpaid employee for each pay period during which the employee was underpaid in addition to the amount which is sufficient to recover unpaid wages," and "[f]or each subsequent violation, one hundred dollars ($100.00) for each underpaid employee for each pay period during which the employee was underpaid...." Relying on *Amaral*, the court held that this language imposed the initial violation rate until and unless a court or commissioner had notified the employer of a violation. *Id.* at *26-27.

Like the statutory schemes considered by *Amaral* and *Amalgamated Transit*, the PAGA default penalty requires the initial violation rate of $100 per pay period if the Court were inclined to impose such PAGA default penalties. The California Division of Labor Standards Enforcement has agreed with this interpretation. DLSE Dec. 23, 1999 Memo.

None of Plaintiffs' attempts to justify their interpretation of the statute has merit. Plaintiffs contend that *Amaral* concerned violations that occurred before PAGA was passed. Yet this distinction is not valid because *Amaral* actually considered whether the imposition of penalties under PAGA had been proper. Plaintiffs' attempt to distinguish *Amaral* on the basis that meal periods were not at issue is not persuasive since the statutory construction is the same. Plaintiffs contend that their mere issuance of a notice by Plaintiffs' counsel to the Labor and Workforce Development Agency ("LWDA") and the employer, as required by Section 2699.3(a)(1), is sufficient to trigger the higher subsequent violation rate. The notice gives the agency an opportunity to investigate, and if it chooses not to investigate, then the employee may bring suit pursuant to Section 2699. *Id.*, § 2699.3(a)(2). No citation or finding of wrongdoing ensues from this notice letter, and it hence is hardly the equivalent of an agency finding after an investigation. *Amalgamated Transit*, 2009 U.S. Dist. Lexis 69842 at *25 (rejecting this argument).

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

25

Exhibit D

1    Plaintiffs dismiss this decision as not binding, but Plaintiffs ignore *Amaral*, which is

2  binding on this Court and supports Graniterock.  Further, Plaintiffs simultaneously ask this

3  Court to rely on another non-binding federal district court case, *Smith v. Brinker International*,

4  2010 U.S. Dist. Lexis 54110 (N.D. Cal. May 5, 2010), as supposedly holding that the higher

5  subsequent violation rate applies to the second pay period.   While the defendant there

6  calculated penalties in the manner Plaintiffs here advocate, the court did not hold that this

7  calculation method was correct.  It merely found that "solely for convenience," even accepting

8  the employer's assumptions that maximized the amounts of penalties at issue, the $75,000

9  threshold still was not met.

10    In sum, the "initial" violation rate applies here because Graniterock has not been

11  adjudged liable.  Further, under the one year statute of limitations, the penalties cannot begin on

12  December 18, 2006—as calculated by Plaintiffs' expert—but instead cannot start until January

13  17, 2007, one year before the complaint was filed.  *Thomas v. Home Depot USA, Inc.*, 527

14  F.Supp.2d 1003, 1008 (N.D. Cal. 2007).[4]

15

16    Further, PAGA penalties are assessed on a pay period basis, meaning that the same

17  penalty can be assessed per employee per pay period regardless of whether only one meal

18  period is missed or all five meal periods are missed in that pay period.  Thus, the amount of

19  penalties assessed would vary depending upon how those missed meal periods are distributed

20  among workweeks and among drivers.  (7/7 RT .41:4-45:17.)  Dr. Drogin's calculation of

21  PAGA penalties utilizes a random distribution method that assumes that these missed meal

22  periods were spread evenly across the drivers' days, weeks, locations and time, as well as

23  across drivers, despite the fact that Dr. Drogin's own analysis shows that violation rates are not

24  randomly spread across locations or time periods.  (RT 7/7 41:8-28.)  Dr. Drogin's calculation

25

26

27  [4] While Plaintiffs might arguably have been entitled to tolling for *up to* 33 calendar days (the maximum time period
     under Section 2699.3(a)(2)(A) for the LWDA to respond to a notice sent by Plaintiffs' counsel under Section
28  2699.3(a)(1)), they offered no evidence to establish when—or whether—the Labor and Workforce Development
     Agency issued a non-investigation notice, and thus Plaintiffs did not establish what tolling period under Labor Code
     section 2699.3(d) might apply.

results in an assessment of penalties for the maximum number of workweeks—all but two workweeks in a single year. (*Id*; Exh. 553) If one instead assumed that missed meal periods were clustered, the number of workweeks in which a penalty would be assessed would drop significantly. (Exh. 553) The Court thus rejects Dr. Drogin's calculation as biased upward.

