1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                      San Francisco Division

| | |
|---|---|
| 11  ANDREA HARRISON, on behalf of<br>12  themselves and others similarly situated, | Case No. 19-cv-00316-LB<br>19-cv-02491-LB<br>20-cv-02119-LB |
|                 Plaintiff, | |
| 13 | |
| 14          v. | **PRELIMINARY APPROVAL ORDER** |
| 15  BANK OF AMERICA CORPORATION,<br>    and DOES 1–100, inclusive, | Re: ECF No. 74 (19-cv-02491-LB) |
| 16 | |
| 17                Defendant.<br>  MIGUEL MENDOZA, on behalf of | |
| 18  themselves and others similarly situated, | |
|                 Plaintiff, | |
| 19 | |
| 20          v. | |
| 21  BANK OF AMERICA CORPORATION,<br>    and DOES 1–100, inclusive, | |
| 22 | |
|                 Defendant. | |
| 23  KIARASH KAFFISHAHSAVAR, on behalf<br>  of themselves and others similarly situated, | |
| 24                Plaintiff, | |
| 25 | |
| 26          v. | |
|   BANK OF AMERICA, N.A., a business | |
| 27  entity, form unknown, | |
|                 Defendant. | |
| 28 | |

*United States District Court*
*Northern District of California*

**INTRODUCTION**

The plaintiffs — three classes of current and former nonexempt employees who have various jobs at Bank of America's California branches — challenge Bank of America's alleged failure to pay them for their off-the-clock work, provide meal-and-rest breaks, or reimburse expenses in violation of the California Labor Code, California's Unfair Competition Law (UCL), and California's Private Attorney's General Act (PAGA). It is a putative class action under Federal Rule of Civil Procedure 23.[1] The parties settled the case, and the plaintiffs moved for preliminary approval of the class-action settlement and approval of the collective-action settlement.[2] The court grants the unopposed motion.

**STATEMENT**

**1.  The Lawsuits**

This settlement involves three class-action cases with wage-and-hour claims. There thus are three settlement classes: the Harrison Class (tellers), the Kaffishahsavar Class (bankers, relationship managers and bankers, and lending and sales specialists), and the Mendoza Class (operations manager).[3] The parties engaged in formal and informal discovery (including motions practice) and then agreed to mediation. To prepare for it, the defendant produced, and the plaintiffs' counsel reviewed, data concerning the class sizes, hourly rates and dates of employment, timekeeping data, policy manuals, and other relevant data and discovery. The plaintiffs engaged an expert to prepare a damages analysis.[4] The parties had a lengthy mediation with David Rotman, a respected wage-and-hour mediator and ultimately accepted his mediator's proposal and settled the case on December 31, 2020.[5] As part of that settlement, they stipulated to the filing of a consolidated complaint. The plaintiffs filed the unopposed motion for preliminary

---

[1] Second Am. Compl. (SAC) – ECF No. 43. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 74.

[3] Settlement Agreement – ECF No. 74-2 at 7–8 (¶ 12).

[4] Quintilone Decl. – ECF No. 74-6 at 10 (¶ 7).

[5] Saltzman Decl. – ECF No. 74-1 at 2–4 (¶¶ 7–10).

United States District Court
Northern District of California

approval of the class-action settlement.[6] The court held a hearing on May 27, 2021. All parties

consented to magistrate-judge jurisdiction.[7]

## 2. Proposed Settlement

### 2.1 Settlement Class

There are approximately 25,000 class members.[8] The settlement classes are as follows:

