1  David R. Markham (SBN 071814)
   *dmarkham@markham-law.com*
2  Maggie Realin (SBN 263639)
   *mrealin@markham-law.com*
3  Lisa Brevard (SBN 323391)
   *lbrevard@markham-law.com*
4  **THE MARKHAM LAW FIRM**
   8910 University Center Lane, Suite 400
5  San Diego, CA 92122
   Tel.: 619.399.3995; Fax: 619.615.2067
6  Richard E. Quintilone II (SBN 200995)
   *req@quintlaw.com*
7  Jeffrey T. Green (SBN 330065)
   *jtg@quintlaw.com*
8  **QUINTILONE & ASSOCIATES**
   22974 El Toro Road, Suite 100
9  Lake Forest, CA  92630-4961
   Tel.: 949.458.9675; Fax: 949.458.9679
10
   Attorneys for Plaintiffs Harrison, Kaffishahsavar and Jaco
11 on behalf of themselves and all others similarly situated

12 Stanley D. Saltzman (SBN 90058)
   *ssaltzman@marlinsaltzman.com*
13 Tatiana G. Avakian (SBN 298970)
   *tavakian@marlinsaltzman.com*
14 **MARLIN & SALTZMAN LLP**
   29800 Agoura Road, Suite 210
15 Agoura Hills, California 91301
   Tel.: 818.991.8080; Fax: 818.991.8081
16
   Attorneys for Plaintiff Mendoza
17 on behalf of himself and all others similarly situated

18 *Additional Counsel Listed on Next Page*

19          **UNITED STATES DISTRICT COURT**

20          **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 21  ANDREA HARRISON, KIARASH KAFFISHAHSAVAR, KIMBERLY JACO, and MIGUEL MENDOZA, individually, on behalf of themselves and all others similarly situated | CASE NOS.   3:19-cv-00316-LB  3:19-cv-02491-LB  4:20-cv-02119-YGR  *[Assigned to Hon. Laurel Beeler]* **CLASS ACTION** |

21 ANDREA HARRISON, KIARASH
   KAFFISHAHSAVAR, KIMBERLY JACO,
22 and MIGUEL MENDOZA, individually, on
   behalf of themselves and all others similarly
23 situated

24          Plaintiffs,

25      v.

26 BANK OF AMERICA, N.A., a business
   entity, form unknown; and DOES 1 through
27 10, inclusive,

28          Defendants.

CASE NOS.   3:19-cv-00316-LB
            3:19-cv-02491-LB
            4:20-cv-02119-YGR
*[Assigned to Hon. Laurel Beeler]*
**CLASS ACTION**

**CONSOLIDATED CLASS ACTION
COMPLAINT FOR:**

1. **FAILURE TO PAY REGULAR AND
   MINIMUM WAGES;**
2. **FAILURE TO PAY OVERTIME
   WAGES;**
3. **FAILURE TO PROVIDE MEAL**

---

PERIODS;

4. **FAILURE TO PROVIDE REST PERIODS;**
5. **FAILURE TO FURNISH ACCURATE WAGE STATEMENTS;**
6. **FAILURE TO PAY ALL WAGES DUE UPON TERMINATION;**
7. **UNPAID BUSINESS EXPENSES;**
8. **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), BUS. & PROF. CODE § 17200, *et seq.***
9. **VIOLATION OF PRIVATE ATTORNEY GENERAL ACT (LABOR CODE §2698, *et seq.*)**

Walter Haines (SBN 071075)
*walter@whaines.com*
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (888) 474-7242
Facsimile: (562) 256-1006

Attorneys for Plaintiffs Harrison, Kaffishahsavar and Jaco
on behalf of themselves and all others similarly situated

CONSOLIDATED CLASS ACTION COMPLAINT

1    Plaintiffs ANDREA HARRISON, KIARASH KAFFISHAHSAVAR, KIMBERLY JACO and

2   MIGUEL MENDOZA ("Plaintiffs"), by and through their attorneys of record, bring this Class Action

3   Complaint against Defendant BANK OF AMERICA, N.A., a business entity unknown ("Bank of

4   America" or "Defendant").  Plaintiffs hereby allege, on information and belief, except for information

5   based on personal knowledge, which allegations are likely to have evidentiary support after further

6   investigation and discovery, as follows:

7                    **<u>NATURE OF THE ACTION</u>**

8    1.    This is a class action for wage and labor violations arising out of Defendant's failure to

9   pay wages for all time worked, including overtime, failure to provide timely and uninterrupted meal and

10   rest periods, a failure to reimburse necessary business expenses, and for derivative claims.

11    2.    As more fully set forth below, Defendant failed to pay its employees minimum, regular

12   and overtime wages for time they worked loading programs before their shift and closing programs after

13   their shift, performing opening procedures, performing work during meal and rest breaks, and

14   participating in post-shift work performing compliance questions and audits, and closing all the

15   programs and shutting down the computers,  failed to provide timely and uninterrupted meal and rest

16   periods to its California non-exempt employees in violation of California Labor Code §§ 512 and 226.7,

17   and the applicable Industrial Wage Order; failed to pay its employees one hour of pay at the regular rate

18   of compensation for each instance that Defendant failed to provide statutorily mandated rest periods and

19   timely off-duty meal periods; failed to reimburse the necessarily incurred business expenses such

20   personal cellphone usage for work purposes; failed to furnish timely and accurate wage statements;

21   failed to pay all wages due upon termination; and, is in violation of California's Unfair Competition

22   Law ("UCL") and California's Private Attorneys General Act ("PAGA").

23    3.    Plaintiffs, on behalf of themselves and all other Class Members, bring this action

24   pursuant to Labor Code §§ 200, 201, 202, 203, 204, 210, 218, 218.6, 226, 226.3, 226.7, 256, 510, 512,

25   558, 1174, 1194, 1197, 1198, 1199, 2802, 2698, *et. seq*., California Code of Regulations, Title 8, section

26   11050 *et seq*., and under the California Business & Professions Code § 17200, *et. seq.*, seeking unpaid

27   wages, overtime, meal and rest period compensation, expense reimbursement, penalties, including under

28   PAGA, injunctive, and other equitable relief, and reasonable attorneys' fees and costs.

4.      Plaintiffs seek to represent and prosecute claims against Defendant in class action proceedings on behalf of all those similarly situated who are or were residents of the State of California.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction over this action, under 28 U.S.C. § 1332. All Plaintiffs are citizens of California and Defendant is a citizen of North Carolina.

6.      In addition, this Court also has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which there are at least 100 members of the class, and any member of a class of plaintiffs is a citizen of a state different from any defendant, and the matter in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d).

7.      This case meets each of the CAFA requirements because (1) Plaintiffs allege on information and belief there are thousands of class members in California, (2) there is diversity between at least one putative class member and the named Defendant; and (3) Plaintiffs allege and believe the aggregate claims for wages and penalties exceed the jurisdictional $5,000,000.00 amount. As such, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d). This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper because upon information and belief, Defendant has a regional office within the Northern District of California, and conducts substantial business—including employing class members within this District, and maintains financial centers in this District.

## PARTIES

9.      Plaintiff ANDREA HARRISON is a resident of Colfax, California. Plaintiff was employed by Defendant at Defendant's branch in Auburn, California, from approximately 2006 to approximately June 15, 2018, as a non-exempt, hourly-paid Financial Center Client Service Representative, or Teller ("Teller").

10.      Plaintiff KIARASH KAFFISHAHSAVAR is a resident of Sherman Oaks, California. Plaintiff was employed by Defendant at its financial centers in Los Angeles, California, from approximately 2015 to September 2018 as a non-exempt, hourly-paid Relationship Manager (Personal Banker).

11.     Plaintiff KIMBERLY JACO is a resident of Los Angeles, California. Plaintiff was employed by Defendant at the Beverly Hills Main Branch from January 1, 2018 – June 1, 2018 as a non-exempt, hourly-paid Relationship Banker.

12.     Plaintiff MIGUEL MENDOZA is a resident of California.  Plaintiff was employed by Defendant at Bank of America's Concord and Clayton branches from September 2015 to January 2017 as a non-exempt, hourly-paid Operations Manager.

13.     Plaintiffs are informed and believe, and on that basis allege that at all times material herein, Defendant was a corporation registered to do business in California, including but not limited to conducting business within the Northern District of California, with its corporate headquarters located in Charlotte, North Carolina.  Defendant is in the Bank & Financial Holding industry.  On information and belief, Defendant performs consumer and financial banking services, including operating financial centers.  At all relevant times alleged herein, Plaintiffs are informed and believe that Defendant is authorized to and conducts business in California, including but not necessarily limited to the Northern District of California.  Defendant employed Plaintiffs at several of its California financial centers and/or branches and employs/employed other Class Members throughout California, at the following positions: Operations Manager, Financial Center Client Service Representative (Teller), Relationship Manager (Personal Banker), Relationship Banker, and also positions with similar job duties and/or titles, including Senior Personal Banker, Relationship Manager and Lending Specialist, Sales and Service Specialist, and Relationship Banker – Hybrid.

## FACTS

(a)     **Plaintiff Harrison and other Tellers:**

14.     Between approximately 2006 and June 15, 2018, Plaintiff Harrison was employed by Defendant, as a non-exempt, hourly-paid Teller at Defendant's branch in Auburn, California.  Plaintiff's duties included assisting Defendant's customers, sales of Defendant's products and services, and processing transactions like deposits and check cashing, among other duties.  In order to perform her work duties and begin assisting customers at the start of her shift, Plaintiff needed to load certain programs such as Merlin and Defendant's Timekeeping program, among other programs. Starting up the computer and loading these programs took approximately 15 to 20 minutes each day before the start of

her shift. Plaintiff was unable to clock in until the scheduled start of her shift. When Plaintiff inquired of her supervisors about being paid for the time spent loading the programs, she was told that Bank of America does have control over the computer systems loading and does not pay for that time. Plaintiff was never paid for this time - either straight-time or overtime wages. Defendant was aware of these violations.

15.    Plaintiff Harrison and other Tellers were not paid for this time, even though: (1) no practical administrative difficulty of recording the additional time exists or existed for Defendant during the relevant time period; (2) it is or was feasible for Defendant to determine or estimate the average time it takes each employee to complete his or her pre-shift start-up sequence, as all class members at issue in this action needed the same computer programs/applications in order to perform their work duties.  *See also Troester v. Starbucks Corp.*, 5 Cal.5th 829 (2018).

16.    Further, at the end of her shift, Plaintiff was required to clock out. She was then required to close all the programs and shut down the computer. This mandatory process took another 15 to 20 minutes each day and was unpaid.

17.    Upon information and belief, the financial centers were constantly busy and short staffed. Plaintiff was often at the teller window with a customer when her scheduled meal period started. Plaintiff was told by supervisors to take her meal period while remaining at the teller window. Plaintiff was told by her supervisors to input her meal period at the end of the day even though she did not receive one.  Rest breaks were often interrupted in the same manner. When Plaintiff complained to her supervisors about working through her meal and rest breaks, she was told that it was what was needed due to the financial center being short staffed and there was nothing that could be done.

18.    Additionally, when Plaintiff took her meal period in the upstairs employee break room, she was not allowed to take her full uninterrupted 30-minute meal period. Plaintiff's supervisors would frequently come and get her because customers needed to be assisted. Plaintiff was never paid a meal period premium for those late or interrupted meal periods.

19.    Often, when Plaintiff's scheduled rest periods arrived, she was not allowed to take her breaks, because the financial center was too busy and there was not enough staff to cover the teller windows. Plaintiff was never paid a premium for those missed or interrupted rest periods.

20. Upon information and belief, the above-mentioned unlawful employment practices by Defendant were applied the same to all Tellers in all financial centers in California.

**(b) Plaintiff Kaffishahsavar and other Relationship Managers (Personal Bankers), Senior Personal Bankers, Relationship Managers and Lending Specialists, Sales and Service Specialists, Relationship Bankers, and Relationship Bankers – Hybrid (collectively, "Bankers"):**

21. Plaintiff Kiarash Kaffishahsavar was employed by Defendant at several of Bank of America's financial centers in Los Angeles, California from approximately 2015 to September 2018, as a non-exempt, hourly-paid Relationship Manager (Personal Banker).

22. In his role as Relationship Manager (Personal Banker), Plaintiff was responsible for exceeding monthly and quarterly sales goals through identifying the opportunities, building rapport with new and existing clients, and securing new business and growth for the financial center. Plaintiff's duties also included offering clients Bank of America's products and solutions that fit their needs; providing clients with financial advice and assisting personal and business clients with a wide array of financial solutions to satisfy their financial needs; identifying and routing clients to partners and specialists who could assist them with their home loan, technical, business management, retirement, and financial planning needs, among other duties.

23. In order to perform his work duties at the start of his shift, Plaintiff Kaffishahsavar needed to load certain programs and applications every day, and also perform opening procedures, which could take up to 30 minutes every day. The programs used to clock in were MyWorkDay (part of Sales Force). During opening procedures Plaintiff and other Bankers were required to unlock doors and drawers, open computers and desks and stand lookout for customers, all before clocking in. Plaintiff Kaffishahsavar was unable to clock in until the scheduled start of his shift, which was typically 9 a.m.-6 p.m. during weekdays, and 7 a.m. – 2 p.m. on Saturdays. Plaintiff was never paid for this time - either at straight-time or overtime wages. Defendant was aware of these violations.

24. Plaintiff alleges that, in addition to other penalties and expenses as alleged herein, Defendant failed to pay overtime wages of approximately 2.5 hours for every week that Plaintiff was working for Defendant. See attached chart outlining Plaintiff's alleged wages that Defendant failed to

pay:

| Month | Hours | Wages Owed |
|-------|-------|------------|
| December 2015 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| January 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| February 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| March 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| April 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| May 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| June 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| July 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| August 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| September 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| October 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| November 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| December 2016 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| January 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| February 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| March 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| April 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| May 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| June 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| July 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| August 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| September 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| October 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| November 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| December 2017 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |

CONSOLIDATED CLASS ACTION COMPLAINT

| January 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
|---|---|---|
| February 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| March 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| April 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| May 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| June 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| July 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| August 2018 | 2.5 hours/week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| September 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.92= $369.20 |
| **TOTAL** | **340 hours unpaid** | **$12,552.80 wages owed + interest** |

25.     Further, Defendant required Plaintiff and other Bankers to keep working after the end of their shifts, off the clock, to do compliance questions and perform audits. This after-the-shift work occurred at least twice a week. Plaintiff's manager Garnik Chimichian would require bankers to stay after their shifts and work off the clock to perform audit reports on missing signature cards. The signature cards would get lost and Mr. Chimichian would blame the Bankers for losing them. Plaintiff's manager would also require the Plaintiff and other class members to review audit questions and then be quizzed on the audit questions after the shift had ended. Mr. Chimichian was very harsh with the employees and forced them to stay and study the audit questions off-the-clock after the branch had closed.

26.     Plaintiff Kaffishahsavar and other Bankers were not paid for this off the clock time, even though: (1) no practical administrative difficulty of recording the additional time exists or existed for Defendant during the relevant time period; (2) it is or was feasible for Defendant to determine or estimate the average time it takes each employee to complete his or her pre-shift start-up sequence, or opening procedures, or post-shift work, as all class members at issue in this action needed the same computer programs/applications in order to perform their work duties, and their duties were substantially the same. *See also Troester, supra,* 5 Cal.5th 829.

27.     Further, at the end of his shift, Plaintiff Kaffishahsavar was required to clock out. He was then required to close all the programs and shut down the computer. This mandatory process took several minutes each day and was unpaid.

28.     Further, the nature of Plaintiff and class members' duties, and the press of business, at times caused them to work through their meal and rest breaks, or delayed the breaks. It was common for Bankers to receive customer calls during meal breaks both in the bank or on their personal phones. Plaintiff Kaffishahsavar observed that clients of the Bank would call class members on their personal phones and it was a regularly occurring event. Management encouraged that Plaintiff and other class members always made a sale and that the customer is the most important thing. Plaintiff and other class members were encouraged to speak with clients during meal periods and outside of their work hours. Management knew these calls were occurring and failed to reimburse Plaintiff and the Class. Plaintiff and other class members would often have to cut their meal periods short if the store was busy.  Plaintiff does not believe he was paid any meal or rest break premiums for non-compliant meal and rest breaks.

29.     Upon information and belief, the above-mentioned unlawful employment practices by Defendant was applied the same to all Relationship Managers (Personal Bankers) and related positions in all financial centers in California, including Senior Personal Bankers, Relationship Managers and Lending Specialists, Sales and Service Specialists, Relationship Bankers, and Relationship Bankers – Hybrid.  On information and belief, these positions share similar duties and/or functions, and any differences mostly pertain to the level of a class member's experience.  For example, on information and belief, Defendant advertises on its website that the positions of Senior Relationship Manager can be filled as Relationship Manager, depending only on experience and qualifications. Likewise, on information and belief, and according to the statements Defendant makes on its own website, Relationship Banker has an opportunity to advance into the role of a Relationship Manager.  All class positions defined in this action share responsibilities of assisting and educating customers on self-service banking options, and introducing clients to Defendant's products and services, among other similar duties and functions. Additionally, upon information and belief, all class positions shared similar responsibilities and duties in performance of required opening procedures and tasks.