The flaw in Dr. Drogin's analysis highlights another failure in Plaintiffs' proof. By statute, PAGA penalties are required to be assessed for specific pay periods in which rights were shown to be violated. An "aggrieved employee" is defined as one "against whom one or more of the alleged violations *was committed*." Lab. Code § 2699(c). Subsection (f) states that "any assessment of penalties for violations of the Labor Code must be made as to 'each aggrieved employee per pay period.'" *See Hibbs-Rines v. Seagate Technologies*, 2009 U.S. Dist. Lexis 19283 at *11 (N.D. Cal. Mar. 2, 2009). Plaintiffs do not offer evidence as to each "aggrieved employee." Evidence that is extrapolated to a class fails to show that employees are entitled to any penalties or for which pay periods. Plaintiffs' statistical evidence is thus irrelevant to their PAGA claims and must be excluded for that purpose. Since Plaintiffs assume that each driver was injured, and offer no evidence as to which pay periods those injuries occurred, this evidence is insufficient to assess penalties as to "each aggrieved employee per pay period." Plaintiffs thus failed to prove the amount that could be owed as civil penalties even assuming they had been able to otherwise establish entitlement to penalties under PAGA, which they have not.

The Court finds under these circumstances it would be unjust, arbitrary and improper to impose any, let alone millions of dollars in PAGA penalties. The Court therefore exercises its discretion under Section 2699(e)(2) to eliminate PAGA penalties and grant judgment for Graniterock on Plaintiffs' Fourth Cause of Action.

## K.     Injunctive Relief

Plaintiffs seek an injunction to compel Graniterock to require all drivers to either take an off-duty 30 minute meal period or receive one hour's wage every day. This request is

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

27

denied.

Plaintiffs are all former employees with no stake in what happens at Graniterock after judgment. Not one current truck driver testified in support of Plaintiffs. Current truck drivers testified consistently that they were satisfied with their ability to obtain a meal period when they wanted one. This Court is reluctant to use the claims of former employees who will derive no benefit from the injunction to alter dramatically the lives of current employees. *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 245 (C.D. Cal. 2006). "Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). Moreover, Mr. Woolpert has instructed dispatchers to ensure that off-duty meal periods are given to any driver who revokes an ODMPA without waiting one day. (RT 7/11 1494:18-1495:3) This Court therefore finds in its discretion that injunctive relief is not warranted.

**L.   Defendant's Request to Decertify the Class**

In light of the Court's decision as to all other claims, this request is denied as moot.

**M.   Plaintiffs' Objections to Proposed Decision**

As noted, following the service of the Court's Tentative Decision Plaintiffs submitted a "Request for Statement of Decision on Principal Controverted Issues" on September 6, 2011 ("Plaintiffs' Request"). The Court considers Plaintiffs' Request to be pursuant to Code of Civil Procedure §634; it asks that the Court make additional rulings on forty-five "principal controverted issues."

A statement of decision must explain the legal and factual basis of the decision "as to each of the principal controverted issues" at trial. Code of Civil Procedure. § 632. Findings on subsidiary issues are not required. Where, as here, the court has addressed the ultimate issues in the case and has set out the ultimate facts supporting that determination as well as the legal basis for its decision, the court has met the requirements of Section 632. *Muzquiz v. City of*

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

28

1  *Emeryville*, 79 Cal. App. 4th 1106, 1125-1126 (2000) (finding adequate a statement of decision

2  which stated that plaintiff had not borne her burden of proving the stated reasons for

3  eliminating her position were pretextual and addressed the ultimate facts and legal basis

4  supporting that determination).

5      The Court is not required to address how it resolved intermediate evidentiary conflicts

6  or respond point by point to the forty-five various issues posed in Plaintiffs' Request. *Pannu v.*

7  *Land Rover North America, Inc.*, 191 Cal. App. 4th 1298, 1314 (2011). For example, in

8  *Marriage of Balcof*, 141 Cal. App. 4th 1509, 1530 (2006), the appellate court explained that the

9  trial court was not required to provide a statement of decision addressing every single one of a

10  litigant's thirty-seven questions included in its request for a statement of decision on "principal

11  controverted issues." Likewise, in *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th

12  1372, 1380 (1993), the appellate court held that a statement of decision adequately covered

13  principal issues although it failed to respond to a party's outline of thirty-six issues claimed to

14  be in controversy.

15      After further review the Court concludes this decision fully complies with the statutory

16  requirements.

17

18  **III.    CONCLUSION AND ORDER**

19

20      The salutary concept of ensuring employees have time for a lunch break is not subject

21  to dispute. Whether for health, safety,[5] or morale issues this concept merits consideration and

22  compliance by employers. Here the Court concludes that the overwhelming evidence is that

23  the nature of the concrete business renders a routinized lunch break for mixer drivers difficult,

24  if not impossible, making on-duty meal period agreements permissible under the Wage Order.