> All Defendant's current and former non-exempt employees that fall within at least one of the following classes:
>
> a. Employees working or who worked in the State of California for Defendant as a "Teller" (meaning Job Codes RT600 – FC Client Service Rep and RT601 – Market Client Service Rep) on or after October 26, 2014, through the date of preliminary approval of the settlement by the [c]ourt (the "Harrison Class");
>
> b. Employees working or who worked in the State of California for Defendant as a "Financial Center Operations Manager" or a "Financial Center Assistant Manager" (meaning Job Codes RM019 – Assistant Manager-FCC and RM038 – Financial Center Assistant Manager) on or after March 25, 2015, through the date of preliminary approval of the settlement by the [c]ourt (the "Mendoza Class"); and
>
> c. Employees working or who worked in the State of California for Defendant as a Personal Banker (Job Code RS600), Senior Personal Banker (Job Code RS601), Relationship Manager (Job Code BQ055), Relationship Manager and Lending Specialist (Job Code BQ220), Sales and Service Specialist (Job Code RS860), Relationship Banker (Job Code RS861), or a Relationship Banker – Hybrid (Job Code RS862) on or after March 27, 2016 through the date of preliminary approval of the settlement by the [c]ourt (the "Kaffishahsavar Class").[9]

---

[6] Mot. – ECF No. 74.

[7] Consent Forms – ECF Nos. 11 & 14; *Harrison v. Bank of America*, No. 19-cv-00316-LB, Consent Forms – ECF Nos. 15 & 16; *Kaffishahsavar v. Bank of America*, No. 20-cv-02119, Order – ECF No. 31 (for settlement only).

[8] Markham Decl. – ECF No. 74-5 at 11 (¶ 35).

[9] Settlement Agreement – ECF No. 74-2 at 7–8 (¶ 12).

United States District Court
Northern District of California

The settlement classes exclude any individuals who, as of the date of final approval, have a pending, separate lawsuit, individually or as a putative class or representative action, asserting the same claims, including but not limited to the certified claims in *Frausto v. Bank of America*, No. 3-18-cv-01202-LB, and *Suarez v. Bank of America*, No. 3:18-cv-01983-LB. It also excludes any former Bank of America employee who has previously released the claims (and the release period will be excluded from the calculation of any settlement sum payable to that employee).[10]

### 2.2    Settlement Amount and Allocation

The total non-reversionary Gross Settlement Amount is $11,500,000, and the Net Settlement Amount recovered by the class is approximately $7,638,750 after the following deductions: (1) $115,000 for the PAGA claim (with $86,250 to be paid to the Labor & Workforce Development Agency (LWDA)); (2) up to $10,000 each for enhancement payments to the named plaintiffs; (3) up to $100,000 for the claims administration's expenses; and (4) attorney's fees of no more than 30% of the Gross Settlement Amount (or $3,450,000) plus costs not to exceed $100,000.[11]

The class members will receive a settlement check without submitting a claim form.[12] Each member's settlement share will be calculated by multiplying the Net Settlement Amount by a fraction. The numerator is the total number of credited workweeks the class member worked for the defendant in California during the applicable time period as a member of the class, and the denominator is the total number of credited workweeks for the class members who worked for the defendant in California during the applicable class period as members of the class. Each class member's credited workweeks will be calculated by the settlement administrator by multiplying the member's base workweeks by the following subclass-specific factors: 1.00 (for Harrison Class members); 1.66 (for Mendoza Class members); and 1.27 (for Kaffishahsavar Class members). Any plaintiff who opts out of the settlement will not receive a share of the settlement proceeds.[13]

---

[10] *Id.* at 8 (¶ 14).

[11] *Id*. at 12–15 (¶¶ 25–29).

[12] *Id*. at 15 (¶ 30).

[13] *Id*. at 15–16 (¶ 32).

<div style="margin-left:left">United States District Court<br>Northern District of California</div>

1    Settlement checks will be mailed within 10 days after the occurrence of both the effective date

2    of the settlement and the defendant's deposit of the Gross Settlement Fund into a qualified

3    settlement-fund account created by the settlement administrator. The checks are valid for 180

4    days.[14] Funds from checks that expire or are returned as undeliverable will be transmitted to the

5    State of California Unclaimed Property Fund.[15]

6        The plaintiffs did a damages assessment that is summarized in the motion and supporting

7    declarations. For each class, the plaintiffs analyzed damages for overtime and regular wages, meal

8    breaks, rest breaks, unreimbursed business expenses, and derivative claims. For each category,

9    they calculated full value and then applied discounts for litigation risk, depending on the bucket

10   and the class.[16] The $11,500,000 settlement amount is approximately 20 percent of the estimated