/ / /

(c) **Plaintiff Jaco and other Relationship Bankers, Relationship Bankers – Hybrid, Relationship Managers (Personal Bankers), Senior Personal Bankers, Relationship Managers and Lending Specialists, and Sales and Service Specialists, (collectively, "Bankers"):**

30.    Plaintiff Kimberly Jaco was employed by Defendant at the Beverly Hills Main Branch from January 1, 2018 – June 1, 2018 as a non-exempt, hourly-paid Relationship Banker.

31.    In her role as Relationship Banker, Plaintiff Jaco was responsible for exceeding monthly and quarterly sales goals through identifying the opportunities, building rapport with new and existing clients, and securing new business and growth for the financial center. Plaintiff's duties also included offering clients Bank of America's products and solutions that fit their needs; providing clients with financial advice and assisting personal and business clients with a wide array of financial solutions to satisfy their financial needs; identifying and routing clients to partners and specialists who could assist them with their home loan, technical, business management, retirement, and financial planning needs, among other duties. Relationship Bankers, such as Plaintiff, had an opportunity to advance into the role of a Relationship Manager.

32.    In order to perform her work duties at the start of her shift, Plaintiff needed to load certain programs and applications every day, and also perform opening procedures, which could take up to 30 minutes every day. The programs used to clock in were MyWorkDay (part of SalesForce), and also Interact. During opening procedures, Plaintiff and other Bankers were required to unlock doors and drawers, open computers and desks and stand lookout for customers, all before clocking in. Plaintiff was unable to clock in until the scheduled start of her shift. Plaintiff's supervisor would have her and similarly situated class members help customers at the ATM, pitch sales in the teller lines, and talk to customers all off the clock. She typically worked from 8:45 a.m. – 6:15 p.m. on weekdays, and at times was scheduled on Saturdays. She worked a rotating schedule with one day off, in addition to Sunday, each week. Plaintiff was never paid for time spent on pre- and post-shift tasks - either at straight-time or overtime wages. Defendant was aware of these violations. Plaintiff estimates that she and similarly situated class members spent 30 minutes per day doing off-the-clock work. This also included waiting for them to do the opening security sweep. When Plaintiff attempted to record pre-shift work time on one occasion, Plaintiff's supervisor, Garnik Chimichian, did not allow Plaintiff to record it.

33. The table below summarizes, in addition to other penalties and expenses as alleged herein, the unpaid wages Plaintiff Jaco is entitled to:

| Month | Hours | Wages Owed |
|-------|-------|------------|
| January 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.06 = $360.60 |
| February 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.06 = $360.60 |
| March 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.06 = $360.60 |
| April 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.06 = $360.60 |
| May 2018 | 2.5 hours /week x 4 weeks = 10 hours | 10 hours x $36.06 = $360.60 |
| **TOTAL** | **50 hours unpaid (during time employed at Defendant's California location)** | **$ 1,803.00 wages owed + interest** |

34. Defendant was able to review SalesForce data to confirm class members were working off the clock. They could also use Interact to monitor what an employee was doing minute by minute. Mr. Chimichian told the employees to do work off the clock in Salesforce, wrongly believing it would not leave a trail of data. Assistant Managers would follow Branch Managers' instructions to deny payment for the off the clock work, and to deny overtime pay.

35. Defendant's standard practice was to shorten or interrupt class members' meal breaks. Mr. Chimichian and other managers would tell the employees to come back from their meal breaks early. If an employee attempted to seek a premium for such a short or interrupted meal break, managers would chastise them. Plaintiff Jaco was told on at least one occasion that it is her fault that her sales suffer because she deliberately chooses to take a meal break at an "inopportune time." Further, customers often call class members on their cell phones. If class members do not answer their phones during meal breaks, another employee might get the sale. Then, class members risk not meeting their quota, and could face discipline for poor performance, up to termination, and they also lose commission wages.

36. Further, Plaintiff Jaco was required to travel to attend district meetings throughout Los Angeles. She was not reimbursed for all such travel expenses, including ride-share fees and/or mileage costs. Further, Plaintiff was not reimbursed for all expenses incurred when clients called her on her

CONSOLIDATED CLASS ACTION COMPLAINT

1    personal cell phone.

2    **d) Plaintiff Mendoza and other Financial Center Operations Managers or Financial Center**

3    **Assistant Managers:**

4        37.    Plaintiff Mendoza was employed by Defendant at Bank of America's Concord and

5    Clayton branches from September 2015 to January 2017 as a non-exempt, hourly-paid Operations

6    Manager.

7        38.    During their employment, Plaintiff and members of the class were required to remain on

8    the premises for meal breaks without a written agreement for on-the-job paid meal periods.  Likewise,

9    Plaintiff and members of the class were required to remain on the premises during their rest periods.

10       39.    Defendant further instructed Plaintiff Mendoza that he was to be available during his

11   meal and rest periods to perform various duties and responsibilities.  For example, Plaintiff's managers,

12   Tenisha Donaville and Amanda Velasco/Quiroz, told him that he is a manager, and that as such, he was

13   to take his breaks and lunch on the bank premises in order to provide assistance to other bank employees

14   and to complete his work duties, or words to that effect.  As a result, Plaintiff's meal periods were

15   regularly interrupted because Defendant expected Plaintiff to perform various duties while supposedly

16   on off-duty meal and/or rest breaks, including, but not limited to, the following: overrides/approvals;

17   perform dual control; review teller transactions; provide his keys/combinations for employees to access

18   negotiables, safe deposit boxes, and other similar items that required keys/combinations; and respond to

19   customer inquiries, among other duties.

20       40.    On or about December 17, 2015, Plaintiff contacted Britney Wasserman ("Ms.

21   Wasserman") of Defendant's Human Resources ("HR") department and notified Ms. Wasserman that

22   his meal periods were being interrupted.   Therefore, Defendant was aware that Plaintiff was

23   experiencing interrupted meal periods as a result of being required to stay on the premises.  Ms.

24   Wasserman told Plaintiff that they would get back to him regarding his inquiry about interrupted meal

25   periods.  However, Plaintiff did not hear back from Defendants.  Further, neither Defendant's HR

26   department nor Plaintiff's managers paid Plaintiff one additional hour of pay at his regular rate of

27   compensation for each workday when Defendant failed to provide him with an uninterrupted meal

28   period, despite Defendants' knowledge of these meal period violations.

41.    Likewise, Plaintiff's rest periods were regularly interrupted because Defendant expected Plaintiff to be available to the staff and to perform the same duties that he performed throughout the day, as well as during his meal periods.

42.    Defendant did not permit Plaintiff to complete his meal and rest periods before performing these work duties.  As set forth above, Plaintiff's managers specifically told him that because he was a manager, if he was on a meal or rest period, he was still expected to end any break that he might be on, and promptly address and complete any work assignments that came up during his break, and resume his break only after he completed his work assignments, or words to that effect.

43.    Further, Defendant failed to provide Plaintiff any other managerial or even non-exempt relief to enable him to take duty-free meal and rest periods.  Plaintiff complained to Defendant that he was not being relieved of his work duties during his meal and rest periods because he did not have coverage during his breaks.  For example, in or around the end of December 2015 or beginning of January 2016, and thus within his first few months of employment, when one of Plaintiff's managers was off work for a few weeks, Plaintiff did not receive legally-compliant meal periods (in that they were interrupted, were not at least 30-minutes in length, and/or were missed).  Plaintiff contacted his district manager, Mark (last name unknown), to ask for coverage, and explained to his district manager that he was not receiving uninterrupted meal periods that were at least 30-minutes in length.  Plaintiff's district manager essentially dismissed Plaintiff's concerns, stating that every branch had issues with lack of coverage, or words to that effect.  Plaintiff's district manager also said that every branch is low staffed, or words to that effect.  In sum and substance, he was told in no uncertain terms that legally compliant breaks of hourly employees such as he and others similarly situated had to take a back seat to branch business needs. Thereafter, Plaintiff consistently did not have relief to take duty-free meal and rest periods.

44.    In addition, Plaintiff is informed and believes that Defendant purposely understaffed the branches, resulting in Plaintiff and the Class not receiving compliant meal and rest periods.  During manager conference calls and morning huddles, Defendant emphasized its practice of migrating towards digital interfaces, where customers would be encouraged to use ATMs and mobile banking as opposed to face-to-face transactional banking.  Plaintiff is informed and believes that Defendant had a pattern and

practice of understaffing their branches in order to encourage customers to migrate towards digital banking features instead of performing transactions face-to-face in the branches.  During the manager conference calls, branch managers raised concerns about understaffing.  However, district managers were not receptive to such concerns, generally responding that "this is the staff that you get," and "this is the way Bank of America is moving," or words to that effect.  Therefore, Defendant knowingly and intentionally failed and refused to take any steps to address complaints about understaffing and lack of coverage.  Consequentially, Plaintiff and the Class continued to not receive compliant meal and rest periods.

45.    In or around April or May 2016, Plaintiff was transferred from the Concord, California branch to the Clayton, California branch, where he continued to experience non-compliant meal and rest periods.

46.    At both the Concord and Clayton branches, Plaintiff's meal and rest period violations occurred more frequently near the beginning or end of the month, or during the middle of the month.  These time periods faced a heavier flow of customers at the branch due to the processing of mortgage payment transactions, as well as the processing of paychecks and other similar transactions.  As a result of the high volume of customers at the bank and Defendant's continued practice of understaffing its branches, Defendant once again made it clear to Plaintiff and the Class that he and the Class were expected to be available to perform work during his/their meal and rest periods, as set forth above, including, but not limited to, responding to questions by other employees regarding the processing of transactions, reviewing and/or processing transactions, reviewing and/or processing currency transaction reports (for transactions in an amount greater than $10,000), and being available to provide dual support to obtain cash for customers, among other duties.

47.    By way of example only, and without meaning to limit the frequency of such events, in or around the beginning and middle of June 2016, Plaintiff's meal periods were interrupted approximately once per shift, and his rest periods were interrupted approximately once or twice per shift as a result of a high volume of clients at the branch.  During that period, Plaintiff took his meal and rest periods in Defendant's break room because Defendant expected Plaintiff to be available at the branch.  While in the break room during his meal and rest periods, employees would approach Plaintiff to ask him

CONSOLIDATED CLASS ACTION COMPLAINT

questions on processing transactions or requesting his approval on processing transactions, particularly those involving currency transaction reports.  On some occasions during that period, because the Senior Bankers or Tellers were already assisting customers in other matters, Tellers and Bankers would also approach Plaintiff (the Operations Manager) during his meal and rest periods to direct questions to him about transactions and/or requested approval of transactions.

48.    Based on the directions that Plaintiff had received from his managers, Tenisha Donaville and Amanda Velasco/Quiroz about taking his meal and rest periods on the bank's premises and performing work during his meal and rest periods, Plaintiff felt that he had no choice but to perform work during his meal and rest periods during these time periods and throughout his employment.

49.    Defendant did not pay Plaintiff one additional hour of pay at his regular rate of compensation for each workday during the period of in or around the beginning and middle of June 2016 when Defendant failed to provide Plaintiff with uninterrupted meal and rest periods, not did it do so at any other time period throughout his employment.

50.    On average, Plaintiff worked shifts of approximately 8 to 9 hours.  Therefore, when Plaintiff worked during his meal periods and was not compensated for such hours worked, this additional time triggered unpaid overtime compensation that Defendants owed Plaintiff.

51.    In or around the beginning of June 2016, Plaintiff worked approximately 8 hours per shift.  Because Plaintiff also worked off-the-clock through his meal periods during that time period, and did not receive pay for that time (including, the payment of minimum wages), the time that Plaintiff worked off-the-clock caused Plaintiff's total hours worked during that period to be in excess of 8 hours per shift.  Therefore, Plaintiff worked overtime hours during that period, but was not paid minimum wages or overtime wages for that time.

52.    As a result of Defendant's practice of requiring Plaintiff and the putative Class to perform work during their meal and rest periods, and of Defendant's practices and procedures of understaffing their branches, Plaintiff and the putative Class did not receive timely meal periods, i.e., no later than the end of the fifth hour of work.  In addition, Plaintiff's and the putative Class' rest periods were delayed, such that they did not occur in the middle of each work period, and were regularly interrupted.

53.    As set forth above, Plaintiff's and members of the Class's missed, late, shortened, "on

duty," and on-the-premises meal and rest breaks were caused by pressure from supervisors and Bank of America's required business practices, and were not voluntary.

54.    Whenever Plaintiff's and members of the Class's meal or rest breaks are/were late, missed, or shortened because of business concerns and thus not voluntary on the part of the employee, Bank of America is required by statute and Wage Order No. 4 to pay the affected employee one additional hour of pay at his or her regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods.

55.    Whenever Plaintiff and class members' meal or rest breaks are "on duty" or required to be on-the-premises, their breaks are on-the-clock and they must be paid for the time spent working by the Class Members during these non-compliant breaks, in addition to being paid the required one additional hour of pay at his or her regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, as required by the Wage Order and the Labor Code.

56.    Plaintiff and class members' right to one additional hour of pay at their regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, vested immediately upon the late, missed, taken "on duty" or on-the-premises, or short meal or rest breaks.

57.    During the class period, Bank of America: (1) failed to track and identify which employee meal periods were late, missed, or short; (2) failed to maintain records of whether the missed, late, or short meal period was due to the press of business or voluntary; (3) failed to pay employees' "on duty" or on-the-premises meal or rest breaks; and (4) failed to pay one additional hour of pay at the employees' regular rate of compensation for each workday that a meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods.

58.    Bank of America's wholesale failure to comply—or even have a system for complying— with California's meal and rest break laws provided it with a competitive advantage over companies that complied with California law.

59. Additionally, Bank of America could have easily implemented a system for automatically paying one additional hour of pay at the employees' regular rate of compensation for each workday that a meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, but chose not to do so. For example, Bank of America could have simply paid operations managers one additional hour of pay at the employees' regular rate of compensation for each workday that their meal breaks were "on duty" or on-premises, and simply paid the meal breaks as time worked. Further, Bank of America could instruct operations managers to notify their supervisors when they received interrupted, short, or late meal or rest breaks. Moreover, on information and belief, software exists where Bank of America can track when breaks are improper, record the reasons therefor, and pay compensation of one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, to affected employees. These systems also record that additional compensation on wage statements.

60. Because Bank of America failed to implement a system for tracking meal and rest break violations and recording whether they were voluntary, a presumption arises that the break violations were involuntary and Bank of America owes employees one additional hour of pay at the employees' regular rate of compensation therefor, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods. *Safeway, Inc. v. Superior Court of Los Angeles County*, 238 Cal.App.4th 1138, 1159-1160 (2015).

61. Moreover, because Bank of America required Plaintiff and the Class to perform work during their meal periods while Plaintiff and the Class were clocked out, Plaintiff and the Class worked time for which they were not compensated, including minimum wages and/or overtime wages.

62. Further, Defendant required Plaintiff and members of the Class to use their personal cellular phones both during and outside of their work shifts in order to communicate with other Bank of America employees regarding status updates, emergencies, scheduling, pending documentation, pending training, approving timesheets for employees, or answering questions that Plaintiff's managers and/or other employees had and/or any other work-related purposes.

63.    By way of example only, and without meaning to limit the frequency of such events, in or around end of 2015 or beginning of 2016, Plaintiff's managers were trying to contact Plaintiff on his personal cellular phone because employees needed access to his keys and to his code in order to access the bank vault.  When Plaintiff was unable to respond immediately, Plaintiff's manager became upset at Plaintiff, questioning him with regards to his whereabouts and why he was unable to answer their attempts to reach him on his cellular phone.  As a result, Plaintiff was caused to reasonably believe that he had no choice but to keep his personal cellular phone on his person during all of his work hours and to respond to text messages and phone calls received from other Bank of America employees.

64.    On one occasion, on or about November 27, 2015, Plaintiff notified his manager that he was not feeling well and would be taking a sick day.  Not only did Plaintiff's manager express her discontentment at Plaintiff taking a sick day, but Plaintiff's manager continued text messaging Plaintiff about work.  For example, Plaintiff's manager told Plaintiff that the branch was "understaffed," or words to that effect.  Plaintiff's manager also said that "you will have to be here for the meeting.  No exceptions," or words to that effect.  Plaintiff's manager also texted Plaintiff that day, inquiring about the location of a cash box, even though Plaintiff told his manager that he was not feeling well and was taking a sick day off from work.  Plaintiff shared screen shots of these text messages with Bank of America's HR department.

65.    Bank of America had knowledge of Plaintiff and other Class Members being required to use their personal cellular phones during and outside of their work shifts, but nonetheless Bank of America failed to reimburse Plaintiff and members of the Class for those expenses.

66.    Defendant's conduct, as alleged here, has caused Plaintiffs and class members damages including, but not limited to, loss of wages and compensation. Defendant is liable to Plaintiffs and the class for failing to pay all straight-time and overtime wages owed for each pay period, failing to pay meal and rest break premiums, failing to provide timely and accurate wage statements, failing to pay all wages due upon termination, failing to reimburse for unpaid business expenses, unfair competition and for penalties under PAGA.

**EXHAUSTION OF PAGA NOTICE REQUIREMENT**

67.    Plaintiff Harrison exhausted the notice requirement by filing a complaint with the Labor

and Workforce Development Agency ("LWDA") in her letter dated October 17, 2018, as required under the California Labor Code Private Attorney General Act ("PAGA"). A true and correct copy of Plaintiff's letter is attached hereto as **Exhibit A**. The LWDA did not assume jurisdiction over the applicable penalty claims alleged; therefore, Plaintiff has exhausted the procedural requirement under PAGA to pursue any and all penalty claims as provided under PAGA.