25  The evidence presented was consistent that the class members — including the class

26  representatives themselves — are content to eat while waiting in line for their truck to be filled

27

28

---

[5] There was no evidence that safety problems occurred as a result of Defendant's practices *vis a vis* the meal break issue.

---

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

29

1    or emptied, or to forego their lunch break and leave work early instead.

2         This is not a case where class members toil in ignorance and it is only when a lawsuit is

3    brought do they become aware of their possible recovery. Defendant took reasonable steps

4    through meetings, handbooks, and posted materials, to inform the drivers of their rights, and to

5    compensate them in those instances when they had not signed or had revoked their ODMPA. It

6    is striking that no grievances were filed regarding the Defendant's practices in this regard,

7    including complaints to the union although several of the drivers/witnesses were union shop

8    stewards. At bottom, the drivers knew what their rights were but elected to forego those rights

9    for their own reasons.

10        As has been stated in the context of insurance bad faith claims "litigation is not a

11   game", *J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4[th] 6,

12   20. This Court declines to adopt a "gotcha" theory of litigation that imposes liability when the

13   facts and real-world concerns dictate no liability.[6]  The Court concludes this is such a case as

14   Plaintiffs did not sustain their burden of proof.

15

16        Judgment shall be entered for Defendant on all claims. Defendant shall prepare a form

17   of judgment and submit it to the Court after opposing counsel has had an opportunity to review

18   it. Defendant to recover its costs.

19

20        IT IS SO ORDERED.

21

22   Dated: September 20, 2011

23                                        Honorable James P. Kleinberg
                                          Judge of the Superior Court
24

25

26

27

28   _____

[6] *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4[th] 644, 654.

*Driscoll, et al. v. Granite Rock Company*
*Santa Clara County Superior Court, Case No. 1-08-CV-103426*
*Statement of Decision*

30

Exhibit D

Exhibit E

# ENROLLED  BILL  REPORT

A-117 (REV. 8/

| AGENCY  AGRICULTURE & SERVICES | BILL NUMBER AB 3731 |
|---|---|
| DEPARTMENT, BOARD OR COMMISSION  INDUSTRIAL RELATIONS | AUTHOR Lockyer |

Requires employers to provide wage deductions on payroll stubs and permits employees suffering injury by an employer who knowingly or intentionally fails to provide this information to recover actual damages and reasonable attorney fees.

The current law requires employers to supply most of the information but does not specifically provide for damages. Such damages would be in the nature of loss of benefits under a health and welfare plan if the employer failed to make contributions or deductions and the employee was unaware of such failure due to lack of information on the payroll stub.

Employees would benefit by having an itemized statement of deductions which would include both the gross and net wages so that they will be in a better position to evaluate the effect of payroll deductions and their accuracy. Permits employer to aggregate those deductions authorized in writing by the employee. Most enlightened employers now provide this information as it prevents disputes.

Fiscal impact - Minimal.

Support - labor organizations; opposition - employer associations.

Al Reyff, Assistant Labor Commissioner
Division of Labor Standards Enforcement
Telephone:   Office (415) 557-3827    ATSS 597-3827
             Home   (415) 564-2807

Exhibit E

Exhibit F

ASSEMBLY COMMITTEE ON LABOR RELATIONS
Bill Lockyer, Chairman

HEARING DATE:  May 18, 1976

BILL:    AB 3731  (As Amended May 12, 1976)

AUTHOR:  Lockyer

SUBJECT:  Wage Statement and Workers Compensation Information

BACKGROUND

    Existing law requires employers to provide a wage stub or
statement showing all deductions, dates of pay period, name of
employee and employer.  There are no penalties for a failure to
comply with this provision.

    Employers are also required to conspicuously post at their
place of employment the name of the current workers compensation
insurance carrier and to inform injured employees of
compensation benefits.

PROPOSED LEGISLATION

    In addition to those items now required under law to be shown on
wage stubs, this measure requires the listing of gross and net
income, and all deductions by item, and entitles any employee
to damages for any injury suffered as a result of an employer's
knowing and intentional failure to provide wage information.

    This measure also requires every employer, except homeowners
employing domestics, to inform every new employee of workers
compensation benefits and medical treatment, and the procedure
for obtaining such benefits and treatment in the event of an
employee's work injury.

ANALYSIS

    The purpose of requiring greater wage stub information is to
insure that employees are adequately informed of compensation
received and are not shortchanged by their employers.  Lack of
wage information or improper information can also make it difficult
for employees to establish eligibility for unemployment insurance.