11   recoverable damages (exclusive of the derivate claims) in light of the litigation risks.[17] The

12   settlement results in immediate payment to members of the classes in meaningful amounts (with

13   an average recovery of $460 at an average blended hourly rate of $18.35).[18]

14   **2.3   Release**

15       The release is, in short, (1) a release of all class claims under federal or state law for all claims

16   that were pleaded or could have been pleaded under the facts alleged in the complaint, (2) a

17   release of the PAGA claims for claims that were pleaded or could have been pleaded under the

18   facts alleged in the complaint, and (3) a general release by the named plaintiffs.[19]

19

20

21

22

23

24   [14] *Id*. at 19 (¶ 37), 20 (¶ 40).

25   [15] *Id*. at 20 (¶ 40).

26   [16] Saltzman Decl. – ECF No. 74-1 at 4–6 (¶ 13–20).

     [17] *Id.* at 6 (¶ 19); Markham Decl. – ECF No. 74-5 at 11 (¶ 35).

27   [18] Saltzman Decl. – ECF No. 74-1 at 6 (¶ 20).

28   [19] Settlement Agreement – ECF No. 74-2 at 22–24 (¶¶ 43–44).

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.4    Administration

Simpluris, Inc. will administer the settlement with a preliminary budget of up to $100,000.[20] It will send the class notice by mail and email, calculate the settlement payments, calculate all payroll taxes, withholdings, and deductions, and issue the payments to class members, the LWDA, counsel, the class representative, and applicable state and federal tax authorities. It will prepare and file all tax returns and reporting. It will establish a toll-free call center for any questions by members and a settlement website that will have the class, collective, and class/collective notices (in generic form), the settlement agreement, and all papers filed to obtain preliminary and final approval of the settlement.[21] Other administration procedures — including notice, administration, procedures for exclusion, and procedures for objections — are set forth in the settlement agreement.[22]

## ANALYSIS

### 1.    Jurisdiction

The court has diversity jurisdiction under CAFA. 28 U.S.C. 1332(d).

### 2.    Conditional Certification of Settlement Class

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Espinosa v. Ahearn (In re Hyundai and Kia Fuel Econ. Litig.)*, 926 F.3d 539, 557 (9th Cir. 2019) (en banc).

---

[20] Settlement Agreement – ECF No. 74-2 at 14 (¶ 29); *see* Saltzman Decl. – ECF No. 74-1 at 6–7 (¶¶ 22–25) (describing a settlement-administration process consistent with the Northern District's procedural guidance for class-action settlements).

[21] Settlement Agreement – ECF No. 74-2 at 14–15 (¶ 29), 19–20 (¶¶ 37–40), 29–30 (¶ 58).

[22] *Id*. at 16–18 (¶¶ 33–35); 20–22 (¶¶ 41–42).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Class certification requires the following: (1) the class must be so numerous that joinder of all members individually is "impracticable;" (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *In re Hyundai and Kia*, 926 F.3d at 556. Also, the common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The court finds preliminarily (and for settlement purposes only) that the Rule 23(a) factors — numerosity, commonality, typicality, and adequacy — support the certification of the class. It also finds preliminarily under Rule 23(b)(3) (and for settlement purposes only) that the common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, the class is numerous. *Nelson v. Avon Prods.*, No. 14-cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015).

Second, there are questions of law and fact common to the classes that predominate over individual issues. The members of each class perform the same jobs. Common questions include: whether the defendant's policies or practices forced the plaintiffs to work off the clock; whether they failed to pay for pre-shift, post-shift, and overtime work; whether they impeded the plaintiffs from taking statutory meal breaks and paid them for missed breaks; and whether these violations violated Labor Code §§ 201–203, 226, 512, 1197, 2802, and California Business and Professions Code § 17200.[23] Because the claims arise from the defendant's uniform practices applied to employees with the same job responsibilities, liability can be determined on a class-wide basis. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Betorina v. Ranstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017).

---

[23] Mot. – ECF No. 74 at 39–41.

Third, the claims of the representative plaintiffs are typical of the claims of their respective subclasses. The representative plaintiffs and all class members allege wage-and-hours violations based on similar facts. They possess the same interest and suffer from the same injury. *Betorina*, 2017 WL 1278758, at *4.