68.    Plaintiff Mendoza exhausted the notice requirement by submitting a letter to the LWDA, along with a copy of the proposed complaint, dated March 22, 2019. A true and correct copy of Plaintiff Mendoza's LWDA letter, and attachment to the letter, is attached hereto as **Exhibit B**. The LWDA did not assume jurisdiction over the applicable penalty claims alleged.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

69.    Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated, and as members of the Class they seek to represent. The Class consists of Defendant's current and former non-exempt employees that fall within at least one of the following subclasses:

      a.    Employees working or who worked in the State of California for Defendant as a Teller on or after October 26, 2014, through the date of preliminary approval of the settlement by the Court;

      b.    Employees working or who worked in the State of California for Defendant as a Financial Center Operations Manager or a Financial Center Assistant Manager on or after March 25, 2015, through the date of preliminary approval of the settlement by the Court;

      c.    Employees working or who worked in the State of California for Defendant as a Personal Banker, Senior Personal Banker, Relationship Manager, Relationship Manager and Lending Specialist, Sales and Service Specialist, Relationship Banker, or a Relationship Banker – Hybrid on or after March 27, 2016, through the date of preliminary approval of the settlement by the Court.

70.    The Class expressly exclude therefrom any individuals who, as of the date of final approval of the Class Settlement, have filed a pending, separate lawsuit, individually and/or as a putative class or representative action, asserting the same claims to those alleged in the Lawsuits, including but

not limited to the certified claims in *Frausto v. Bank of America, N.A.*, Case No. 3:18-cv-01983-LB and *Suarez v. Bank of America, N.A.*, Case No. 3:18-cv-01202-LB, as set forth in Dkt. #128 of Case No. 3:18-cv-01983-LB.  The Class also excludes any former employee of Defendant who has previously released such claims.  With respect to any current employee who has previously released such claims, any time period covered by each such employee's release agreement shall be excluded from the calculation of any settlement sum payable under this Agreement.

71.    **Numerosity/Impracticability of Joinder**: The members of the Class are so numerous that individual joinder is impracticable. The members of the class are so numerous that joinder of all members would be unfeasible and impracticable. Plaintiffs estimate, on information and belief, that there are thousands current and former non–exempt employees of Defendant in California during the class period meet the class definition as alleged in this Complaint. The identity of individuals qualifying for class membership is readily ascertainable via inspection of the personnel records and other documents maintained by Defendant in the normal course of business. Class members may be notified of the pendency of this action by mail, electronic mail, the internet, or published notice.

72.    **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting only individual class members such that a class action is superior to other forms of action. The claims of the named Plaintiffs are typical of those of every other member of the Class. All class members were treated in a similar fashion and suffered similar harm as a consequence of Defendant's conduct, as alleged. Common legal and factual questions include, but are not limited to:

    a.  Whether Defendant's policy and/or practice forced Plaintiffs and the class to work off the clock;

    b.  Whether Defendant's failed to pay Plaintiffs and the Class for pre-shift and post-shift work;

    c.  Whether Defendant violated Labor Code in failing to pay Plaintiffs and the Class minimum/regular and overtime wages for all hours worked;

    d.  Whether Defendant had a policy or practice of not paying meal or rest period premium wages;

    e.  Whether Defendant violated Labor Code § 226.7 and/or § 512 and engaged in a pattern or

19

practice of failing to provide timely, off–duty thirty (30) minute meal periods to Plaintiffs and members of the class

f.  Whether Defendant engaged in a pattern or practice of impeding Plaintiffs and the members of the class from taking statutory off–duty thirty (30) minute meal periods on a timely basis;

g.  Whether Defendant required Plaintiffs and the members of the class to remain on site during meal and rest periods.

h.  Whether Defendant engaged in a pattern or practice of failing to properly compensate Plaintiffs and the members of the class for missed, untimely or on–duty meal periods and rest periods as required by California law;

i.  Whether Defendant violated the applicable California Industrial Welfare Commission ("IWC") Order by failing to provide Plaintiffs and the members of the class with timely off–duty thirty (30) minute meal periods;

j.  Whether Defendant engaged in unfair practices and violated California Business and Professions Code § 17200 by failing to provide Plaintiffs and the members of the class with their statutory off–duty meal and rest periods on a timely basis;

k.  Whether Defendant engaged in unfair practices and violated California Business and Professions Code § 17200 by failing to pay Plaintiffs and the members of the class for all time worked;

l.  Whether Defendant maintained accurate time records of off–duty thirty (30) minute meal breaks taken by Plaintiffs and members of the class in accordance with the applicable IWC Wage Order;

m.  Whether Defendant violated Labor Code § 226(a) by issuing inaccurate itemized wage statements to Plaintiffs and members of the class that failed to include payments for missed, untimely, and/or on–duty meal periods among wages earned throughout the Class period;

n.  Whether Defendant violated Labor Code § 226(a) by issuing inaccurate itemized wage statements to Plaintiffs and members of the class that failed to include payment for all hours worked;

o.  Whether Defendant violated Labor Code § 226(a) by issuing inaccurate itemized wage

statements to Plaintiffs and members of the class that failed to accurately state the total hours worked, to the detriment of Plaintiffs and the class;

p.  Whether Defendant failed to compensate, and therefore violated Labor Code § 226.7 and the applicable Wage Order by failing to provide ten (10) minute, uninterrupted rest periods as contemplated by California law for work periods in excess of three and one–half (3 ½) hours;

q.  Whether Defendant engaged in a pattern or practice of failing to properly compensate Plaintiffs and the members of the class for failing to provide ten (10) minute, uninterrupted rest periods as contemplated by California law for work periods in excess of three and one–half (3 ½) hours;

r.  Whether Defendant violated Labor Code § 1197 due to failure to compensate Plaintiffs and members of the class for those acts Defendant required Plaintiffs and members of the class to perform for the benefit of Defendant;

s.  Whether Defendant violated Labor Code § 2802 due to failure to reimburse Plaintiffs and members of the class for those expenses Defendant required Plaintiffs and members of the class to perform for the benefit of Defendant;

t.  Whether Defendant violated Labor Code § 201-203 by failing to pay all wages due upon termination to all Class members who were terminated or voluntarily quit; and

u.  The nature and extent of class–wide injury and the measure of damages or restitution for the injury.

73.  **Typicality:** Plaintiffs' claims are typical of the claims of the members of the class they seek to represent because Plaintiffs were exposed and subjected to the same unlawful business practices and conduct as other employees in the Class employed by Defendant during the class period. Named Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the class and are based on the same legal theories. Plaintiffs and the members of the class they seek to represent sustained the same types of damages and losses.

74.  **Adequacy:** Plaintiffs are adequate representatives of the class(es) they seek to represent because their interests do not conflict with the interests of the members of the class Plaintiffs seek to represent. There is a well–defined community of interest in the questions of law and fact affecting the

class of persons that Plaintiffs represent as a whole. Plaintiffs retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their attorneys have any interests contrary to or in conflict with the Class. The interests of the members of the class will be fairly and adequately protected by Plaintiffs and their counsel.

75.    Named Plaintiffs do not anticipate any difficulty managing this litigation.

76.    **Superiority and Substantial Benefit:** The class action is superior to other available means for the fair and efficient adjudication of Plaintiffs and the class members' claims. Individual employees such as Plaintiffs have a difficult time prosecuting individual actions against large corporate employers such as Defendant. The damages suffered by each individual class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members to redress the wrongs done to them on an individual basis. Even if members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and the court system due to the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

77.    The Class should also be certified because:

a.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

b.    The prosecution of separate actions by individual members of the Class would create a risk of adjudication with respect to them, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.    Defendant acted or refused to act on grounds generally applicable to the Class, and/or the general public, thereby making appropriate final and injunctive relief with respect

to the Class as a whole.

**FIRST CAUSE OF ACTION**
**FAILURE TO PAY REGULAR AND MINIMUM WAGES**
**(Violation of Labor Code §§1197, 1198, and IWC Wage Order No. 4-2001)**
**(Against all Defendants)**

78.    Plaintiffs re–allege and incorporate all preceding paragraphs as if fully set forth herein.

79.    Labor Code § 1197 provides, "the minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

80.    Labor Code §1198 states "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

81.    IWC Wage Order 4-2001 Section 4 provides that an employer may not pay employees less than the applicable minimum wage for all hours worked.

82.    Pursuant to the IWC Wage Order, Defendant is required to pay Plaintiffs, and the members of the Class, for all hours worked, meaning the time which an employee is subject to the control of the employer.

83.    At all relevant times during the class period, Defendant failed to pay Plaintiffs and other members of the class wages for all hours worked. Plaintiffs Harrison, Kaffishahsavar, and Jaco, and the class of Tellers, Personal Bankers, Senior Personal Bankers, Relationship Managers, Relationship Manager and Lending Specialists, Sales and Service Specialists, Relationship Bankers, or Relationship Bankers – Hybrid were required to boot up their computers and load several programs to begin their shifts, and also perform opening procedures, and they were not paid for this time.  Similarly, after their shift ended, Plaintiffs Harrison, Kaffishahsavar, and Jaco, and the Class of Tellers, Personal Bankers, Senior Personal Bankers, Relationship Managers, Relationship Manager and Lending Specialists, Sales and Service Specialists, Relationship Bankers, or Relationship Bankers – Hybrid had to clock out from the time program, log off of all the programs, and shut down the computer.  Further, Plaintiffs Kaffishahsavar, and Jaco, and the Class of Personal Bankers, Senior Personal Bankers, Relationship

1  Managers, Relationship Manager and Lending Specialists, Sales and Service Specialists, Relationship

2  Bankers, or Relationship Bankers – Hybrid were required to work after the end of their shifts in

3  performing compliance questions and audits. Plaintiffs and the Class were not paid for this time.

4      84.     In addition, Plaintiffs Harrison, Mendoza, Kaffishahsavar, and Jaco and the Class of

5  Tellers, Financial Center Operations Managers, Financial Center Assistant Managers, Personal Bankers,

6  Senior Personal Bankers, Relationship Managers, Relationship Manager and Lending Specialists, Sales

7  and Service Specialists, Relationship Bankers, or Relationship Bankers – Hybrid were required to

8  perform work during their meal periods, were not relieved of their work duties during their meal

9  periods, and as a result, performed work off-the-clock during their meal periods. Plaintiffs and the Class

10 were required to be on the premises during their meal and rest periods, such that their meal and rest

11 periods were "on duty." Plaintiffs and the Class were not paid for the time spent working during their

12 non-compliant meal periods, including compensation for minimum wages.

13     85.     In relevant part, Labor Code § 1194 provides that any employee receiving less than

14 minimum wage applicable to the employee is entitled to recover in a civil action the unpaid balance of

15 the amount of this minimum wage, including interest thereon, reasonable attorney's fees, and cost of

16 suit, which Plaintiffs and other members of the class seek.

17     86.     Pursuant to Labor Code § 1194.2, liquidated damages are available to employees who

18 file an action under Labor Code § 1194, which Plaintiffs and members of the class seek.

19     87.     In committing the violations of state law as herein alleged, Defendant has knowingly and

20 willfully refused to perform their obligations to compensate Plaintiffs and members of the class for all

21 wages earned and all hours worked at least minimum wage.  As a direct result, Plaintiffs and other

22 members of the class have suffered and continue to suffer, substantial losses related to the use and

23 enjoyment of such compensation, wages and lost interest on such monies and expenses and attorney's

24 fees in seeking to compel Defendant to fully perform their obligation under state law, all to their

25 respective damage in amounts according to proof at trial and within the jurisdiction of this Court.

26     88.     Plaintiffs seek to recover in a civil action the unpaid balance of the full amount of the

27 unpaid wages resulting from Defendant's minimum wage violations including interest thereon,

28 reasonable attorney's fees and costs of suit, and liquidated damages to the fullest extent permissible

1    pursuant to Labor Code §§ 1194 and 1194.2.

2                           **SECOND CAUSE OF ACTION**
3                    **FAILURE TO PAY OVERTIME WAGES**
         **(Violation of Labor Code §510, and IWC Wage Order No. 4-2001)**
4                        **(Against all Defendants)**

5         89.    Plaintiffs re–allege and incorporate all preceding paragraphs as if fully set forth herein.

6         90.    Labor Code §510 and the applicable Wage Order provide that employees in California

7    shall not be employed more than eight hours in any workday or forty hours in a workweek unless they

8    receive additional compensation beyond their regular wages in amounts specified by law.  Specifically,

9    Labor Code §510(a) requires that: Any work in excess of eight hours in one workday and any work in

10   excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in

11   any one workweek shall be compensated at the rate of no less than one and one-half times the regular

12   rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the

13   rate of no less than twice the regular rate of pay for an employee.

14        91.    Labor Code § 1194 establishes an employee's right to recover unpaid overtime

15   compensation, and interest thereon, together with the costs of suit, and attorneys' fees.  Labor Code

16   §1198 makes employment of an employee for longer hours than the IWC set or under conditions the

17   IWC prohibits is unlawful.

18        92.    At all times relevant hereto, Plaintiffs and other members of the class, have worked more

19   than eight hours in a workday, and/or more than forty hours in a workweek.

20        93.    At all times relevant hereto, Defendant has failed to pay Plaintiffs, and the other members

21   of the class, the overtime compensation premium for those unpaid hours they have worked in excess of

22   the maximum hours permissible by law as required by Labor Code § 510 and 1198, and the applicable

23   Wage Order.

24        94.    At all relevant times during the class period, Defendant failed to pay Plaintiffs and other

25   members of the class wages for all overtime hours worked. Plaintiffs Harrison, Kaffishahsavar, and

26   Jaco, and the class of Tellers, Personal Bankers, Senior Personal Bankers, Relationship Managers,

27   Relationship Manager and Lending Specialists, Sales and Service Specialists, Relationship Bankers, or

28   Relationship Bankers – Hybrid were required to boot up their computers and load several programs to

begin their shifts, and also perform opening procedures, and they were not paid for this time. Similarly, after their shift ended, Plaintiffs Harrison, Kaffishahsavar, and Jaco, and the Class of Tellers, Personal Bankers, Senior Personal Bankers, Relationship Managers, Relationship Manager and Lending Specialists, Sales and Service Specialists, Relationship Bankers, or Relationship Bankers – Hybrid had to clock out from the time program, log off of all the programs, and shut down the computer. Further, Plaintiffs Kaffishahsavar, and Jaco, and the Class of Personal Bankers, Senior Personal Bankers, Relationship Managers, Relationship Manager and Lending Specialists, Sales and Service Specialists, Relationship Bankers, or Relationship Bankers – Hybrid were required to work after the end of their shifts in performing compliance questions and audits. Plaintiffs and the Class were not paid for this time.

95.    In addition, Plaintiffs Harrison, Mendoza, Kaffishahsavar, and Jaco, and the Class of Tellers, Financial Center Operations Managers, Financial Center Assistant Managers, Personal Bankers, Senior Personal Bankers, Relationship Managers, Relationship Manager and Lending Specialists, Sales and Service Specialists, Relationship Bankers, or Relationship Bankers – Hybrid were required to perform work during their meal periods, were not relieved of their work duties during their meal periods, and as a result, performed work off-the-clock during their meal periods. Plaintiffs and the Class were required to be on the premises during their meal and rest periods, such that their meal and rest periods were "on duty." Plaintiffs and the Class were not paid for the time spent working during their non-compliant meal periods, including compensation for overtime wages.

96.    By virtue of Defendant's unlawful failure to pay the lawful overtime rate of compensation to the Plaintiffs, and the other members of the class, Plaintiffs and the other members of the class, have suffered, and will continue to suffer, damages in amounts which are presently unknown to them, but which exceed the jurisdictional limits of this Court and will be ascertained according to proof at trial.

97.    Defendant acted and is acting intentionally and oppressively toward Plaintiffs, and the other members of the class, with a conscious disregard of their rights, or the consequences to them, with the intent of depriving them of property and legal rights and otherwise causing them injury. Defendant failed to pay Plaintiffs and other members of the class for all hours worked including the time spent

1    loading programs before their shift, performing opening procedures, closing the programs after their

2    shifts, post-shift compliance and audit work, and the work performed during meal breaks.  To the extent

3    this time worked exceeded eight (8) hours in a day and/or forty (40) hours in a week, Plaintiffs and class

4    members are entitled to overtime wages.

5         98.    Plaintiffs and the class, request recovery of overtime compensation according to proof,

6    interest, attorneys' fees, expenses, and costs pursuant to Labor Code § 1194(a), and Civil Code

7    §§3287(b) and 3289, as well as the assessment of any statutory penalties against Defendant, in a sum as

8    provided by the Labor Code, the applicable Wage Orders, and/or other statutes.

9                              **THIRD CAUSE OF ACTION**
                          **FAILURE TO PROVIDE MEAL PERIODS**
10        **(Violation of Labor Code §§ 512, 226.7, and IWC Wage Order No. 4-2001)**
                                **(Against all Defendants)**
11

12        99.    Plaintiffs re–allege and incorporate all preceding paragraphs as if fully set forth herein.

13        100.    California Labor Code § 226.7(b) provides, "An employer shall not require an employee

14   to work during a meal or rest period mandated pursuant to an applicable order of the Industrial Welfare

15   Commission".

16        101.    IWC Order No. 4-2001(11)(A) provides, in pertinent part: "[n]o employer shall employ

17   any person for a work period of more than five (5) hours without a meal period of not less than 30

18   minutes, except that when a work period of not more than six (6) hours will complete the day's work the

19   meal period may be waived by mutual consent of the employer and the employee."