    The requirement that employees be informed of workers
compensation benefits and medical treatment will insure that
employees are aware of their rights to treatment and benefits
and know the correct procedure to obtain them.  There is

Exhibit F

Exhibit F

AB 3731                    -2-

evidence that certain workers, particularly non-english
speaking, are not aware of workers compensation and fail to
receive benefits when injured. Presently, many employers voluntarily
provide such information.


    This measure is supported by the California Rural
Legal Assistance and the Western Conference of Teamsters.

Exhibit F

Exhibit G

**STATE OF CALIFORNIA**                                                                 Arnold Schwarzenegger, *Governor*

DEPARTMENT OF INDUSTRIAL RELATIONS

Headquarters

P.O. Box 420603
San Francisco, CA  94142
Tel: (415) 703-4810
Fax: (415) 703-4807

**Robert A. Jones**
*Acting State Labor Commissioner*
*and Chief Counsel*
*Division of Labor Standards Enforcement*

July 6, 2006

Colette Wolf
Boise Cascade LLC
Legal Department
11111 West Jefferson Street
P.O. Box 50
Boise, Id. 83728

Re: Electronic Itemized Wage Statements

Dear Ms. Wolf:

Thank you for your inquiry concerning the application of Labor Code section 226(a). Specifically, you have requested an opinion as to whether under certain circumstances an employer's obligation to provide an employee with a "wage statement" may be met by providing an employee with such a record in electronic form, as an alternative to a "hard copy" paper document.

The requirement for an employer to provide employees with wage statements is contained in Labor Code section 226(a). Section 226(a) provides:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or an applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if

**2006.07.06**

Exhibit G

the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates[1] in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

The purpose of the wage statement requirement is to provide transparency as to the calculation of wages. A complying wage statement accurately reports most of the information necessary for an employee to verify if he or she is being properly paid in accordance with the law and that deductions from wages are proper.[1] Section 226(a) makes it possible for an employee to retain a copy of his/her own pay records which are not subject to alteration.

Labor Code section 226(a) indicates that a wage statement may be in the form of an "accurate itemized statement in writing" when the employee is paid by personal check or cash. Labor Code section 8 states in pertinent part:  "Writing includes any form of recorded message capable of comprehension by ordinary visual means." As an electronically stored wage statement which is accessible by an employee may be read on a screen or printed and read as a hard copy, it appears to qualify as a "statement in writing."

Section 226(a) provides that an employee being paid with a payroll check be provided a wage statement as a "detachable part of the check." While the reference to "detachable part of the check" is susceptible to an interpretation that a "hard copy" may be required, in the context of the entire subsection it appears to allow for the continued use of the convenient and traditional "pay stub" alternative to a separate statement in writing.

The apparent intent of both forms of wage statements described in Section 226(a) is to allow employees to maintain their own records of wages earned, deductions, and pay received. The Division in recent years has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at

---

[1]  Whether an employee is properly classified as exempt from the overtime pay requirements of Labor Code section 510 and the IWC Orders is not susceptible to verification from review of the wage statement alone. However, a wage statement may reveal that an employee is non-exempt if it shows that an employee is paid a salary of less than twice the minimum wage calculated on the basis of a 40 hour week. See Labor Code section 515(a).

**2006.07.06**

Exhibit G

no expense to the employee. Additionally, the Division has indicated that the record keeping requirements of Labor Code section 226 and 1174 must be adhered to and the pay records must be retained by the employer for a period of at least three years and be accessible by employees and former employees. Any electronic wage statement system must incorporate proper safeguards that ensure the confidentiality of the employee's confidential information.

The system envisioned by your client appears to meet the concerns outlined above. Your client indicates that its electronic wage statement procedures will incorporate the following features:

1.   An employee may elect to receive paper wage statements at any time;

2.   The wage statements will contain all information required under Labor Code section 226(a) and will be available on a secure website no later than pay day;

3.   Access to the website will be controlled by unique employee identification numbers and confidential personal identification numbers (PINs). The website will be protected by a firewall and is expected to be available at all times with the exception of downtime caused by system errors or maintenance requirements;

4.   Employees will be able to access their records through their own personal computers or by company provided computers. Computer terminals will be available to all employees for accessing these records at work.

5.   Employees will be able to print copies of their electronic wage statements at work on printers that are in close proximity to the computer or computer terminal. There will be no charge to the employee for accessing their records or printing them out. Employees may also access their records over the internet and save it electronically and/or print it on their own printer.

6.   Wage statements will be maintained electronically for at least three years and will continue to be available to active employees for that entire time. Former employees will be provided paper copies at no charge upon request.