Fourth, the representative plaintiffs fairly and adequately protect the interests of their classes. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiffs and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia*, 926 F.3d at 566 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). The factors exist here: the named plaintiffs have shared claims and interests with their classes (and no conflicts of interest) and have retained qualified and competent counsel who have prosecuted the case vigorously. *Id.*; *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The class members have relatively small monetary claims, and the class action resolves many substantially identical claims efficiently, avoiding a waste of resources, to advance the individual members' interests.

In sum, the prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) are met. The court conditionally certifies the class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only and for the purpose of giving the classes notice of the settlement and conducting a final approval hearing.

### 3.  Preliminary Approval of Settlement

The approval of a class-action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms.

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *In re Hyundai and Kia*, 926 F.3d at 556. A court may approve a proposed class-action settlement "only after a hearing and only on finding that it is fair, reasonable,

United States District Court
Northern District of California

1    and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is

2    ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and

3    consistent with the named plaintiffs' fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1026–27

4    (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement

5    proposal: "[(1)] the strength of the plaintiff's case; [(2)] the risk, expense, complexity, and likely

6    duration of further litigation; [(3)] the risk of maintaining class-action status throughout trial; [(4)] the

7    amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding;

8    [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and [(8)]

9    the reaction of the class members to the proposed settlement." *Id.* at 1026 (cleaned up).

10    When parties "negotiate a settlement agreement before the class has been certified, "settlement

11    approval requires a higher standard of fairness and a more probing inquiry than may normally be

12    required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt.*, 944 F.3d 1035, 1043 (9th Cir. 2019)

13    (quotation omitted). "Specifically, such settlement agreements must withstand an even higher level

14    of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under

15    Rule 23(e) before securing the court's approval as fair." *Id*. at 1049 (quotation omitted).

16    The court has evaluated the proposed settlement agreement for overall fairness under the

17    *Hanlon* factors and concludes that preliminary approval is appropriate. Overall, the settlement

18    appears fair. The settlement agreement was the result of an adversarial, non-collusive, and arms-

19    length negotiation process. It provides good value, given the risks of litigation, the parties'

20    disputes about damages, and the value of money to the plaintiffs now. As discussed above, the

21    parties reached the settlement only after obtaining discovery and conducting a robust damages

22    assessment.[24] Also, off-the-clock claims can be difficult to certify because they can involve

23    individualized determinations. *In re AutoZone, Inc., Wage & Hours Emp't. Practices Litig.*, 289

24    F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019).

25    The PAGA allocation is within the range of reasonable settlements. *See, e.g.*, *Viceral v.*

26    *Mistras Grp.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8–9 (N.D. Cal. Oct. 11, 2016).

27

28    ---
     [24] Saltzman Decl. – ECF No. 74-1 at 3 (¶ 8).

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The court will address attorney's fees at the final fairness hearing. *Hanlon*, 150 F.3d at 1029 (25 percent is a benchmark in common-fund cases); *cf. Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (25-percent benchmark, though a starting point for analysis, may be inappropriate in some cases; fees must be supported by findings).

The court approves the filing of the consolidated complaint attached as Exhibit A to the Settlement Agreement. It will be filed in *Harrison v. Bank of America, N.A.*, No. 3:19-00316-LB (the low-numbered case) and, for purposes of settlement only, relates back to the earliest date of filing of the lawsuit.[25] The defendant is deemed to have generally denied the allegations of the complaint without the need to file and serve an answer. If the Settlement Agreement does not become final, the complaint is deemed stricken without further order of the court.[26]

### 4. Appointment of Class Representatives, Class Counsel, and Claims Administrator

The court provisionally appoints the named plaintiffs Andrea Harrison, Miguel Mendoza, and Kiarash Kaffishahsavar as the class representatives for their respective classes. The plaintiffs are an adequate representative of the other members of their subclasses and have claims that are typical of the other members' claims.

The court provisionally appoints the Markham Law Firm (for the Harrison Class), Marlin & Saltzman, LLP (for the Mendoza Class), and Quintilone & Associates (for the Kaffishahsavar Class) as counsel for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). They have the requisite qualifications, experience, and expertise in prosecuting class actions.