20        102.    § 512(a) of the California Labor Code provides, in pertinent part: "[a]n employer may not

21   employ an employee for a work period of more than five hours per day without providing the employee

22   with a meal period of not less than 30 minutes, except that if the total work period per day of the

23   employee is no more than six hours, the meal period may be waived by mutual consent of both the

24   employer and employee. An employer may not employ an employee for a work period of more than 10

25   hours per day without providing the employee with a second meal period of not less than 30 minutes,

26   except that if the total hours worked is no more than 12 hours, the second meal period may be waived by

27   mutual consent of the employer and the employee only if the first meal period was not waived."

28        103.    "An employer's duty with respect to meal breaks under both section 512, subdivision (a)

and [the] Wage Order…is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1040 (2012).

104.    As alleged herein, Defendant failed to authorize and permit timely and uninterrupted meal periods during the class period. Plaintiffs and members of the class were routinely required to work without a timely and uninterrupted meal break at the direction of Defendant and/or with Defendant's knowledge and acquiescence.

105.    By its actions in requiring its employees to work through meal periods and/or its failure to relieve the employees of their duties for their off–duty meal periods, Defendant has violated California Labor Code §§ 226.7, 512 and § 11 of IWC Wage Order No. 4-2001, and is liable to Plaintiffs and the class.

106.    As a result of the unlawful acts of Defendant, Plaintiffs and the class have been deprived of timely off–duty meal periods and are entitled to recovery under Labor Code §§ 226.7(c), 512 and § 11 of IWC Wage Order No. 4-2001, in the amount of one additional hour of pay at the employee's regular rate of compensation for each workday in which Defendant failed to provide its employees with timely statutory off–duty meal periods.

107.    Plaintiffs, and the other members of the class, are entitled to seek and recover reasonable attorneys' fees and costs pursuant to Labor Code §§ 226.7 and 512.

**FOURTH CAUSE OF ACTION**
**FAILURE TO PROVIDE REST PERIODS**
**(Violation of Labor Code §§ 226.7 and IWC Wage Order No. 4-2001)**
**(Against all Defendants)**

108.    Plaintiffs re–allege and incorporate all preceding paragraphs as if fully set forth herein.

109.    California Labor Code § 226.7(b) provides, "An employer shall not require an employee to work during a meal or rest period mandated pursuant to an applicable order of the Industrial Welfare Commission".

110.    IWC Order No. 4-2001(12)(A) provides, in pertinent part: "[e]very employer shall

authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one–half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages".

111.   IWC Order No. 4-2001(12)(B) further provides: "[i]f an employer fails to provide an employee with a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided".

112.   As alleged herein, Defendant failed to authorize and permit rest breaks during the Class period. Plaintiffs and members of the class were required to work through rest periods at the direction of Defendant and/or with Defendant's knowledge and acquiescence.

113.   By its actions in requiring its employees during the class period to work through rest periods and/or its failure to relieve the employees of their duties for their rest periods, Defendant violated § 12 of IWC Wage Order No. 4-2001 and California Labor Code § 226.7 and is liable to Plaintiff and the class.

114.   Defendant's unlawful conduct alleged herein occurred in the course of employment of Plaintiffs and all others similarly situated and such conduct has continued through the filing of this complaint.

115.   As a direct and proximate result of Defendant's unlawful action, Plaintiffs and the class have been deprived of timely rest periods and/or were not paid for rest periods taken during the Class period and are entitled to recovery under Labor Code § 226.7(c) in the amount of one additional hour of pay at the employee's regular rate of compensation for each workday in which Defendant failed to provide employees with timely and/or paid rest periods.

116.   Plaintiffs, and the other members of the class, are entitled to seek and recover reasonable attorneys' fees and costs pursuant to Labor Code §§ 226.7.

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FIFTH CAUSE OF ACTION
### FAILURE TO FURNISH ACCURATE WAGE STATEMENTS
#### (Violation of Labor Code § 226)
#### (Against all Defendants)

117.    Plaintiffs re–allege and incorporate all preceding paragraphs as if fully set forth herein.

118.    California Labor Code § 226(a) provides: "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee […], (3) the number of piece–rate units earned and any applicable piece rate if the employee is paid on a piece–rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, […], (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee…".

119.    Labor Code § 226(e) provides that an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation of § 226 occurs and $100 for each subsequent pay period.

120.    Plaintiffs are informed, believe and thereon allege that at all times relevant, Defendant knowingly and intentionally failed to furnish and continues to knowingly and intentionally fail to furnish Plaintiffs and each class member with timely and accurate itemized statements showing all applicable hourly rates in effect and corresponding number of hours, and gross regular and overtime wages earned by Plaintiffs and each class member, as required by Labor Code § 226(a), and that the premiums owed to Plaintiffs and the members of the Class for noncompliant meal and rest periods were not included in gross wages earned by Plaintiffs and the Class.

121.    Defendant's failure to provide Plaintiffs and members of the Class with accurate itemized wage statements during the Class period has caused Plaintiff and members of the Class to incur

economic damages in that they were not aware that they were owed and not paid compensation for all hours worked, including overtime, and for noncompliant rest periods and meal periods. In addition, Defendant provided inaccurate information regarding hours worked, which masked its underpayment of wages to Plaintiffs and the Class.

122.    As a result of Defendant's issuance of inaccurate itemized wage statements to Plaintiffs and members of the Class in violation of Labor Code § 226(a), Plaintiffs and the members of the Class are each entitled to recover penalties pursuant to § 226(e) of the Labor Code.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PAY ALL WAGES DUE UPON TERMINATION**
**(Violation of Labor Code §§ 201-203)**
**(Against all Defendants)**

123.    Plaintiffs re–allege and incorporate all preceding paragraphs as if fully set forth herein.

124.    California Labor Code §§ 201-203 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy–two hours thereafter, unless the employee has given seventy–two hours prior notice of his or her intention to quit in which case the employee is entitled to his or her wages at the time of quitting.

125.    During the Class period, Defendant willfully failed to pay Plaintiff and class members who are no longer employed by Defendant all their earned wages, specifically, wages for all hours worked, including overtime, and meal and rest period premiums not paid for missed or interrupted meal and rest periods, either at the time of discharge or within seventy–two hours of their leaving Defendant's employ in violation of California Labor Code §§ 201, 202, and 203.

126.    Plaintiffs and members of the Class are entitled to waiting time penalties for each day that has passed that they have not received all wages owed for up to 30 days.

**SEVENTH CAUSE OF ACTION**
**FAILURE TO REIMBURSE BUSINESS EXPENSES**
**(Violation of Labor Code § 2802, *et seq.*)**
**(Against all Defendants)**

127.    Plaintiffs re–allege and incorporate all preceding paragraphs as if fully set forth herein.

128.    California Labor Code § 2802 provides, in relevant part, that: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

129.    At all relevant times herein, Defendant violated California Labor Code § 2802, by failing to indemnify and reimburse Plaintiffs and the Class Members for required expenses incurred in the discharge of their job duties for Defendant's benefit. Defendant's uniform policy, practice and procedure was to not reimburse Plaintiffs and the Class Members for personal cell phone usage for work purposes, mileage, ride-share fees or other expenses incurred for Defendant within the course and scope of their employment for Defendant. These expenses were necessary to complete their principal job duties. Defendant is estopped by Defendant's conduct to assert any waiver of this expectation. Although these expenses were necessary expenses incurred by Plaintiffs and the Class Members, Defendant failed to indemnify and reimburse Plaintiffs and the Class Members for these expenses as an employer is required to do under the laws and regulations of California.

130.    Plaintiffs therefore demand reimbursement for the above described expenditures or losses incurred by Plaintiffs and the Class Members in the discharge of their job duties for Defendant, or their obedience to the directions of Defendant, with interest at the statutory rate and attorneys' fees and costs as allowed under California Labor Code § 2802.

### EIGHTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
**(Violation of California's Unfair Competition Law,**
**Bus. & Prof. Code § 17200 *et seq*.)**
**(Against all Defendants)**

131.    Plaintiffs re–allege and incorporate all preceding paragraphs as if fully set forth herein.

132.    California Business and Professions Code § 17200 (the "UCL") prohibits any unlawful, unfair, or fraudulent business practices.

133.    Through its action alleged herein, Defendant has engaged in unfair competition within the meaning of the UCL. Defendant's conduct, as alleged herein, constitutes unlawful, unfair, and/or fraudulent business practices under the UCL.

134.    Defendant's unlawful conduct under the UCL includes, but is not limited to, violating the statutes alleged herein. Defendant's unfair conduct under the UCL includes, but is not limited to, failure to pay class members wages and compensation they earned through labor provided (including minimum wages and overtime wages), failure to reimburse them for necessary incurred business expenses, failing to pay one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period was not provided, up to a total of two hours pay – one for any number of missed meal periods and one for any number of missed rest periods, and failing to otherwise compensate class members as alleged herein. Defendant's fraudulent conduct includes, but is not limited to, issuing wage statements containing false and/or misleading information about the time the class members worked, and the amount of wages or compensation due.

135.    Plaintiffs have standing to assert this claim because they suffered injury in fact and have lost money as a result of Defendant's conduct.

136.    Plaintiffs and the Class seek restitutionary disgorgement from Defendant of monies owed for all hours worked and for unpaid meal and rest period premiums.

137.    Plaintiffs have assumed the responsibility of enforcement of the laws and public policies specified here by suing on behalf of themselves and other similarly situated class members previously or presently working for Defendant in California. Plaintiffs' success in this action will enforce important rights affecting the public interest. Plaintiffs will incur a financial burden in pursuing this action in the public interest. Therefore, an award of reasonable attorneys' fees to Plaintiffs are appropriate pursuant to Code of Civil Procedure section 1021.5.

**NINTH CAUSE OF ACTION**
**Violation of Private Attorney General Act**
**California Labor Code, §§2698, *et. seq.***
**(Against all Defendants)**

138.    Plaintiffs re-allege and incorporate all preceding paragraphs as if fully set forth herein.

139.    Labor Code §§2698 and 2699 (the California Private Attorney General Act of 2004, or "PAGA"), expressly establish that any provision of the California Labor Code which provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency ("LWDA"), or any of its departments, divisions, commissions, boards, agencies or employees for a violation of the

California Labor Code, may be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself, and other current or former employees.

140.    Whenever the LWDA, or any of its departments, divisions, commissions, boards, agencies or employees has discretion to assess a civil penalty, a fact-finder in a civil action is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty.

141.    Plaintiffs are "aggrieved employees" as defined by Labor Code §2699, in being employees of Defendant, and one or more of the Labor Code violations were committed against them.

142.    Plaintiffs assert all of their claims in this Complaint against Defendant on behalf of themselves and all other members of the Class and/or on behalf of all aggrieved employees, as well as the general public, in their capacity as "private attorney general" and seek all statutory penalties available under the Labor Code, for the aforementioned Labor Code violations.

143.    By reason of the above and pursuant to Labor Code §2699, Plaintiffs, on behalf of themselves and all other members of the Class and/or on behalf of all aggrieved employees, as well as the general public, is entitled to payment of a penalty of $100 per pay period for each employee for the initial violation, and $200 per pay period for each employee for each subsequent violation, plus interest.

144.    In addition, Plaintiffs, on behalf of themselves, and all other members of the Class and/or on behalf of all aggrieved employees, as well as the general public, seek and is entitled to have 75% of all recovered penalties and interest allocated to the LWDA and 25% to Plaintiffs.  Further, Plaintiffs are entitled to seek and recover reasonable attorneys' fees, expenses, and costs pursuant to Labor Code §2699, and any other applicable statutes.

145.    Plaintiffs have complied with the notice requirements of Labor Code §2699.3(a)(1) prior to commencing this action.  A copy of the letter sent to the California LWDA on October 17, 2018, via certified mail, and copied to Defendant's Agent for Service of Process in California on the same date, via certified mail, in accordance with §2699.3(a)(1), is attached hereto, as **Exhibit A**, and by reference incorporated herein.

146.    As of today's date, the LWDA has not responded to Plaintiffs' notice.

147.    Plaintiffs and the Class are also entitled to reasonable attorneys' fees and costs, pursuant to California Labor Code section 2699(g)(1).

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A.  An order that this action may proceed and be maintained as a class action;

B.  For all straight–time and overtime wages owed to Plaintiffs and each Class member for all hours worked;

C. For one hour of wages due to Plaintiffs and each class member for each work period of more than five (5) hours when they did not receive an uninterrupted thirty (30) minute meal period;

D. For one hour of wages due to Plaintiffs and each class member for each work period of more than three and one–half (3 ½) hours when they did not receive an uninterrupted ten (10) minute rest period for each four (4) hours or major fraction thereof worked;

E.  For actual damages or statutory penalties under Labor Code § 226(e);

F.  For waiting time penalties pursuant to Labor Code § 203;

G.  For liquidated damages pursuant to Labor Code § 1194.1;

H.  For reimbursement of unpaid expenses under Labor Code § 2802;

I.   For restitutionary disgorgement pursuant to the UCL;

J.  Prejudgment interest at the maximum legal rate;

K.  Reasonable attorney's fees;

L.  General, special and consequential damages, to the extent allowed by law;

M. Costs of suit;

N.  For attorneys' fees pursuant to Code of Civil Procedure §1021.5;

O.  For penalties and reasonable attorneys' fees and costs under Labor Code §2698, *et seq*., and

P.  Such other equitable relief as the Court may deem just and proper.

DATED: May 27, 2021                    **THE MARKHAM LAW FIRM**


By:    */s/ David R. Markham*
           David R. Markham
           Maggie Realin
           Lisa Brevard

CONSOLIDATED CLASS ACTION COMPLAINT

**QUINTILONE & ASSOCIATES**
Richard E. Quintilone II
Jeffrey T. Green

**UNITED EMPLOYEES LAW GROUP**
Walter Haines

Attorneys for Plaintiffs Harrison, Kaffishahsavar and Jaco

**MARLIN & SALTZMAN LLP**
Stanley D. Saltzman
Tatiana G. Avakian

Attorneys for Plaintiff Mendoza

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for himself and the Class members on all claims so triable.

DATED:  May 27, 2021                    **THE MARKHAM LAW FIRM**


By:  _____*/s/ David R. Markham*
            David R. Markham
            Maggie Realin
            Lisa Brevard


**QUINTILONE & ASSOCIATES**
Richard E. Quintilone II
Jeffrey T. Green

**UNITED EMPLOYEES LAW GROUP**
Walter Haines

Attorneys for Plaintiffs Harrison, Kaffishahsavar and Jaco

**MARLIN & SALTZMAN LLP**
Stanley D. Saltzman
Tatiana G. Avakian

Attorneys for Plaintiff Mendoza

CONSOLIDATED CLASS ACTION COMPLAINT

Exhibit A

# THE MARKHAM LAW FIRM

• 750 B Street, Suite 1950 • San Diego, California 92101 •
•Phone: (619) 399-3995• Fax: (619) 615-2067•
•EMAIL: CONTACT@MARKHAM-LAW.COM

October 17, 2018

**<u>Via Online Filing:</u>**
Labor and Workforce Development Agency
Attn. PAGA Administrator
1515 Clay Street, Ste. 801
Oakland, California 94612

Re:     Wage/Hour Claims of Andrea Harrison ("Employee"), on behalf of herself and other aggrieved employees in California against Bank of America ("Bank of America" or "Employer")

**NOTICE OF LABOR CODE VIOLATIONS PURSUANT TO LABOR CODE § 2699.3**

To:     PAGA Administrator, California Labor and Workforce Development Agency ("LWDA")

From:  Andrea Harrison ("Employee"), on behalf of herself and other aggrieved employees in California, who was subjected to the wage and hour practices as set forth below

Pursuant to California <u>Labor Code</u> § 2699.3, this letter is intended to provide written notice of intent to file a representative civil action by an aggrieved employee pursuant to subdivisions (a) and (f) of California <u>Labor Code</u> § 2699.  The aggrieved employee is Andrea Harrison.  The provisions of the California <u>Labor Code</u> that have been violated, including the facts and theories to support the alleged violation, are set forth below. For a more detailed explanation, see **Attachment A.**

Ms. Harrison is a resident of the State of California.  During the applicable time period, Ms. Harrison was employed in California by Bank of America as a Financial Center Client Service Representative, or Teller, ("Teller") at Defendant's financial center in Auburn, California.

Bank of America employs numerous employees in the State of California.  During the relevant time period, the Employer utilized consistent policies and procedures regarding the Employee and others similarly situated, in violation of <u>Labor Code</u> §§ 201-203, 226(a), 226.7, 510. 512, 1194, 1197 and 1198, et seq. as follows:

First, Employer required Employee and other similarly situated Tellers to be at their work stations ready to take their customer at their scheduled shift start time.  This requires Tellers to

1

bootup and log on to Employer's computers and then open and load multiple programs, before one of the programs starts Employee payroll clock. This process takes approximately 15 to 20 minutes each day before the Employee is clocked in to the Employer's timekeeping system. Further, Employer required Employee and other similarly situated Tellers to log out at the end of their shifts and close all of the programs and shut down the computers, which took another 15 to 20 minutes each day. As such, in violation of <u>Labor Code</u> §§ 510(a), 1194, 1197 and 1998 and the applicable Industrial Wage Orders, the Employer, by failing to pay the Employee and all others similarly situated for all hours worked, failed to pay all straight time, minimum wages, overtime and double-time wages due.