There is no requirement for employers to obtain approval from the Division before implementing an electronic wage statement system. Indeed the Legislature has not established such a duty on the part of the DLSE or provided DLSE with such administrative authority. As with most provisions of the Labor Code employers are required to comply without any formal action by the Labor Commissioner.[2] Due to both changes in the law and confusion that has resulted from previous Opinion Letters 1999.07.19 and 2002.12.04, this letter supersedes them and they are withdrawn.

---

[2]  Some provisions of the Labor Code and Wage Orders require prior Labor Commissioner action in the form of issuance of a registration, granting of approval, or provision of consent. For example, there are registration requirements in the garment, car wash, and farm labor industries which require employers to obtain a registration from the Labor Commissioner prior to employing workers. Similarly, employers must obtain the "consent" of the Labor Commissioner before a minor may be employed in the entertainment industry. Employers also may apply to the Labor Commissioner for exemptions to certain sections of the Orders of the Industrial Welfare Commission. [These examples are not intended as an exhaustive list of such provisions.]

**2006.07.06**

Exhibit G

Exhibit G

This opinion letter sets forth an interpretation of Labor Code section 226(a) which is utilized in our administrative enforcement efforts of the wage statement requirement. This interpretation is based on our understanding as to the current state of the law and, of course, is subject to subsequent interpretations by the courts and/or action of the Legislature. Employers are advised that while the courts may find this opinion of the enforcement agency to be persuasive authority, they are not required to follow this interpretation and that compliance with the guidelines suggested herein do not establish a "safe harbor" in actions brought by private parties under auspices of the Labor Code Private Attorneys General Act of 2004 (PAGA) or other private enforcement actions.

This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the questions presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Division of Labor Standards Enforcement.

Thank you for your attention to the requirements of the California wage and hour laws and your inquiry.

Very Truly Yours,

/s/

Robert A. Jones
Chief Counsel and Acting
Labor Commissioner

**2006.07.06**

Exhibit G

Exhibit H

STATE OF CALIFORNIA

DEPARTMENT OF INDUSTRIAL RELATIONS

INDUSTRIAL WELFARE COMMISSION

Public Hearing

June 30, 2000

State capitol, Room 4202

Sacramento, California

Exhibit H

Exhibit H

2

P A R T I C I P A N T S

--o0o--

<u>Industrial Welfare Commission</u>

BILL DOMBROWSKI, Chair

BARRY BROAD

LESLEE COLEMAN

DOUG BOSCO

HAROLD ROSE

<u>Staff</u>

ANDREW R. BARON, Executive Officer

MARGUERITE STRICKLIN, Legal Counsel

RANDALL BORCHERDING, Legal Counsel

MICHAEL MORENO, Principal Analyst

DONNA SCOTTI, Administrative Analyst

NIKKI VERRETT, Analyst

Exhibit H



I N D E X

|  | Page |
|---|---|
| Proceedings | 6 |
| Approval of Minutes | 6 |
| Amendments to Wage Orders | 7 |
| Reconsideration of May 26 Actions re Healthcare | 11 |
| TOM RANKIN, California Labor Federation, AFL-CIO | 15 |
| ALLEN DAVENPORT, Service Employees International Union | 16 |
| BARBARA BLAKE, United Nurses Associations of California, AFSCME | 17 |
| RICHARD HOLOBER, California Nurses Association | 18 |
| DON MADDY, George Steffes, Inc.; California Healthcare Association | 19 |
| Meal and Rest Period Proposals | 23 |
| TOM RANKIN, California Labor Federation, AFL-CIO | 25 |
| JULIANNE BROYLES, California Chamber of Commerce | 26 |
| JAMES ABRAMS, California Hotel and Motel Association | 27 |
| SPIKE KAHN, AFSCME Council 57 | 30 |
| Amendment to Wage Order 5 - Personal Attendants, Resident Managers, 24-Hour Childcare | 33 |
| Commercial Fishing Regulations | 35 |
| Ski Industry Regulations | 38 |
| TOM RANKIN, California Labor Federation, AFL-CIO | 39 |

Exhibit H


PAM MITCHELL, Mammoth Mountain Ski Area employee   41

BILL CAMP, Sacramento Central Labor Council      43


INDEX (Continued)                                Page

MARCIE BERMAN, California Employment Lawyers      44
     Association

PATRICIA GATES, Van Bourg, Weinberg, Roger &     45
     Rosenfeld

BOB ROBERTS, California Ski Industry Associations 47

Executive, Administrative, and Professional Duties   59

BRUCE YOUNG, California Retailers Association     61

LYNN THOMPSON, Law Firm of Bryan Cave, LLP;      63
     California Retailers Association