The court approves the retention of Simpluris as the settlement administrator. It will administer the settlement in accordance with the terms in the settlement agreement.

---

[25] Settlement Agreement – ECF No. 74-2 at 10 (¶ 18).

[26] Proposed Order – ECF No. 74-7 at 2 (¶ 4).

ORDER – Nos. 19-cv-00316-LB, 19-cv-02491-LB, 20-cv-02119-LB                                          10

**5. Class Notice**

The court approves the class notice and plan. The court finds that the class notice provides the best notice practicable, satisfies the notice requirements of Rule 23, adequately advises class members of their rights under the settlement agreement, and meets the requirements of due process. *In re Hyundai and Kia*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (cleaned up) (quoting *Rodriguez*, 563 F.3d at 962). The notice fairly, plainly, accurately, and reasonably provide class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the classes; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[27]

**6. Service Awards**

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (cleaned up). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice . . . ." *Radcliffe v. Experian Info. Solutions*

---

[27] Settlement Notice, Ex. B to Settlement Agreement – ECF No. 74-2 at 71−80.

*Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164.

The court defers consideration of the awards until the final approval hearing.

### 7.  Compliance with Class Action Fairness Act

"The Class Action Fairness Act of 2005 (CAFA) added an additional component to settlement notice, namely that certain government officials — whether or not themselves class members — must receive notice of any class action settled in federal court." *Newberg on Class Actions*, § 8:18. The parties will provide notice of the settlement — which is deemed filed as of the date of this order — and other information showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials. Any final settlement approval will be more than 90 days after service as required by 28 U.S.C. § 1715.

### 8.  Procedures for Final Approval Hearing

The court incorporates by this reference paragraphs 13 through 18 and 20 through 22 from the proposed order. They are part of this order as if they were fully set forth in it. The following are the deadlines, which also are from the proposed order.[28]

| Event | Date |
|---|---|
| Preliminary Approval Order Filed | May 27, 2021 |
| Last day for Defendant to provide Class List to Claims Administrator | No later than 30 calendar days after the entry of this Order |
| Last day for Settlement Administrator to mail Class Notice to Settlement Class Members | No more than 10 calendar days after Settlement Administrator receives class information |
| Last day to object to or opt out of the Settlement | No more than 45 days after mailing of Class Notice, unless extended by re- |

---

[28] Proposed Order – ECF No. 74-3 at 5–8 (¶¶ 13–22).

United States District Court
Northern District of California

| | |
|---|---|
| | mailing] |
| Last day to file papers in support of any application for reimbursement of attorney's fees and expenses and Class Representatives' Enhancement Awards | No later than 35 days before the time period for Settlement Class Members to object to the Settlement expires |
| Last day to file papers in support of the final approval of the Settlement | No later than 35 days before the Final Fairness and Approval Hearing (L.R. 7-2) |
| Last day for Plaintiffs' counsel and/or Defendant's counsel to file an objection to any properly filed objection to the settlement by a Settlement Class Member | No later than 10 court days before the Final Fairness and Approval Hearing |
| Final Approval Hearing | October 28, 2021 at 9:30 a.m. (which is at least 30 days after Notice Deadline) |

## CONCLUSION

The court grants the plaintiffs' motion and (1) conditionally certifies the classes for settlement purposes only, preliminarily approves the settlement, and authorizes the notice (as set forth in this order), (2) approves Simpluris, Inc. as the settlement administrator, (3) provisionally appoints the named plaintiffs Andrea Harrison, Miguel Mendoza, and Kiarash Kaffishahsavar as class representatives and provisionally appoints the Markham Law Firm, Marlin & Saltzman, LLP, and Quintilone & Associates as class counsel, (4) orders the procedures in this order (including all dates in the chart), and (5) orders the parties and the settlement administrator to carry out their obligations in the settlement agreement.

This disposes of ECF No. 74.

**IT IS SO ORDERED.**

Dated: May 27, 2021

LAUREL BEELER
United States Magistrate Judge