Second, Employer's policies and procedures caused Employee and other aggrieved employees to delay their meal breaks past the fifth hour after the start of the employee shift, in order to assist customers. If the customer transaction encroached upon Employee's scheduled meal time, Employee had to assist the customer and conclude the transaction before Employee was able to take a meal break. This caused Employee to miss or delay her meal breaks beyond the end of the fifth hour, in violation of <u>Labor Code</u>. Further, Employee was frequently interrupted during her meal break and required to return to work to assist customers, even though her meal break did not last the mandatory minimum 30 minutes. This violates <u>Labor Code</u> § 512(a), which provides that: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of at least 30 minutes…" Employee and other aggrieved employees were not were not paid meal break premiums for those late meal periods, in violation of <u>Labor Code</u> § 226.7(c).

Further, often, Employee was not allowed to take her rest breaks as provided by <u>Labor Code</u> § 226.7 and the applicable Wage Order, because she was required to assist customers. This caused her to forego one or more of her rest breaks. Employee and other aggrieved employees were not paid rest break premiums for those non-complaint rest breaks, in violation of <u>Labor Code</u> § 226.7(c).

Further, California <u>Labor Code</u> § 226(a) provides that every employer is required to furnish each employee with accurate itemized statements in writing showing, in part, "gross wages earned," (<u>Labor Code</u> § 226(a)(1)), "net wages earned" (<u>Labor Code</u> § 226(a)(5)), and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee…" (<u>Labor Code</u> § 226(a)(9)). Here, because the Employer failed to pay for all regular and/or overtime hours worked at the appropriate straight time, overtime and/or double-time rate, and failed to pay meal and rest break premiums, improper paystubs were issued to Employee and other aggrieved employees, and the Employee alleges that the Employer has violated <u>Labor Code</u> § 226(a).

Further, Employer failed to pay all aggrieved employees, whose employment with Bank of America terminated within the applicable time period, all their earned wages, specifically meal and rest period premiums not paid for missed or interrupted meal and rest periods, and wages for all hours worked, including overtime, either at the time of discharge or within seventy-two hours of their leaving Employer's employ, in violation of California <u>Labor Code</u> § 201, 202, and 203. To the extent allowed by law, Employee seeks wages as penalties pursuant to <u>Labor Code</u> § 558 and expressly preserves Employee's right to do so.

2

Ms. Harrison, as an aggrieved employee and on behalf of herself and all other current or former Bank of America employees, seeks all penalties or remedies as may be allowed under PAGA, and by this letter gives written notice of her PAGA claim pursuant to Labor Code § 2699.3. Please advise within sixty-five (60) calendar days of the postmark date of this Notice whether the LWDA intends to investigate the violations alleged above.  We understand that if we do not receive a response within sixty-five (65) calendar days of the postmark date of this Notice that the LWDA intends to investigate these allegations, the aggrieved Employee may immediately thereafter commence a civil action against the Employer pursuant to Labor Code § 2699. Any further claims are included in the enclosed Class Action Complaint.

Ms. Harrison is represented in this matter by The Markham Law Firm, Quintilone & Associates, and the United Employees Law Group.

Very truly yours,

THE MARKHAM LAW FIRM

David R. Markham
Maggie K. Realin
Michael J. Morphew

**cc: (via Certified Mail)**
Bank of America, National Association
Legal Department
150 North College Street, NC1-028-17-06
Charlotte, NC 28255

CT Corporation System, Agent for Service of
Process for Bank of America, National
Association
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

# Attachment A

David R. Markham (SBN 071814)
dmarkham@markham-law.com
Maggie Realin (SBN 263639)
mrealin@markham-law.com
Michael J. Morphew (SBN 304463)
mmorphew@markham-law.com
**THE MARKHAM LAW FIRM**
750 B Street, Suite 1950
San Diego, California 92101
Telephone: (619) 399-3995
Facsimile: (619) 615-2067

Richard E. Quintilone II (SBN 200995)
req@quintlaw.com
George A. Aloupas Esq. (SBN 313112)
**QUINTILONE & ASSOCIATES**
22974 El Toro Road, Suite 100
Lake Forest, CA 92630-4961
Telephone No. (949) 458-9675
Facsimile No. (949) 458-9679

Attorneys for Plaintiff on behalf of herself and all others similarly situated
*[Additional Counsel on Signature Page]*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | |
|---|---|
| ANDREA HARRISON, an individual, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., a business entity, form unknown; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) **FAILURE TO PAY REGULAR AND MINIMUM WAGES;**<br>(2) **FAILURE TO PAY OVERTIME COMPENSATION;**<br>(3) **FAILURE TO PROVIDE MEAL PERIODS;**<br>(4) **FAILURE TO PROVIDE REST PERIODS;**<br>(5) **FAILURE TO FURNISH TIMELY AND ACCURATE WAGE STATEMENTS;**<br>(6) **FAILURE TO PAY ALL WAGES DUE UPON TERMINATION;**<br>(7) **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), Bus. & Prof. Code § 17200 et seq.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ANDREA HARRISON ("Plaintiff"), by and through her attorneys of record, brings this Class Action Complaint against Defendant BANK OF AMERICA, N.A. ("Bank of America" or "Defendant"), and respectfully alleges the following:

## NATURE OF THE ACTION

1.      This is a class action for wage and labor violations arising out of Defendant's failure to pay wages for all time worked and failure to provide timely and uninterrupted meal and rest periods, and for derivative claims.

2.      As more fully set forth below, Defendant failed to pay its employees straight and overtime wages for time they worked loading programs before their shift and closing programs after their shift; failed to provide timely and uninterrupted meal and rest periods to its California non-exempt employees in violation of California Labor Code sections 512 and 226.7, and the applicable Industrial Wage Order; failed to pay its employees one hour of pay at the regular rate of compensation for each instance that Defendant failed to provide statutorily mandated rest periods and timely off-duty meal periods; failed to furnish timely and accurate wage statements; failed to pay all wages due upon termination; and, is in violation of California's Unfair Competition Law ("UCL").

3.      Plaintiff seeks to represent and prosecute claims against Defendant in class action proceedings on behalf of all those similarly situated who are or were residents of the State of California.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action because this is a civil action where the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court. The acts and omissions complained of in this action took place in the State of California. Venue is proper because upon information and belief, Defendant has a regional office in this county, conducts substantial business in this county and maintains financial centers in California in this county.

CLASS ACTION COMPLAINT

## PARTIES

5.      Plaintiff ANDREA HARRISON is a resident of Colfax, California. Plaintiff was employed by Defendant at Defendant's branch in Auburn, California, from approximately 2006 to approximately June 15, 2018, as a Financial Center Client Service Representative, or Teller ("Teller").

6.      At all times material herein, Defendant was a corporation registered to do business in California, including but not limited to conducting business within the County of San Francisco, with its corporate headquarters located in Charlotte, North Carolina.  Defendant is in the Bank & Financial Holding industry.  On information and belief, Defendant performs consumer and financial banking services, including operating financial centers.  At all relevant times alleged herein, Plaintiff is informed and believes that Defendant is authorized to and conducts business in California, including but not necessarily limited to County of San Francisco.  Defendant employed Plaintiff at its Auburn, California, Financial Center, and employ/employed other Tellers throughout California.

7.      Plaintiff is currently unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under fictitious names Does 1 through 10, inclusive, and therefore sue such defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by the Class.

8.      Plaintiff is informed and believes and thereon alleges that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, partners and/or joint ventures and/or employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants.

CLASS ACTION COMPLAINT

1

**FACTS**

2        9.        Between approximately 2006 and June 15, 2018, Plaintiff was employed by

3    Defendant, as a non-exempt, hourly-paid Teller at Defendant's branch in Auburn, California.

4    Plaintiff's duties included assisting Defendant's customers, sales of Defendant's products and

5    services, and processing transactions like deposits and check cashing, among other duties.  In order

6    to perform her work duties and begin assisting customers at the start of her shift, Plaintiff needed to

7    load certain programs such as Marlin and Defendant's Timekeeping program, among other

8    programs. Starting up the computer and loading these programs took approximately 15 to 20

9    minutes each day before the start of her shift. Plaintiff was unable to clock in until the scheduled

10    start of her shift. When Plaintiff inquired of her supervisors about being paid for the time spent

11    loading the programs, she was told that Bank of America does have control over the computer

12    systems loading and does not pay for that time. Plaintiff was never paid for this time either straight-

13    time or overtime wages.

14        10.        Plaintiff and other class members were not paid for this time, even though: (1) no

15    practical administrative difficulty of recording the additional time exists or existed for Defendant

16    during the relevant time period; (2) it is or was feasible for Defendant to determine or estimate the

17    average time it takes each employee to complete his or her pre-shift start-up sequence, as all class

18    members at issue in this action needed the same computer programs/applications in order to

19    perform their work duties.  *See also Troester v. Starbucks Corp*., (2018) 5 Cal.5th 829.

20        11.        Further, at the end of her shift, Plaintiff was required to clock out. She was then

21    required to close all the programs and shut down the computer. This process took another 15 to 20

22    minutes each day and was unpaid.

23        12.        Upon information and belief, the financial centers were constantly busy and short

24    staffed. Often, Plaintiff was at the teller window with a customer when her scheduled meal period

25    arrived. Plaintiff was told by supervisors to take her meal period while remaining at the teller

26    window. Plaintiff was told by her supervisors to input her meal period at the end of the day, even

27    though she did not receive one.  When Plaintiff complained to her supervisors about working

28    through her meal and rest breaks, she was told that it was what was needed due to the financial

center being short staffed and there was nothing that could be done.

13.    Additionally, when Plaintiff took her meal period in the upstairs employee break room, she was not allowed to take her full uninterrupted 30-minute meal period. Plaintiff's supervisors would frequently come and get her because customers needed to be assisted. Plaintiff was never paid a meal period premium for those late or interrupted meal periods.

14.    Often, when Plaintiff's scheduled rest periods arrived, she was not allowed to take her breaks, because the financial center was too busy and there was not enough staff to cover the teller windows. Plaintiff was never paid a premium for those missed rest periods.

15.    Upon information and belief, the above-mentioned unlawful employment practices by Defendant was applied the same to all Tellers in all financial centers in the State of California.

16.    Defendant's conduct, as alleged here, has caused Plaintiff and class members damages including, but not limited to, loss of wages and compensation. Defendant is liable to Plaintiff and the class for failing to pay meal and rest break premiums, failing to pay all straight-time and overtime wages owed for each pay period, failing to provide timely and accurate wage statements, failing to pay all wages due upon termination, and unfair competition.

17.    Plaintiff is a member of, and seeks to be a representative for, the class of similarly situated employees who all have been exposed to, have suffered, and/or were permitted to work under Defendant's unlawful employment practices as alleged herein.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

18.    Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated, and as a member of the Class she seeks to represent. The class period is from four years prior to the filing of the Complaint in this action until the trial of this action ("class period.") The Class is defined as:

> *All current and former non-exempt employees of Defendant, employed in California, who, during the time period commencing four years before this complaint was filed, and until the present ("class period"), worked at any of Defendant's banks as a Teller or a position with similar duties and/or job titles.*

19.    Plaintiff further seeks to represent the following subclasses:

**The Meal Break Subclass**

CLASS ACTION COMPLAINT

"All current and former non-exempt employees of Defendant, employed in California, who, during the time period commencing four years before this complaint was filed, and until the present ("class period"), worked at any of Defendant's banks as a Teller or a position with similar duties and/or job titles, and who worked at least one shift longer than five hours in a workday."

**The Rest Break Subclass**

"All current and former non-exempt employees of Defendant, employed in California, who, during the time period commencing four years before this complaint was filed, and until the present ("class period"), worked at any of Defendant's banks as a Teller or a position with similar duties and/or job titles, and who worked at least one shift longer than three and a half hour in a workday."

**The Regular Wage Subclass**

"All current and former non-exempt employees of Defendant, employed in California, who, during the time period commencing four years before this complaint was filed, and until the present ("class period"), worked at any of Defendant's banks as a Teller, or a position with similar duties and/or job titles, and who worked at least one shift less than eight hours in a workday and/or worked less than 40 hours during the workweek."

**The Overtime Subclass**:
"All current and former non-exempt employees of Defendant, employed in California, who, during the time period commencing four years before this complaint was filed, and until the present ("class period"), worked at any of Defendant's banks as a Teller, or a position with similar duties and/or job titles, and who worked at least one shift longer than eight hours in a workday and/or worked more than 40 hours during the workweek."

**The Itemized Wage Statement Subclass**
"All current and former non-exempt employees of Defendant, employed in California, who, during the time period commencing four years before this complaint was filed, and until the present ("class period"), worked at any of Defendant's banks as a Teller, or a position with similar duties and/or job titles, and who have received at least one wage statement from Respondent."

**The Waiting Time Penalties Subclass**

"All members of the Class, the Unpaid Wages Subclass, Overtime Subclass, Meal Break Subclass, and the Rest Break Subclass who separated employment with Defendant at any point during the past three (3) years prior to the filing of this action."

20.    Plaintiff reserves the right to amend or otherwise alter the class definition, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments

CLASS ACTION COMPLAINT

1  advanced by Defendant or otherwise.

2      21.    This action has been brought and may be properly maintained as a class action

3  pursuant to the provisions of Code of Civil Procedure § 382 ("§ 382") and other applicable law.

4      22.    **Numerosity of the Class**:  Pursuant to § 382, members of the Class are so

5  numerous that their individual joinder is impracticable. Plaintiff estimates, on information and

6  belief, that there are several hundred or several thousand current and former non-exempt

7  employees of Defendant employed in financial centers in California during the class period.  The

8  precise number of Class members and their addresses are known to Plaintiff or will be known to

9  Plaintiff through discovery. Class members may be notified of the pendency of this action by mail,

10 electronic mail, the Internet, or published notice.

11     23.    **Existence of Predominance of Common Questions of Law and Fact**:  Pursuant

12 to § 382, common questions of law and fact exist as to all members of the Class. These questions

13 predominate over any questions affecting only individual Class members. These common legal and

14 factual questions include:

15     a.  Whether Defendant had a policy or practice of not paying for time spent loading

16         programs and closing programs;

17     b.  Whether Defendant had a policy or practice of not paying meal or rest period premiums;

18     c.  Whether Defendant violated Labor Code section 226.7 and/or section 512 and engaged

19         in a pattern or practice of failing to provide timely, off-duty thirty (30) minute meal

20         periods to Plaintiff and members of the class;

21     d.  Whether Defendant engaged in a pattern or practice of impeding Plaintiff and the

22         members of the class from taking statutory off-duty thirty (30) minute meal periods on a

23         timely basis;

24     e.  Whether Defendant engaged in a pattern or practice of failing to properly compensate

25         Plaintiff and the members of the class for missed, untimely or on-duty meal periods as

26         required by California law;

27     f.  Whether Defendant violated the applicable California Industrial Welfare Commission

28         ("IWC") Order by failing to provide Plaintiff and the members of the class with timely

6

CLASS ACTION COMPLAINT

1      off-duty thirty (30) minute meal periods;

2      g.   Whether Defendant engaged in unfair practices and violated California Business and

3           Professions Code section 17200 by failing to provide Plaintiff and the members of the

4           class with their statutory off-duty meal and rest periods on a timely basis;

5      h.   Whether Defendant engaged in unfair practices and violated California Business and

6           Professions Code section 17200 by failing to pay Plaintiff and the members of the class

7           for all time worked;

8      i.   Whether Defendant maintained accurate time records of off-duty thirty (30) minute meal

9           breaks taken by Plaintiff and members of the class in accordance with the applicable

10          IWC Wage Order;

11     j.   Whether Defendant violated Labor Code section 226(a) by issuing inaccurate itemized

12          wage statements to Plaintiff and members of the class that failed to include payments for

13          missed, untimely, and/or on-duty meal periods among wages earned throughout the

14          Class period;

15     k.   Whether Defendant violated Labor Code section 226(a) by issuing inaccurate itemized

16          wage statements to Plaintiff and members of the class that failed to include payment for

17          all hours worked;

18     l.   Whether Defendant violated Labor Code section 226(a) by issuing inaccurate itemized

19          wage statements to Plaintiff and members of the class that failed to accurately state the

20          total hours worked, to the detriment of Plaintiff and the class;

21     m.   Whether Defendant failed to compensate, and therefore violated Labor Code section

22          226.7 and the applicable Wage Order by failing to provide ten (10) minute,

23          uninterrupted rest periods as contemplated by California law for work periods in

24          excess of three and one-half (3 ½) hours;

25     n.   Whether Defendant engaged in a pattern or practice of failing to properly compensate

26          Plaintiff and the members of the class for failing to provide ten (10) minute,

27          uninterrupted rest periods as contemplated by California law for work periods

28          in excess of three and one-half (3 ½) hours;

o.  Whether Defendant violated Labor Code section 1197 due to failure to compensate Plaintiff and members of the class for those acts Defendant required Plaintiff and members of the class to perform for the benefit of Defendant;

p.  Whether Defendant violated Labor Code § 201-203 by failing to pay all wages due upon termination to all Class members who were terminated or voluntarily quit; and

q.  The nature and extent of class-wide injury and the measure of damages or restitution for the injury.

24.    **Typicality:**  Plaintiff's claims are typical of the claims of the members of the class she seeks to represent because Plaintiff, as a non-exempt employee of Defendant, was exposed and subjected to the same unlawful business practices as other employees employed by Defendant during the class period. Plaintiff and the members of the class she seeks to represent sustained the same types of damages and losses.