ART PULASKI, California Labor Federation, AFL-CIO 106

TOM RANKIN, California Labor Federation, AFL-CIO  111

WALLY KNOX, California State Assembly member     113

JUDY PEREZ, Communication Workers of America     117

MARCIE BERMAN, California Employment Lawyers      117
     Association

LAURA HO, Saperstein, Goldstein, Demchak &       124
     Baller

PATRICIA GATES, Van Bourg, Weinberg, Roger &     126
     Rosenfeld

TOM BRANDEN, Machinists Union, District          135
     Lodge 190

DON HUNSUCKER, United Food and Commercial        137
     Workers Local 1288

WALTER JOHNSON, San Francisco Labor Council      145

Summaries and Statements as to the Basis                161

Extension of Interim Wage Order 2000                    162

Other Business                                          163

    MARY LOU THOMPSON, Littler, Mendelson, Fastiff,     163
        Tichy & Mathiason
INDEX (Continued)                                       Page

    TOM RANKIN, California Labor Federation, AFL-CIO 166

Adjournment                                             167

Certificate of Reporter/Transcriber                     168

**GOLDEN STATE REPORTING**
**P. O. BOX 5848**
**Monterey, CA  93944-0848**
**(831) 663-8851**



1          COMMISSIONER ROSE:  Aye.

2          COMMISSIONER DOMBROWSKI:  Five to nothing.  That

3     is adopted.

4          Let's go to Item 4.  Commissioner Broad has

5     circulated language concerning meal periods and rest

6     periods for Orders 1 through 13 and 15.  Would you like

7     to --

8          COMMISSIONER BROAD:  Yes, Mr. Chairman.  This is

9     a rather -- a relatively small issue, but I think a

10    significant one, and that is we received testimony that

11    despite the fact that employees are entitled to a meal

12    period or rest period, that there really is no incentive

13    as we establish it, for example, in overtime or other

14    areas, for employers to ensure that people are given

15    their rights to a meal period and rest period.  At this

16    point, if they are not giving a meal period or rest

17    period, the only remedy is an injunction against the

18    employer or -- saying they must give them.

19         And what I wanted to do, and I'd to sort of

20    amend the language that's in there to make it clearer,

21    that what it would require is that on any day that an

22    employer does not provide a meal period or rest period in

23    accordance with our regulations, that it shall pay the

24    employee one hour -- one additional hour of pay at the

1   employee's regular rate of compensation for each workday

2   that the meal or rest period is not provided.

3           I believe that this will ensure that people do

4   get proper meal periods and rest periods.  And I would --

5           COMMISSIONER DOMBROWSKI:  Let me ask a question.

6   If you're an employer and you provide for a 30-minute

7   meal period a day, and your employee misses that meal

8   period or eats while working through that meal period, I

9   believe you get paid, correct?  It's a paid -- it would

10  then be a paid meal period.

11          COMMISSIONER BROAD:  Yes, it would be a paid

12  meal period.

13          COMMISSIONER DOMBROWSKI:  Right.

14          COMMISSIONER BROAD:  I mean, assuming they pay

15  you for it.  I mean --

16          COMMISSIONER DOMBROWSKI:  Assuming that -- well,

17  okay.  Does this say, then, if you had a 30-minute meal

18  period as your standard procedure, you would get -- and

19  you missed that, you get an hour's worth of pay?  Is that

20  what I'm -- additional -- an hour additional pay.

21          COMMISSIONER BROAD:  If your employer did not

22  let you have your meal period, I think, is what it says.

23  So it's -- it doesn't involve, you know, waivers of a

24  meal period or time off or anything of that sort.  And

1   rest periods, of course, are somewhat different.

2   Employers are obligated to provide rest periods --

3            COMMISSIONER DOMBROWSKI:  Correct.

4            COMMISSIONER BROAD:  -- duty-free and must pay

5   for them.  So if you don't provide a rest period, then

6   the -- you know, the employee gets their day's pay, but

7   they don't get the rest, and so that's -- with respect to

8   a meal period, it doesn't have to be compensated.

9            COMMISSIONER DOMBROWSKI:  Okay.

10            COMMISSIONER BROAD:  So it's particularly

11   egregious with regard to rest periods.

12            COMMISSIONER DOMBROWSKI:  Okay.  I don't -- does

13   anyone wish to testify on this item?

14            MR. RANKIN:  Tom Rankin, California Labor

15   Federation.

16            I would like to express our support for

17   Commissioner Broad's proposal.  As he stated, the problem

18   exists right now that there is no remedy for a missed

19   meal period or a missed rest period.  And what his

20   proposal does is provide a remedy.

21            And the purpose of the rest period and the meal

22   period is, in the case of rest periods, to have a rest

23   break where an employee is relieved from work duties.