25.    **Adequacy:**  Plaintiff is an adequate representative of the class she seeks to represent because her interests do not conflict with the interests of the members of the class Plaintiff seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to prosecute this action vigorously. The interests of the members of the class will be fairly and adequately protected by Plaintiff and her counsel.

26.    **Superiority and Substantial Benefit:**  The class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and the Class members' claims. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the Class members to redress the wrongs done to them on an individual basis. Even if members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties and the court system due to the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

27.     The Class should also be certified because:

a.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

b.  The prosecution of separate actions by individual members of the Class would create a risk of adjudication with respect to them, which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.  Defendant has acted or refused to act on grounds generally applicable to the Class, and/or the general public, thereby making appropriate final and injunctive relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**FAILURE TO PAY REGULAR AND MINIMUM WAGES**
**(Violation of Labor Code § 1197, 1198, and IWC Wage Order No. 4-2001)**
**(Against all defendants)**

28.     Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

29.     Labor Code section 1197 provides, "the minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

30.     Labor Code section 1198 states "The maximum hours of work and the standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees. The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

31.     IWC Wage Order 4-2001 Section 4 provides that an employer may not pay employees less than the applicable minimum wage for all hours worked.

32.     Pursuant to the IWC Wage Order, Defendant is required to pay Plaintiff, and the members of the Class, for all hours worked, meaning the time which an employee is subject to the control of the employer.

33.    At all relevant times during the class period, Defendant failed to pay Plaintiff and other members of the class wages for all hours worked, in that Plaintiff and the class were required to boot up their computer and load several programs to begin their shifts, and they were not paid for this time.  Similarly, after their shift ended, Plaintiff and the Class had to clock out from the time program, log off of all the programs, and shut down the computer.  Plaintiff and the Class were not paid for this time.

34.    In relevant part, Labor Code section 1194 provides that any employee receiving less than minimum wage applicable to the employee is entitled to recover in a civil action the unpaid balance of the amount of this minimum wage, including interest thereon, reasonable attorney's fees, and cost of suit, which Plaintiff and other members of the class seek.

35.    Pursuant to Labor Code section 1194.2, liquidated damages are available to employees who file an action under Labor Code section 1194, which Plaintiff and members of the class seek.

36.    In committing the violations of state law as herein alleged, Defendant has knowingly and willfully refused to perform their obligations to compensate Plaintiff and members of the class for all wages earned and all hours worked at least minimum wage.  As a direct result, Plaintiff and other members of the class have suffered and continue to suffer, substantial losses related to the use and enjoyment of such compensation, wages and lost interest on such monies and expenses and attorney's fees in seeking to compel Defendant to fully perform their obligation under state law, all to their respective damage in amounts according to proof at trial and within the jurisdiction of this Court.

37.    Plaintiff seeks to recover in a civil action the unpaid balance of the full amount of the unpaid wages resulting from Defendant's minimum wage violations including interest thereon, reasonable attorney's fees and costs of suit, and liquidated damages to the fullest extent permissible pursuant to Labor Code sections 1194 and 1194.2.

**SECOND CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME COMPENSATION**
**(Violation of Labor Code § 510)**
**(Against all defendants)**

38.     Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

39.     Labor Code §510 and the applicable Wage Order provide that employees in California shall not be employed more than eight hours in any workday or forty hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.  Specifically, Labor Code §510(a) requires that:

> Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

40.     Labor Code section 1194 establishes an employee's right to recover unpaid overtime compensation, and interest thereon, together with the costs of suit, and attorneys' fees. Labor Code section 1198 makes employment of an employee for longer hours than the IWC set or under conditions the IWC prohibits is unlawful.

41.     At all times relevant hereto, Plaintiff and other members of the class, have worked more than eight hours in a workday, and/or more than forty hours in a workweek.

42.     At all times relevant hereto, Defendant has failed to pay Plaintiff, and the other members of the class, the overtime compensation premium for those unpaid hours they have worked in excess of the maximum hours permissible by law as required by Labor Code sections 510 and 1198, and the applicable Wage Order.

43.     By virtue of Defendant's unlawful failure to pay the lawful overtime rate of compensation to the Plaintiff, and the other members of the class, Plaintiff and the other members of the class, have suffered, and will continue to suffer, damages in amounts which are presently unknown to them, but which exceed the jurisdictional limits of this Court and will be ascertained according to proof at trial.

44.     Defendant acted and is acting intentionally and oppressively toward Plaintiff, and the other members of the class, with a conscious disregard of their rights, or the consequences to them, with the intent of depriving them of property and legal rights and otherwise causing them

1    injury. Defendant failed to pay Plaintiff and other members of the class for all hours worked

2    including the time spent loading programs before their shift, closing the programs after their shifts,

3    and the time when the requirement to load necessary programs encroached on Plaintiff and other

4    class members' meal breaks.  To the extent this time worked exceeded eight hours in a day and/or

5    forty hours in a week, Plaintiff and class members are entitled to overtime wages.

6         45.     Plaintiff, and the other members of the class, request recovery of overtime

7    compensation according to proof, interest, attorneys' fees, expenses, and costs pursuant to Labor

8    Code §1194(a), and Civil Code §§3287(b) and 3289, as well as the assessment of any statutory

9    penalties against Defendant, in a sum as provided by the Labor Code, the applicable Wage Order,

10    and/or other statutes.

**THIRD CAUSE OF ACTION**
**FAILURE TO PROVIDE MEAL PERIODS**
**(Violation of Labor Code §§ 512, 226.7, and the applicable Wage Order)**
**(Against all defendants)**

11

12

13         46.     Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth

14    herein.

15         47.     California Labor Code § 226.7(b) provides, "An employer shall not require an

16    employee to work during a meal or rest period mandated pursuant to an applicable order of the

17    Industrial Welfare Commission".

18         48.     IWC Order No. 4-2001(11)(A) provides, in pertinent part: "[n]o employer shall

19    employ any person for a work period of more than five (5) hours without a meal period of not less

20    than 30 minutes, except that when a work period of not more than six (6) hours will complete the

21    day's work the meal period may be waived by mutual consent of the employer and the employee."

22         49.     Section 512(a) of the California Labor Code provides, in pertinent part: "[a]n

23    employer may not employ an employee for a work period of more than five hours per day without

24    providing the employee with a meal period of not less than 30 minutes, except that if the total work

25    period per day of the employee is no more than six hours, the meal period may be waived by

26    mutual consent of both the employer and employee. An employer may not employ an employee for

27    a work period of more than 10 hours per day without providing the employee with a second meal

28

period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

50.     As alleged herein, Defendant failed to authorize and permit timely and uninterrupted meal periods during the Class period. Plaintiff and members of the class were routinely required to work without a timely and uninterrupted meal break at the direction of Defendant and/or with Defendant's knowledge and acquiescence.

51.     By its actions in requiring its employees to work through meal periods and/or its failure to relieve the employees of their duties for their off-duty meal periods, Defendant has violated California Labor Code §§ 226.7, 512 and § 11 of IWC Wage Order No. 4-2001, and is liable to Plaintiff and the class.

52.     As a result of the unlawful acts of Defendant, Plaintiff and the class have been deprived of timely off-duty meal periods, and are entitled to recovery under Labor Code §§ 226.7(c), 512 and § 11 of IWC Wage Order No. 4-2001, in the amount of one additional hour of pay at the employee's regular rate of compensation for each workday in which Defendant failed to provide its employees with timely statutory off-duty meal periods.

53.     Plaintiff, and the other members of the class, are entitled to seek and recover reasonable attorneys' fees and costs pursuant to Labor Code sections 226.7 and 512.

**FOURTH CAUSE OF ACTION**
**FAILURE TO PROVIDE REST PERIODS**
**(Violation of Labor Code §§ 226.7 and the applicable Wage Order)**
**(Against all defendants)**

54.     Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

55.     California Labor Code § 226.7(b) provides, "An employer shall not require an employee to work during a meal or rest period mandated pursuant to an applicable order of the Industrial Welfare Commission".

56.     IWC Order No. 4-2001(12)(A) provides, in pertinent part: "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the

1   middle of each work period. The authorized rest period time shall be based on the total hours

2   worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction

3   thereof. However, a rest period need not be authorized for employees whose total daily work time

4   is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours

5   worked for which there shall be no deduction from wages".

6        57.    IWC Order No. 4-2001(12)(B) further provides: "[i]f an employer fails to provide

7   an employee with a rest period in accordance with the applicable provisions of this order, the

8   employer shall pay the employee one (1) hour of pay at the employee's regular rate of

9   compensation for each workday that the rest period is not provided".

10       58.    As alleged herein, Defendant failed to authorize and permit rest breaks during the

11  Class period. Plaintiff and members of the class were routinely required to work through rest

12  periods at the direction of Defendant and/or with Defendant's knowledge and acquiescence.

13       59.    By its actions in requiring its employees during the class period to work through rest

14  periods and/or its failure to relieve the employees of their duties for their rest periods, Defendant

15  violated § 12 of IWC Wage Order No. 4-2001 and California Labor Code § 226.7 and is liable to

16  Plaintiff and the class.

17       60.    Defendant's unlawful conduct alleged herein occurred in the course of employment

18  of Plaintiff and all others similarly situated and such conduct has continued through the filing of

19  this complaint.

20       61.    As a direct and proximate result of Defendant's unlawful action, Plaintiff and the

21  class have been deprived of timely rest periods and/or were not paid for rest periods taken during

22  the Class period, and are entitled to recovery under Labor Code § 226.7(c) in the amount of one

23  additional hour of pay at the employee's regular rate of compensation for each workday in which

24  Defendant failed to provide employees with timely and/or paid rest periods.

25       62.    Plaintiff, and the other members of the class, are entitled to seek and recover

26  reasonable attorneys' fees and costs pursuant to Labor Code sections 226.7.

27

28

CLASS ACTION COMPLAINT

**FIFTH CAUSE OF ACTION**
**FAILURE TO FURNISH TIMELY AND ACCURATE WAGE STATEMENTS**
**(Violation of Labor Code §226)**
**(Against all defendants)**

63.     Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

64.     California Labor Code § 226(a) provides: "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee […], (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, […], (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee…".

65.     Labor Code § 226(e) provides that an employee is entitled to recover $50 for the initial pay period in which a violation of § 226 occurs and $100 for each subsequent pay period, for all pay periods in which the employer knowingly and intentionally failed to provide accurate itemized statements to the employee causing the employee to suffer injury.

66.     Plaintiff is  informed, believes and thereon alleges that at all times relevant, Defendant knowingly and intentionally failed to furnish and continues to knowingly and intentionally fail to furnish Plaintiff and each Class member with timely and accurate itemized statements showing the gross wages earned by each of them, as required by Labor Code § 226(a), in that the premiums owed to Plaintiff and the members of the Class for untimely or interrupted meal and rest periods were not included in gross wages earned by Plaintiff and the Class.

67.     Further, wages owed to Plaintiff and members of the class for hours they worked

1  before their shift and after their shift, and the time worked through meal breaks, were not included

2  in gross wages earned by Plaintiff and the Class.

3       68.    Defendant's failure to provide Plaintiff and members of the Class with accurate

4  itemized wage statements during the Class period has caused Plaintiff and members of the Class to

5  incur economic damages in that they were not aware that they were owed and not paid

6  compensation for missed rest periods and on-duty meal periods, and for all hours worked. In

7  addition, Defendant provided inaccurate information regarding hours worked, which masked its

8  underpayment of wages to Plaintiff and the Class.

9       69.    As a result of Defendant's issuance of inaccurate itemized wage statements to

10  Plaintiff and members of the Class in violation of Labor Code § 226(a), Plaintiff and the members

11  of the Class are each entitled to recover penalties pursuant to § 226(e) of the Labor Code.

**SIXTH CAUSE OF ACTION**
**FAILURE TO PAY ALL WAGES DUE UPON TERMINATION**
**(Violation of Labor Code §§ 201-203)**
**(Against all defendants)**

14       70.    Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth

15  herein.

16       71.    California Labor Code §§ 201-203 provide that if an employer discharges an

17  employee, the wages earned and unpaid at the time of discharge are due and payable immediately,

18  and that if an employee voluntarily leaves his or her employment, his or her wages shall become

19  due and payable not later than seventy-two hours thereafter, unless the employee has given

20  seventy-two hours prior notice of his or her intention to quit in which case the employee is entitled

21  to his or her wages at the time of quitting.

22       72.    During the Class period, Defendant willfully failed to pay Class members who are

23  no longer employed by Defendant all their earned wages, specifically, meal and rest period

24  premiums not paid for missed or interrupted meal and rest periods, and wages for all hours worked,

25  including overtime, either at the time of discharge or within seventy-two hours of their leaving

26  Defendant's employ in violation of California Labor Code sections 201, 202, and 203.

27       73.    Therefore, Plaintiff and members of the Class are entitled to waiting time penalties

1    for each day that has passed that they have not received all wages owed to them, up to 30 days.

2    **SEVENTH CAUSE OF ACTION**
     **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**

3    **(Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq*.)**
     **(Against all defendants)**

4    74.    Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth

5    herein.

6    75.    Section 17200 of the California Business and Professions Code (the "UCL")

7    prohibits any unlawful, unfair, or fraudulent business practices.

8    76.    Through its action alleged herein, Defendant has engaged in unfair competition

9    within the meaning of the UCL. Defendant's conduct, as alleged herein, constitutes unlawful,

10   unfair, and/or fraudulent business practices under the UCL.

11   77.    Defendant's unlawful conduct under the UCL includes, but is not limited to,

12   violating the statutes alleged herein. Defendant's unfair conduct under the UCL includes, but is not

13   limited to, failure to pay Class members wages and compensation they earned through labor

14   provided, and failing to otherwise compensate Class members as alleged herein. Defendant's

15   fraudulent conduct includes, but is not limited to, issuing wage statements containing false and/or

16   misleading information about the time the Class members worked and the amount of wages or

17   compensation due.

18   78.    Plaintiff has standing to assert this claim because she has suffered injury in fact and

19   has lost money as a result of Defendant's conduct.

20   79.    Plaintiff and the Class seek restitutionary disgorgement from Defendant of monies

21   owed for all hours worked and for unpaid meal and rest period premiums.

22   80.    Plaintiff has assumed the responsibility of enforcement of the laws and public

23   policies specified here by suing on behalf of themselves and other similarly situated Class members

24   previously or presently working for Defendant in California.  Plaintiff's success in this action will

25   enforce important rights affecting the public interest.  Plaintiff will incur a financial burden in

26   pursuing this action in the public interest.  Therefore, an award of reasonable attorneys' fees to

27   Plaintiff is appropriate pursuant to Code of Civil Procedure section 1021.5.

28

CLASS ACTION COMPLAINT

**PRAYER**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as follows:

**ON THE FIRST CAUSE OF ACTION**

1. For all straight-time and overtime wages owed to Plaintiff and each Class Member for all hours worked;

2. For other compensatory damages and/or statutory damages and statutory penalties resulting from improper compensation according to proof;

3. For statutory attorney fees according to proof;

4. For statutory interest according to proof; and

5. For reasonable attorneys' fees and costs pursuant to the California <u>Labor Code</u>.

**ON THE SECOND CAUSE OF ACTION**

1. For all overtime compensation owed to Plaintiff and each Class Member for all hours worked according to proof;

2. For interest on any compensatory damages;

3. For attorneys' fees, expenses, and costs pursuant to Labor Code §1194(a), and Civil Code §§3287(b) and 3289;

4. For any statutory penalties against Defendant, in a sum as provided by the Labor Code, the applicable Wage Order, and/or other statutes.

**ON THE THIRD CAUSE OF ACTION**

1. For one hour of wages due to Plaintiff and each Class member for each work period of more than five (5) hours when they did not receive an uninterrupted thirty (30) minute meal period;

2. For waiting time penalties according to proof;

3. For statutory costs according to proof; and

4. For statutory interest according to proof.

**ON THE FOURTH CAUSE OF ACTION**

1. For one hour of wages due to Plaintiff and each Class member for each work period of

CLASS ACTION COMPLAINT

more than three and one-half (3 ½) hours when they did not receive an uninterrupted ten (10) minute rest period for each four (4) hours or major fraction thereof worked;

2. For waiting penalties according to proof;

3. For statutory costs according to proof; and

4. For statutory interest according to proof.

**ON THE FIFTH CAUSE OF ACTION**

1. For statutory compensation for any harm caused;

2. For compensatory damages and interest thereon for actual harm caused; and

3. For statutory penalties under Labor Code § 226(e), interest and attorneys' fees and costs.

**ON THE SIXTH CAUSE OF ACTION**

1. For statutory penalties, including thirty (30) days' wages at the correct hourly rate for all wages not timely paid upon termination;

2. For penalty enhancement for willful conduct;

3. For statutory interest according to proof; and

4. For reasonable attorney's fees and costs pursuant to the Labor Code.

**ON THE SEVENTH CAUSE OF ACTION**

1. For the equitable, injunctive and declaratory relief;

2. For liquidated damages pursuant to Labor Code § 1194.1; and

3. For restitutionary disgorgement pursuant to the UCL.

**ON ALL CAUSES OF ACTION**

1. An order that this action may proceed and be maintained as a class action;

2. Reasonable attorney's fees;

3. General, special and consequential damages, to the extent allowed by law;

4. Costs of suit;

5. For attorneys' fees pursuant to Code of Civil Procedure §1021.5;

6. Prejudgment interest at the maximum legal rate; and

7. Such other relief as the Court may deem just and proper.

CLASS ACTION COMPLAINT

DATED: October ___, 2018                      **THE MARKHAM LAW FIRM**

By: _____
                                                David R. Markham
                                                Maggie Realin
                                                Michael Morphew
                                                *Attorneys for Plaintiff and all others*
                                                *similarly situated*

DATED: October ___, 2018                      **QUINTILONE & ASSOCIATES**

By: _____
                                                 Richard E. Quintilone
                                                George A. Aloupas
                                                *Attorneys for Plaintiff*
                                                *and all others similarly situated*

In association with:

Walter Haines (SBN 071075)
*walterhaines@yahoo.com*
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (888) 474-7242
Facsimile: (562) 256-1006

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for herself and the Class members on all claims so triable.