24   The same is true for meal periods, to provide a break

1   where people can partake of a meal.  It is not sufficient

2   that they -- if they don't get their meal period, they

3   simply get paid for that half hour.  Sure they do;

4   they're working that half hour.  I would hope they would.

5           This provision of Mr. Broad's at least provides

6   a minor disincentive for employers not to deny employees

7   their rights to rest and meal breaks.

8           MS. BROYLES:  Good morning, commissioners.

9   Julianne Broyles, from the California Chamber of

10  Commerce.

11          We had not been apprised, of course, of this

12  particular provision early on.  Otherwise we probably

13  would have had more extensive comments on it.

14          I guess I would have to, first of all, raise the

15  issue of the authority to establish a new crime, which

16  basically this is doing.  Additionally, we would also

17  point out that if the employee has missed a meal period,

18  they are going to be paid for the meal period in almost

19  all instances.  In terms of setting up a new penalty and

20  a crime for basically missing a rest period, as far as I

21  know there is no statute that would permit that to be

22  done.  And we would oppose this particular amendment.

23          MR. ABRAMS:  Thank you, Mr. Chairman, members of

24  the Commission.  My name is Jim Abrams.  I'm with the


1   California Hotel and Motel Association.

2           And two issues:  first of all, we also question

3   the legislative authority of the Commission to, in

4   essence, adopt and impose new penalties with respect to

5   violations of what is, in essence, a statute, and then

6   the statute picking up the regulations of the Industrial

7   Welfare Commission.  So, we object to and question the

8   authority of the IWC to adopt this particular provision.

9           If, however -- and not conceding the point --

10  if, however, this type of language is adopted, I have

11  several questions.

12          First of all, Commissioner Broad, is it your

13  intent that the hour of pay that you reference here would

14  be treated as an hour worked for purposes of calculating

15  daily or weekly overtime?

16          COMMISSIONER BROAD:  No.

17          MR. ABRAMS:  I think -- and again, not conceding

18  that the Commission has any authority to adopt any such

19  provision as this, but if you decide to do so, I would

20  suggest to you that you need to make that clear.

21          Secondly, I -- I'm not sure I understood your

22  comments with regard to on-duty -- agreed upon on-duty

23  meal periods.  I -- I think, in reading the language

24  here, my understanding was that it was intended that an

Exhibit H

Exhibit H


30

1   agreed upon on-duty meal period, for which the employee

2   is, in fact, paid for the half hour that he or she is

3   working, in essence, does not enter into this equation at

4   all.  But you made a comment a moment ago that quite --

5   with all due respect, confused me.  I just want to

6   clarify that.

7            COMMISSIONER BROAD:  The employer who, under our

8   regulations, lawfully establishes an on-duty meal period

9   would not be affected if the employee then takes the on-

10  duty meal period.  This is an employer who says, "You do

11  not get lunch today, you do not get your rest break, you

12  must work now."  That is -- that is the intent.

13           Let me respond, if I may.  Clearly, I don't

14  intend this to be an hour counted towards hours worked

15  any more than the overtime penalty.  And, of course, the

16  courts have long construed overtime as a penalty, in

17  effect, on employers for working people more than full --

18  you know, that is how it's been construed, as more than

19  the -- the daily normal workday.  It is viewed as a

20  penalty and a disincentive in order to encourage

21  employers not to.  So, it is in the same authority that

22  we provide overtime pay that we provide this extra hour

23  of pay.  And that --

24           So, now, with regard to creating a new crime, I

Exhibit H



1  guess you could argue that anything we do that changes

2  something creates a new crime to the extent that things -

3  - that there are certain aspects of our wage orders that,

4  if violated, can be prosecuted criminally.  But I don't

5  believe we have the authority to establish a new crime in

6  the sense that we could say if you -- if you deny someone

7  their meal period or rest period, that you shall spend

8  six months in jail or a year in jail or it will be a

9  felony and so forth.  No, we cannot establish new crimes.

10  The Legislature, however, can establish crimes for

11  violations of our wage orders, which is their

12  prerogative, not ours.

13         MR. ABRAMS:  Understood.  I -- and on that note,

14  I would -- we -- the California Hotel and Motel

15  Association objects to the proposal on the ground that

16  the -- we submit the Commission does not have the legal

17  authority to adopt such a penalty, also on the ground

18  that if -- to any extent that an employer is required to

19  pay this one hour of pay for a meal period missed, that

20  that has to be offset against whatever penalties the

21  Legislature has established for violation of the

22  Commission's wage orders.  Otherwise you are basically

23  saying to an employer, "You are going to be punished

24  twice."