DATED: October ___, 2018                      **THE MARKHAM LAW FIRM**

By: _____
                                                David R. Markham
                                                Maggie Realin
                                                Michael Morphew
                                                *Attorneys for Plaintiff*
                                                *and all others similarly situated*

DATED: October ___, 2018                      **QUINTILONE & ASSOCIATES**

By: _____
                                                Richard E. Quintilone
                                                George A. Aloupas
                                                *Attorneys for Plaintiff*
                                                *and all others similarly situated*

CLASS ACTION COMPLAINT

Exhibit B

# MARLIN & SALTZMAN

CLASS ACTIONS, MASS TORTS & CATASTROPHIC INJURIES

Bradley R. Fagnani
bfagnani@marlinsaltzman.com

Stanley D. Saltzman
Alan S. Lazar

William A. Baird
Bradley R. Fagnani
Cody R. Kennedy
Stephen P. O'Dell
Adam M. Tamburelli

March 22, 2019

***Electronic Notice***

California Labor & Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Suite 801
Oakland, California  94612

Re:    ***Miguel Mendoza v. Bank of America Corporation***
          Notice of PAGA Claims Pursuant to Labor Code § 2699.3

To Whom It May Concern:

Please be advised that this office is counsel to Miguel Mendoza ("Mr. Mendoza") and that all future communications should be directed to this office.

Notice is hereby provided as required by California Labor Code §2699.3, that Mr. Mendoza, on behalf of himself and all other similarly situated current and former aggrieved employees employed by Bank of America Corporation (hereinafter "Bank of America"),[1] alleges that Bank of America has violated, and continues to violate, the provisions of the Labor Code and Wage Orders promulgated by the Industrial Welfare Commission. Those similarly situated individuals are all persons who, since four years prior to the date of filing of the complaint, have been, or currently are, employed in California by Bank of America and classified as "non-exempt" operations managers.

The Complaint, which will be filed in the Contra Costa County Superior Court for the State of California, seeks redress against Bank of America for its systematic and continuous violations of the California Labor Code and Wage Order No. 4. Specifically, as more fully set forth in the copy of the Complaint, which is attached hereto and respectfully incorporated as though fully stated herein, Bank of America:

1.     Violated Cal. Code Regs., tit. 8, § 11070, Labor Code §§ 226.7, 512, 558, 1194.5 by failing to provide legally-compliant meal periods, and failing to pay premium wages for missed, late, shortened, on duty, and on-the-premises meal and rest periods, pursuant to Labor Code §§ 226.7, 512, and the applicable IWC wage order, codified in Cal. Code Regs., tit. 8, § 11070. Violations include, and are not limited to: requiring employees to miss meal periods, take meal periods after the end of their fifth hour of work, and not allowing employees to take full 30 minute, off-duty, uninterrupted meal periods, and requiring meal and rest breaks be taken on the

---

[1] Bank of America is a Deleware corporation, with its headquarters located at 150 N. College Street, NC1-028-17-06, Charlotte, NC 28255.

March 22, 2019
Page 2

premises; not paying for on duty meal periods and meal periods required to be taken on the premises; not paying for non-compliant meal and rest periods at the required premium rate of pay; and by failing to have a policy or practice that pays meal and rest period premium wages in compliance with California law.

      2.     Violated Labor Code §§ 226, 226.3, 226.4, 558, 1174, 1174.5 and 1194.5 by failing to provide itemized and accurate wage statements, including by failing to state the proper rates of pay, the amount of wages earned and paid, the hours worked, the rates of pay, and meal and rest period premiums.

      3.     Violated Cal. Code Regs., tit. 8, § 11070, Labor Code §§ 1174, 1174.5, and 1194.5 by failing to maintain accurate employment records for aggrieved employees.

      4.     Violated Labor Code §§ 200-203 by failing to pay aggrieved employees all compensation due within seventy-two hours of the employee's resignation or the employee's last day of work, whichever is later

Mr. Mendoza further alleges that Bank of America's misconduct is ongoing, and Bank of America is subject to civil penalties as provided by various provisions of the Labor Code, including Labor Code sections 226, 226.3, 226.7, and 512. We believe that Mr. Mendoza and other similarly situated Bank of America operations managers and former operations managers are entitled to all damages, restitution, statutory and civil penalties, and injunctive relief allowed by law.

Mr. Mendoza requests that the Labor and Workforce Development Agency not investigate these violations and permit Plaintiff to pursue claims for such penalties under the Private Attorney General's Act ("PAGA"), Labor Code section 2698, *et seq.* However, if it wishes to investigate this matter further, please notify this office. If no notice is provided within sixty-five (65) calendar days of the submission date of this letter, Mr. Mendoza will proceed to seek relief under PAGA in his lawsuit.

Thank you for your time and consideration.

      Very truly yours,

      **MARLIN & SALTZMAN, LLP**

      Bradley R. Fagnani

cc: Bank of America Corporation
   150 N. College Street, NC1-028-17-06
   Charlotte, NC 28255
   (w/enclosure)

March 22, 2019
Page 3

1  **MARLIN & SALTZMAN LLP**
2  Stanley D. Saltzman (SBN 90058)
   Bradley R. Fagnani (SBN 261330)
3  29800 Agoura Road, Suite 210
   Agoura Hills, California 91301
4  Telephone:  (818) 991-8080
   Facsimile:  (818) 991- 8081
5  ssaltzman@marlinsaltzman.com
   bfagnani@marlinsaltzman.com
6

7  *Attorneys for Plaintiff and the putative Class*

8
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9
                        **COUNTY OF CONTRA COSTA**
10

11  **MIGUEL MENDOZA**, individually, and on      |  **CASE NO.:**
    behalf of all others similarly situated,
12                                                 |  **CLASS ACTION COMPLAINT FOR:**

13                      Plaintiff,                 |  1.  **Failure to Provide Compliant Meal Periods (Lab. Code §§ 512, 226.7, and Wage Order No. 4);**

14  v.                                             |  2.  **Failure to Provide Compliant Rest Breaks (Lab. Code §§ 512, 226.7, and Wage Order No. 4);**
15
    **BANK OF AMERICA CORPORATION**, and          |  3.  **Failure to Accurately Itemize and Report Wages, Hours, and Pay Rates (Lab. Code §§ 226, 1174, and Wage Order No. 4);**
16  **DOES 1-100**, inclusive,

17                      Defendants.                |  4.  **Failure to Pay All Wages Upon Discharge (Lab. Code §§ 200-203);**
18
                                                   |  5.  **Failure to Reimburse for Necessary Business Expenses (Lab. Code § 2802);**
19
20                                                 |  6.  **Violation of the California Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq*.); and**
21
22                                                 |  7.  **Civil Penalties Under the Private Attorney General Act of 2004 (Lab. Code §§ 2698, *et seq*.)**
23
24
25                                                 |  **JURY TRIAL DEMANDED**
26

27
28

Plaintiff Miguel Mendoza ("Plaintiff"), individually and on behalf of all others similarly situated and similarly aggrieved, hereby brings this Class Action Complaint against Defendant Bank of America Corporation ("Bank of America") and DOES 1 through 100 (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1.     Plaintiff brings this class action on behalf of himself and all others similarly situated and similarly aggrieved employees (collectively, the "Class"), who have sustained injuries arising out of Bank of America's systematic course of uniform payroll policies and practices that violate the California Labor Code, Industrial Welfare Commission ("IWC") Wage Order No. 4, California Code of Regulations, and California Business and Professions Code section 17200. Specifically, Bank of America intentionally and wrongfully requires its operations managers to remain on duty for meal and rest periods by requiring them to remain on the premises, and often fails to provide its operations managers with an otherwise off duty, uninterrupted, 30-minute meal period within the first five hours of their shifts, an uninterrupted 10-minute rest period for every four hours (or major fraction thereof) of work, and fails to pay employees the resulting vested meal period and rest period premium wages when due.

2.     Under California law, unless an employee is relieved of all duty during his or her thirty-minute meal period, the meal period shall be considered an "on duty" meal period and counted as hours worked which must be compensate at the employee's regular rate of pay. (8 Cal. Code Regs. § 11040 ["Wage Order"], Part 11(A).) An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty *and* when by written agreement between the employer and employee an on-the-job meal period is agreed to. The written agreement must state that the employee may, in writing, revoke the agreement at any time. (*Id.*) Here, Plaintiff and the Class were not relieved of all duty during their meal periods and were, therefore, forced to remain "on duty." Further, no on-the-job meal period was agreed to in writing.  Plaintiff and the Class were therefore entitled to be, but were not, paid at their regular rate of pay for all "on duty" meal periods.  Thus, Plaintiff and Class are due

premium wages.

3.    If the employer requires the employee to remain at the work site or facility during the meal period, the meal period must be paid as time worked because it is "on-duty." This is true even where the employee is relieved of all work during the meal period. (*Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968.) Here, Plaintiff and the Class were required to remain at the office during their meal (and rest) periods, therefore, the meal periods should have been paid. Meal periods should have been, but were not paid.  A compliant, timely meal period was not provided. Premium wages are, therefore, due.

4.    Under California law, when employees are forced to miss a meal or rest period, take a late meal or rest period, take a shortened meal period lasting less than 30 minutes, take an interrupted meal or rest period, are required to take unpaid "on duty" meal periods, or are required to remain on the premises during meal periods without pay, they are immediately entitled to premium wages. Indeed, the California Supreme Court has held that an employee is entitled to the additional hour of pay *immediately* upon being forced to miss a rest or meal period, even in the absence of any request by employees or payment authorization by their supervisors. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1108.)

5.    Bank of America's pattern, practice, and uniform administration of enterprise-wide policies and practices regarding illegal and improper compensation, as described herein, creates an entitlement to recovery by the Plaintiff and the putative Class for the unpaid balance of the full amount of unpaid and/or withheld compensation, including interest thereon, applicable penalties and premium pay, reasonable attorneys' fees, and costs of suit according to the mandates of the California Labor Code and California Code of Civil Procedure.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action under the California Constitution, Article VI, section 10, which grants the Superior Court, "Original jurisdiction in all causes except those given by statute to other courts." The statutes under which Plaintiff brings this action do not specify any other basis for jurisdiction.

7.     Venue is proper in this judicial district under California Code of Civil Procedure sections 395(a) and 395.5 as a portion of the acts and injuries complained of herein occurred in this County and Bank of America employed Plaintiff in this County.

## THE PARTIES

8.     Plaintiff is an individual and resident of the State of California, and at all relevant times was a non-exempt Bank of America Operations Manager in the State of California. At all times pertinent, Plaintiff's employment duties were discharged within the State of California.

9.     Plaintiff was employed by Bank of America from September 2015 to January 2017 as an Operations Manager.

10.     Bank of America is a Delaware corporation with hundreds of branch offices in California. On information and belief, Bank of America employs an Operations Manager at each and every branch office in California.

11.     The true names and capacities whether individual, corporate, associate or otherwise of Defendants DOES 1 through 100, inclusive, are unknown to Plaintiff at this time.  Plaintiff will amend this Complaint to show their true names and capacities once they are ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of said fictitious defendants are responsible in some manner for the acts and occurrences set forth herein, and that the injuries and damages alleged herein were and are the direct and proximate result of the actions of these defendants. At all times herein mentioned, each Defendant participated in the doing of the acts alleged to have been done by the named Defendant, and furthermore, all Defendants were the agents, servants and employees of each of the other Defendants, and at all times herein mentioned, were acting within the course and scope of said agency and employment. At all relevant times, Defendants were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

12.     The use of the term "Defendant" or "Defendants" in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly

and severally, not only the Defendants identified in this Complaint, but also all Defendants designated as DOES 1 through 100, inclusive, as though the term "Defendants" was followed in each and every instance throughout this Complaint with the phrase "and each of them jointly and severally," including all named Defendants and Defendants included herein and sued under the fictitious names of DOES 1 through 100, inclusive.

## **FACTUAL ALLEGATIONS**

13.    At all relevant times, Bank of America classified Plaintiff and members of the Class as "non-exempt" under IWC Wage Order No. 4 (the applicable Wage Order here), the California Code of Regulations, and the California Labor Code.

14.    During their employment, Plaintiff and members of the Class were often not authorized or permitted by their supervisors to take an off duty, uninterrupted, full 30-minute meal break within the first five hours of their shifts that exceeded five hours, as required by Labor Code section 512 and IWC Wage Order No. 4.

15.    During their employment, Plaintiff and members of the Class were often not authorized or permitted by their supervisors to take an uninterrupted, full 10-minute rest break per four hours worked or fraction thereof, as required by Labor Code section 512 and IWC Wage Order No. 4.

16.    During their employment, Plaintiff and members of the Class were often not relieved of all duties during meal and rest breaks, as required by IWC Wage Order No. 4.

17.    During their employment, Plaintiff and members of the class were required to remain on the premises for meal breaks without a written agreement for on-the-job paid meal periods.

18.    Plaintiff's and members of the Class's missed, late, shortened, "on duty," and on-the-premises meal and rest breaks were caused by pressure from supervisors and Bank of America's required business practices, and were not voluntary.

19.    Whenever Plaintiff's and members of the Class's meal or rest breaks are late, missed, or shortened because of business concerns and thus not voluntary on the part of the

employee, Bank of America is required by statute and Wage Order No. 4 to pay the affected employee a premium wage of one hour of additional pay at his or her hourly rate.

20.    Whenever Plaintiff's and members of the Class's meal or rest breaks are "on duty" or required to be on-the-premises, their breaks are on-the-clock and must be paid the time spent by the Class Members during these non-complaint breaks, in addition to paying the affected employee a premium wage of one hour of additional pay at his or her hourly rate, as required by the Wage Order and the Labor Code.

21.    Plaintiff's and members of the Class's right to meal and rest period premium wages vested immediately upon the late, missed, or short meal or rest breaks.

22.    Plaintiff's and members of the Class's right to meal and rest period premium wages vested immediately upon the nonpayment for time worked for "on duty" or on-the-premises meal or rest breaks.

23.    During the class period, Bank of America: (1) failed to track and identify which employee meal periods were late, missed, or short; (2) failed to maintain records of whether the missed, late, or short meal period was due to the press of business or voluntary; (3) failed to pay employees' "on duty" or on-the-premises meal or rest breaks; and (4) failed to pay premium wages when required by law.

24.    As a result, Plaintiff and members of the Class were not paid meal and rest period premium wages for late, missed, short, "on duty," or on-the-premises meal or rest breaks, in violation of California law.

25.    Bank of America's wholesale failure to comply—or even have a system for complying—with California's meal and rest break laws provided it with a competitive advantage over companies that complied with California law.

26.    Additionally, Bank of America could have easily implemented a system for automatically paying meal and rest period premiums but chose not to do so. For example, Bank of America could have simply paid operations managers premium wages for their meal breaks as all were "on duty" or on-premises, and simply paid the meal breaks as time worked. Further,

CLASS ACTION COMPLAINT

Bank of America could instruct operations managers to notify their supervisors when they received interrupted, short, or late meal or rest breaks. Moreover, on information and belief, software exists where Bank of America can track when breaks are improper, record the reasons therefor, and pay additional premium pay to affected employees. These systems also record those premiums on wage statements.

27.     Because Bank of America failed to implement a system for tracking meal and rest break violations and recording whether they were voluntary, a presumption arises that the break violations were involuntary and Bank of America owes the premium pay therefor. (*Safeway, Inc. v. Superior Court of Los Angeles County* (2015) 238 Cal.App.4th 1138, 1159-1160.)

28.     Bank of America's policies, practices, and other conduct described herein violated the Labor Code, Wage Order No. 4 (9 Cal. Code Regs., § 11040), and Business & Professions Code sections 17200, et seq.

## CLASS ALLEGATIONS

29.     Plaintiff brings this class action under the provisions of California Code of Civil Procedure section 382 on behalf of herself and the proposed Class defined as follows:

All of Bank of America's non-exempt California operations managers who worked a shift over five hours in length beginning four years from the date of the filing of this Complaint to the time judgment is entered hereon, and who were not provided with an off duty, uninterrupted, 30 minute meal break that started before the beginning of their sixth hour of work, or were required to remain on the premises during their meal breaks, or were not provided off duty rest periods of at least 10 minutes for every four hours of work or major fraction thereof.

30.     This case is appropriate for class treatment because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

31.     **Numerosity and Ascertainability:** The members of the Class are so numerous that joinder of all members would be unfeasible and not practicable. The membership of the Class is

unknown to Plaintiff at this time; however, it is estimated that the Class number greater than one thousand individuals. The identity of such membership is readily ascertainable via inspection of Defendants' books and records or other approved methods. Similarly, Class members may be notified of the pendency of this action my mail, email, internet postings, and/or publication.