Exhibit H



1          So we object to the proposed amendment.

2          MS. BROYLES:  Mr. Commissioner, can I make one

3     final point?

4          If this is something that the Commission would

5     like to move forward on and put over -- or at least put

6     out notice so --

7          COMMISSIONER DOMBROWSKI:  It was noticed.  It

8     was in the notice.

9          COMMISSIONER BROAD:  It has been in our notice

10    for a month.  I mean, we did --

11         MS. BROYLES:  In terms of the full penalty, the

12    hour penalty?

13         COMMISSIONER BROAD:  No.  The language that's

14    proposed to be adopted has been out there.  I think --

15         MS. BROYLES:  Right.

16         COMMISSIONER BROAD:  -- you may agree with that

17    substantively --

18         MS. BROYLES:  The amendment of Mr. -- of

19    Commissioner Broad.

20         COMMISSIONER BROAD:  -- but there's no last-

21    minute aspect to this at all.

22         MS. KAHN:  Spike Kahn, AFSCME Council 57.

23         I represent quite a few workers in the hospital

24    industry at UCSF that -- just in policy, the clinics are



1  always understaffed and they just never have enough

2  staffing to let that person come out on a break.  It's

3  not every day, it just happens that people, because the

4  clinics are full, the patients are coming, you have to

5  keep the flow going because you don't want your patients

6  to be waiting while you go out.  And day after day,

7  people don't get a break.

8          And I would like to support this amendment and

9  explain that, by having it on the books, it would give us

10  quite a bit of incentive to our employers that they would

11  just start following the contracts and following the laws

12  that are already down there, that you have to have a

13  break, just by having it on the books.  I don't think it

14  would come up that often, in the same way that they don't

15  usually violate any of the -- the overtime laws.  It's

16  just a matter of they would be encouraged much more to

17  not keep on working us through our breaks and our lunch

18  times if it were there.

19          So we're in support of that.

20          COMMISSIONER DOMBROWSKI:  Thank you.

21          Ms. Stricklin, regarding the legal question?

22          MS. STRICKLIN:  You were asking whether there

23  was any legal impediment to such a penalty.  And 516 of

24  the Labor Code allows the Commission to adopt or amend

Exhibit H

Exhibit H



1    working condition orders with respect to break periods,

2    meal periods, and days of rest.

3              And then again, if you look at Section 558, the

4    last section says that civil penalties provided in 558

5    are in addition to any other civil or criminal penalty

6    provided by law, so that a regulation which sets forth a

7    penalty would just be an additional penalty, which the

8    IWC has the power to do.

9              COMMISSIONER DOMBROWSKI:  Any other questions

10   from the commissioners?

11             (No response)

12             COMMISSIONER DOMBROWSKI:  Okay.  Commissioner

13   Broad, I believe you want to make a motion?

14             COMMISSIONER BROAD:  Yeah.  I'll move it.

15             COMMISSIONER DOMBROWSKI:  Is there a second?

16             COMMISSIONER ROSE:  Second.

17             COMMISSIONER DOMBROWSKI:  Okay.  Call the roll.

18             MR. BARON:  Dombrowski.

19             COMMISSIONER DOMBROWSKI:  No.

20             MR. BARON:  Bosco.

21             COMMISSIONER BOSCO:  Aye.

22             MR. BARON:  Broad.

23             COMMISSIONER BROAD:  Aye.

24             MR. BARON:  Coleman.

Exhibit H



1          COMMISSIONER COLEMAN:  No.

2          MR. BARON:  Rose.

3          COMMISSIONER ROSE:  Aye.

4          MR. BARON:  Three to two.

5          (Applause)

6          COMMISSIONER DOMBROWSKI:  Okay.  I'd like to

7     move to Item 5, consideration of --

8          COMMISSIONER BOSCO:  How about a round of

9     applause for the veterinary?

10         COMMISSIONER BROAD:  Take care of the dogs and

11    cats right now.

12         (Laughter)

13         COMMISSIONER DOMBROWSKI:  Here we are, moving

14    along so well.

15         Item 5, consideration of amendment to Wage Order

16    5 concerning personal attendants.

17         I'd ask Mr. Baron to brief us.

18         MR. BARON:  This is an overall issue that has

19    been discussed previously.  The background to this is

20    that there had been language in the earlier version of

21    the wage orders, in 5-93, that, when we went -- going

22    back to that -- had been changed in '98, but then when we

23    went back to, now, the earlier versions, referenced a 54-

24    hour workday (sic) for these categories of employees.

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 25, 2019 at San Francisco, California.


_____/s/ Sylvia J. Kim_____
Sylvia J. Kim

122549135.8