32.    **Common Questions of Law or Fact:** There are common questions of law and fact as to Plaintiff and all other similarly situated persons, which predominate over questions affecting only individual Class members, including, without limitation:

a)    Whether Bank of America required Plaintiff and members of the Class to remain on site during meal and rest breaks;

b)    Whether Bank of America failed to relieve Plaintiff and members of the Class of all duty during meal and rest breaks;

c)    Whether Bank of America required Plaintiff and members of the Class to miss meal periods, begin meal periods after the beginning of their sixth hour of work, or take meal periods less than 30 minutes long;

d)    Whether Bank of America and Plaintiff and members of the Class agreed in writing to "on duty" meal and rest periods;

e)    Whether Bank of America had a policy which unlawfully failed to monitor and categorize missing, late, or short meal and/or rest periods;

f)    Whether Bank of America's failure to record the reasons for missed, short, or late meal and/or periods creates a presumption that all such periods were missed, short, or late involuntarily;

g)    Whether Bank of America had a policy or practice of not automatically paying Plaintiff and members of the Class required meal and rest period premium wages for involuntarily missed, short, and/or late meal or rest periods;

h)    Whether Bank of America's failure to have a policy or practice for automatically paying the Class members required meal and rest period premium wages for non-

complaint meal or rest periods violated the California Labor Code and applicable Wage Order;

i)      Whether Plaintiff and the Class members were damaged by Bank of America's conduct;

j)      Whether Bank of America's actions or inactions violated the statutes invoked herein;

k)      Whether Plaintiff is entitled to a preliminary and permanent injunction enjoining Bank of America's conduct; and

l)      Whether restitutionary disgorgement of the value to Bank of America non-complaint meal and/or rest periods is appropriate under Business & Professions Code section 17203.

33.    **Predominance of Common Questions:** Common questions of law and fact predominate over questions that affect only individual members of the Class because all members of the Class were subject to the identical policies and practices. The common questions of law set forth above are numerous and substantial and stem from Defendants' practices applicable to each individual Class member. As such, these common questions predominate over individual questions concerning each individual Class member's showing as to his or her eligibility for recovery or as to the amount of his or her damages.

34.    **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, Plaintiff and all Class members were comparably injured through Bank of America's misconduct described above. As alleged herein, Bank of America subjected all of the members of the class to similar violations of the California Industrial Welfare Commission Wage Orders (California Code of Regulations), the California Labor Code, and California Business and Professions Code section 17200, which prohibits unlawful and/or unfair business practices.

35.    **Adequacy of Representation:** Plaintiff is an adequate class representative because he is fully prepared to take all necessary steps to represent fairly and adequately the interests of

the members of the Class, and because his interests do not conflict with the interests of other Class members they seek to represent. Moreover, Plaintiff's attorneys are ready, willing and able to fully and adequately represent Plaintiff and the members of the Class. Plaintiff's attorneys are experienced in complex class action litigation, and they will prosecute this action vigorously. Plaintiff and his counsel, who are experienced class action lawyers, will fairly and adequately protect the Class members' interests.

36.    **Superiority:** The nature of this action and the laws available to Plaintiff and members of the Class make the class action format a particularly efficient and appropriate procedure to redress the violations alleged herein. If each Class member were required to file an individual lawsuit, Bank of America would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual plaintiff with its vastly superior financial and legal resources. Moreover, the prosecution of separate actions by the individual Class members, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual Class members against Bank of America, and which would establish potentially incompatible standards of conduct for Bank of America and/or legal determinations with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other Class members not parties to adjudications or which would substantially impair or impede the ability of the Class members to protect their interests. Further, the claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto.

37.    A community of interest also exists in ensuring that the relief granted is sufficient to adequately compensate the members of the Class.

38.    A practice or policy of not paying meal and rest period premiums presents an issue "suitable for class treatment." (*Safeway*, *supra*, 238 Cal.App.4th at 1159.)

///

///

**FIRST CAUSE OF ACTION**

**Failure to Provide Compliant Meal Breaks**

**[Cal. Lab. Code §§ 226.7 and 512; IWC Wage Order No. 4 § 11]**

39.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

40.    California Labor Code section 512(a) sets forth the relevant meal period requirement, as follows: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes…."

41.    California Labor Code section 226.7 provides for a remedy for non-complaint meal periods as follows:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

42.    The Wage Order likewise sets forth the meal period requirements and penalties above for workers, as follows:

(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes…Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time. Unless the employee is relieved of all duty during a 30 minute

CLASS ACTION COMPLAINT

meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time…

…

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

43.    "An  employer's duty with  respect  to meal breaks under  both section  512, subdivision (a) and [the] Wage Order…is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." (*Brinker Rest. Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040.)

44.    Based on all allegations set forth in paragraphs 13-28, Defendants' meal break policies are entirely inadequate and fail to comply with California law.

45.    Pursuant to Labor Code § 226.7(b) and IWC Wage Order No. 4, Plaintiff and each member of the putative Class is entitled to recover from Defendants premium pay equal to the sum of one hour of pay at their regular rate for each non-compliant meal period, and in addition they must be paid for all time spent during these non-compliant and unpaid breaks.

## SECOND CAUSE OF ACTION

### Failure to Provide Compliant Rest Breaks

### [Cal. Lab. Code §§ 226.7 and 512; IWC Wage Order No. 4 § 12]

46.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as

though set forth in full.

47.    The Wage Order sets forth the rest period requirements and penalties above for workers in professional, technical, clerical, mechanical and similar occupations, as follows:

(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.....

…

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

48.    California Labor Code section 226.7 provides for a remedy for non-compliant rest periods as follows:

(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

(b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

49.    Based on all allegations set forth in paragraphs 13-28, Defendants' rest break policies are entirely inadequate and fail to comply with California law.

50.    Pursuant to Labor Code § 226.7(b) and IWC Wage Order No. 4, Plaintiff and each member of the putative Class is entitled to recover from Defendants the sum of one hour of pay at their regular rate for each noncompliant rest period.

/ / /

/ / /

**THIRD CAUSE OF ACTION**

**Failure to Accurately Report Itemized Time and Wages**

**[Labor Code § 226, 1174; IWC Wage Order No. 4 § 7]**

51.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

52.    Labor Code § 226 and Wage Order No. 4 require Defendants to provide to Plaintiff and the members of the Class, at the time of the payment of wages, "an accurate itemized statement" in writing that states, *inter alia*, all wages earned, all applicable pay rates, and all hours worked.

53.    Labor Code § 1174 requires Defendants to keep records payroll records showing the hours worked daily by and the wages paid to employees. Labor Code 1174.5 provides that "[a]ny person employing labor who willfully fails to maintain the records required by subdivision … accurate and complete records required by subdivision (d) of Section 1174… shall be subject to a civil penalty of five hundred dollars ($500)."

54.    The wage statements presented to Plaintiff and the Class members were and are not correct or accurate in that they failed to account for all time worked, including premium wages for missed, interrupted, late, "on duty," and on-the-premises meal and/or rest breaks.

55.    As a result of these violations, Plaintiff and the members of the Class suffered actual injury, insofar as they were completely dependent on Defendants to capture and report hours worked, calculate proper rates of pay, and identify and categorize "on duty," missed, late, and short meal breaks. Defendants' failure to accurately report these items resulted in the employees not receiving all compensation owed to them, in violation of California law, as set forth herein.

56.    As a result of the above, Plaintiff and members of the Class are entitled to the statutory penalty set forth in subdivision (e) of section 226, to the civil penalty set forth in section 226.3, an injunction against Defendants, under subdivision (h), and the civil penalties imposed by section 1174.5, as well as an award of costs and reasonable attorney's fees.

**<u>FOURTH CAUSE OF ACTION</u>**

**Failure to Pay All Wages Due Upon Discharge**

**[Labor Code § 203]**

57.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

58.    California law requires that employees whose employment is terminated be paid all wages earned and unpaid, at the time of the worker's separation from the employer. Plaintiff recently separated from Defendants and was not paid all earned and unpaid wages at the time of his termination of employment, including unpaid minimum wages, unpaid overtime, unpaid reporting time wages, and unpaid premiums for missed meal and rest breaks.

59.    At all times pertinent hereto, Defendants had it within their abilities to capture all time worked and consult their business records and properly calculate and pay all of the said unpaid wages, at the time of Plaintiff's employment ended. However, Defendants, and each of them, willfully and intentionally failed and refused to pay the earned and unpaid wages to Plaintiff.  Plaintiff alleges, on information and belief, that Defendants have similarly treated the other employees whose employment with Defendants has terminated within the three years prior to the filing of this complaint.

60.    Plaintiff did not hide himself, or in any manner refuse or obfuscate any attempt by Defendants to tender the balance of the earned and unpaid wages. Plaintiff alleges, on information and belief, that the same is true of the other employees whose employment with Defendants has terminated within the three years prior to the filing of this complaint.

61.    Pursuant to California law, Plaintiff and the other Class Members whose employment has terminated within the last three years, are entitled to a penalty equal to their regular daily rate, up to a maximum of 30 days.

/ / /

/ / /

/ / /

**FIFTH CAUSE OF ACTION**

**Failure to Reimburse for Business Expenses**

**[Cal. Lab. Code § 2802]**

62.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

63.    Under California Labor Code § 2802, employees are entitled to be indemnified "for all necessary expenditures or losses incurred by them in direct consequence of the discharge of their duties."

64.    Bank of America has failed to reimburse Plaintiff and members of the Class for their ordinary business expenses that were incurred on behalf of and for the benefit of Bank of America including but not limited to cell phones and other expenses to be determined in discovery.

65.    Plaintiff and members of the Class are, therefore, entitled to be indemnified, pursuant to Labor Code § 2802(b), with interest at the statutory rate, plus attorneys' fees, penalties, and costs.

**SIXTH CAUSE OF ACTION**

**Unfair Competition**

**[Business & Professions Code § 17200, *et. seq.*]**

66.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

67.    Defendants' failure to provide lawful meal breaks, authorize and provide lawful rest breaks, and/or failure to pay vested meal and rest period premium wages constitutes an unlawful and unfair business practice under Bus. & Prof. Code § 17200, et seq., as it violates the provisions of the Labor Code and Wage Order No. 4 as described above.

68.    Defendants' conduct described herein is "unfair" under Bus. & Prof. Code § 17200 because it is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious, and any utility of such practices is outweighed by the harm caused to the Plaintiff, the

Class, and the public.

69.     Defendants' employment practices were also unfair because they undermine California's wage and hour laws, which reflect the strong public policy favoring protection of workers' general welfare and society's interest in a stable job market.

70.     The gravity of harm Defendants' employment practices places on its employees substantially outweighs any utility, reasons, justifications, and motives Defendants can provide for these practices.

71.     Defendants' wrongful conduct is ongoing and part of a pattern or generalized course of conduct repeated on thousands of occasions yearly.

72.     By and through their unfair and unlawful business practices described herein, Defendants have obtained valuable property, money, and services from Plaintiff, members of the Class, and the general public, and have deprived them of valuable rights and benefits guaranteed by law, all to their detriment.

73.     Plaintiff seeks order requiring Defendants to make full restitution and to disgorge their ill-gotten gains wrongfully obtained from members of the Class as permitted by Bus. & Prof. Code § 17203.

74.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Defendants from continuing to engage in the unfair competition described above, or any other act prohibited by law.

75.     Additionally, Plaintiff and the Class members seek an order requiring Defendants to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## SEVENTH CAUSE OF ACTION

### Civil Penalties Under the Private Attorney General Act of 2004

### [Labor Code §§ 2698, *et seq*.]

76.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though set forth in full.

77.     Under the Private Attorneys General Act of 2004 ("PAGA"), Labor Code

§§ 2698, et seq., any employee aggrieved by an employer's violation of the Labor Code has the right to file an action on behalf of all aggrieved employees for the civil penalties established by § 2699 and/or other Labor Code sections.

78.    Plaintiff is an employee who has been aggrieved by Defendants' violations of the aforementioned Labor Code provisions, and brings this cause of action on behalf of himself and as a representative of other similarly aggrieved employees who were subject to Defendants' wrongful conduct described above.

79.    The aforementioned wrongful acts and omissions of Defendants were violations of the Labor Code, as set forth herein.

80.    During the relevant time period, Defendants engaged in each of the wrongful acts and/or omissions detailed above. As a result, Plaintiff and Class Members are entitled to one hundred dollars ($100) for each initial Labor Code violation and two hundred dollars ($200) for each subsequent violation, and/or any and all other penalties permitted by PAGA. Labor Code § 2699(f)(2).

81.    On March 22, 2019, Plaintiff provided timely written notice to the Labor and Workforce Development Agency ("LWDA") pursuant to Labor Code § 2699.3. If the LWDA refuses to investigate the above claims, Plaintiff will seek leave to amend the Complaint to claim penalties under PAGA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment for himself and all others on whose behalf this suit is brought against Defendants, jointly and severally, and for an Order follows:

a)    certifying the proposed Class defined herein;

b)    appointing Plaintiff as Class Representative;

c)    appointing Plaintiff's counsel as Class Counsel;

d)    declaring Defendants' conduct to be unlawful;

e)    awarding compensatory damages in an amount according to proof with interest thereon

f)    On the First Cause of Action, for damages and/or penalties, as provided by law, in an amount according to proof at the time of trial;

g)    On the Second Cause of Action, for damages and/or penalties, as provided by law, in an amount according to proof at the time of trial;

h)    On the Third Cause of Action, for damages and/or penalties, as provided by law, in an amount according to proof at the time of trial;

i)    On the Fourth Cause of Action, for all earned wages due and owing at the time of separation from Defendants, plus waiting time penalties, pursuant to Labor Code § 203, according to proof at the time of trial;

j)    On the Fifth Cause of Action for reimbursement of all necessary business expenses advanced by Plaintiff and the Class members, in an amount according to proof at the time of trial;

k)    On the Sixth Cause of Action, for restitution to Plaintiff and other similarly situated members of the general public of all funds unlawfully acquired by Defendants by means of any acts or practices declared by the Court to be in violation of Bus. & Prof. Code §§ 17200 *et seq*., for an injunction to prohibit Defendants from engaging in the unfair business practices complained of herein, for an injunction requiring Defendants to give notice, to persons to whom restitution is owing, of the means by which to file and make claim for restitution;

l)    On the Seventh Cause of Action, for penalties pursuant to Labor Code §§ 2698-2699;

m)    awarding penalties and all available relief pursuant to the Labor Code and Wage Order No. 4;

n)    preliminarily and permanently enjoining Defendants from engaging in the unlawful and unfair practices alleged herein;

o)    awarding attorneys' fees and costs as provided by Labor Code §§ 218.5, 226, 226.7, 2802, and Code of Civil Procedure § 1021.5; and

1    p)    granting such other and further relief as this Court deems just and proper.

2

3                           **DEMAND FOR JURY TRIAL**

4    Plaintiffs hereby request a trial by jury for all matters so triable in this action.

5

6    Dated:  March 22, 2019                        **MARLIN & SALTZMAN, LLP**

7

8

9                                          By: _____
                                               Bradley R. Fagnani, Esq.
10                                             Stanley D. Saltzman, Esq.
                                               Attorneys for Plaintiffs and the Class
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

| Certified Mail Fee | |
|---|---|
| $ | 3.50 |

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $ _____ 2.80
☐ Return Receipt (electronic)      $ _____
☐ Certified Mail Restricted Delivery  $ _____
☐ Adult Signature Required         $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

3/22/19

Postage
$ 1.60

Total Postage and Fees
$ 7.90

Sent To
Bank of America Corp.

Street and Apt. No., or PO Box No.
150 N. College St., NC1-028-17-06

City, State, ZIP+4®
Charlotte NC 22255

PS Form 3800, April 2015 PSN 7530-02-000-9047        See Reverse for Instructions

7015 3010 0000 2163 1969



UNITED STATES POSTAGE

PITNEY BOWES

02 1P       $ 007.90°
0004689150   MAR 22 2019
MAILED FROM ZIP CODE 91301

UNITED WE STAND

**FROM:  MARLIN & SALTZMAN**

CLASS ACTIONS, MASS TORTS & CATASTROPHIC INJURIES

**AGOURA HILLS BUSINESS CENTER**
**29800 AGOURA RD, SUITE 210**
**AGOURA HILLS, CA 91301**

**TO:**

Bank of America Corporation
150 N. College Street, NC1-028-17-06
Charlotte, NC 28255



CERTIFIED MAIL

7015 3010 0002 2163 1969

---

Domestic Return Receipt

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted
   Delivery
☐ Return Receipt for
   Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation
   Restricted Delivery

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Bank of America Corporation
150 N. College St., NC1-028-17-06
Charlotte NC 28255

9590 9402 2498 6306 4659 73

2. Article Number (Transfer from service label)

7015 3010 0002 2163 1969



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bank of America Corporation
150 N. College St., NC1-028-17-06
Charlotte NC 28255

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 2498 6306 4659 73

2. Article Number (Transfer from service label)

7015 3010 0002 2163 1969

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Lavoris Little_    ☐ Agent    ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on May 27, 2021, I electronically transmitted the foregoing document

3   to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice

4   of Electronic Filing.

5          I declare under penalty of perjury under the laws of the United States of America that the

6   foregoing is true and correct.

7          Executed on May 27, 2021 at San Diego, California.

8

9                          */s/ Leeanna Carcione*
                          Leeanna Carcione

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28