1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA

10          San Francisco Division

| | |
|---|---|
| 11  ANDREA HARRISON, on behalf of<br>themselves and others similarly situated,<br>12<br>Plaintiff,<br>13<br>14          v.<br>BANK OF AMERICA CORPORATION,<br>15  and DOES 1–100, inclusive,<br>16<br>Defendant. | Case No. 19-cv-00316-LB<br>19-cv-02491-LB<br>20-cv-02119-LB<br><br>**ORDER GRANTING FINAL<br>APPROVAL**<br>Re: ECF No. 83 (19-cv-00316-LB) |
| 17  MIGUEL MENDOZA, on behalf of<br>themselves and others similarly situated,<br>18<br>Plaintiff,<br>19<br>20          v.<br>BANK OF AMERICA CORPORATION,<br>21  and DOES 1–100, inclusive,<br>22<br>Defendant. | |
| 23  KIARASH KAFFISHAHSAVAR, on behalf<br>of themselves and others similarly situated,<br>24<br>Plaintiff,<br>25<br>v.<br>26  BANK OF AMERICA, N.A., a business<br>entity, form unknown,<br>27<br>Defendant. | |

28

United States District Court
Northern District of California

**INTRODUCTION**

The plaintiffs — three classes of current and former nonexempt employees who have various jobs at Bank of America's California branches — challenge Bank of America's alleged failure to pay them for their off-the-clock work, provide meal-and-rest breaks, or reimburse expenses in violation of the California Labor Code, California's Unfair Competition Law (UCL), and California's Private Attorney's General Act (PAGA). It is a putative class action under Federal Rule of Civil Procedure 23.[1] The parties settled the case, and the court granted the plaintiffs' unopposed motion for preliminary approval of the proposed settlement.[2] The plaintiffs moved for, and the defendants did not oppose, final approval of the settlement and attorney's fees and costs.[3] The court held a fairness hearing on October 28, 2021 and approves the settlement.

**STATEMENT**

**1. The Lawsuits**

This settlement involves three class-action cases with wage-and-hour claims. There thus are three settlement classes: the Harrison Class (tellers), the Kaffishahsavar Class (bankers, relationship managers and bankers, and lending and sales specialists), and the Mendoza Class (operations managers).[4] The parties engaged in formal and informal discovery (including motions practice) and then agreed to mediation. To prepare for it, the defendant produced, and the plaintiffs' counsel reviewed, data concerning the class sizes, hourly rates and dates of employment, timekeeping data, policy manuals, and other relevant data and discovery. The plaintiffs engaged an expert to prepare a damages analysis.[5] The parties had a lengthy mediation

---

[1] Consolidated Compl., *Harrison v. Bank of Am., N.A.*, No. 3:19-cv-00316-LB – ECF No. 77. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. The order cites to the *Harrison* docket generally.

[2] Order, *id.* – ECF No. 79.

[3] Mots., *id.* – ECF Nos. 80, 83.

[4] Settlement Agreement, *Mendoza v. Bank of Am. Corp.*, No. 3:19-cv-02491-LB – ECF No. 74-2 at 7–8 (¶ 12).

[5] Quintilone Decl., *id.* – ECF No. 74-6 at 10 (¶¶ 6–8); Saltzman Decl., *id.* – ECF No. 74-1 at 2–3 (¶¶ 7–8).

United States District Court
Northern District of California

with David Rotman, a respected wage-and-hour mediator, and ultimately accepted the mediator's proposal and settled the case on December 31, 2020.[6] As part of that settlement, they stipulated to the filing of a consolidated complaint. Following the plaintiff's unopposed motion and a hearing, the court preliminarily approved the settlement.[7] The plaintiffs moved for final approval of the settlement and attorney's fees and costs.[8] The court held a fairness hearing on October 28, 2021.

## 2. Settlement

### 2.1 Settlement Class

There are 20,190 class members (19,895 identified initially plus 295 omitted inadvertently because a job code was not included).[9] The settlement classes are as follows:

> Defendant's current and former non-exempt employees that fall within at least one of the following classes:
>
> a. Employees working or who worked in the State of California for Defendant as a "Teller" (meaning Job Codes RT600 – FC Client Service Rep and RT601 – Market Client Service Rep) on or after October 26, 2014, through the date of preliminary approval of the settlement by the [c]ourt (the "Harrison Class");
>
> b. Employees working or who worked in the State of California for Defendant as a "Financial Center Operations Manager" or a "Financial Center Assistant Manager" (meaning Job Codes RM019 – Assistant Manager-FCC and RM038 – Financial Center Assistant Manager) on or after March 25, 2015, through the date of preliminary approval of the settlement by the [c]ourt (the "Mendoza Class"); and
>
> c. Employees working or who worked in the State of California for Defendant as a Personal Banker (Job Code RS600), Senior Personal Banker (Job Code RS601), Relationship Manager (Job Code BQ055), Relationship Manager and Lending Specialist (Job Code BQ220), Sales and Service Specialist (Job Code RS860), Relationship Banker (Job Code RS861), or a Relationship Banker – Hybrid (Job Code RS862) on or after March 27, 2016, through the date of preliminary approval of the settlement by the [c]ourt (the "Kaffishahsavar Class").[10]

---

[6] Saltzman Decl., *id.* – ECF No. 74-1 at 2–4 (¶¶ 7–10).

[7] Order, *Harrison v. Bank of Am., N.A.*, No. 3:19-cv-00316-LB – ECF No. 76.

[8] Mots., *id.* – ECF Nos. 80, 83.

[9] Joint Report, *id.* – ECF No. 85 at 2.

[10] Settlement Agreement, *Mendoza v. Bank of Am. Corp.*, No. 3:19-cv-02491-LB – ECF No. 74-2 at 7–8 (¶ 12).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  The settlement excludes any former Bank of America employee who has previously released

2  the claims (and the release period will be excluded from the calculation of any settlement sum

3  payable to that employee).[11]

4  **2.2   Settlement Amount and Allocation**

5  The total non-reversionary Gross Settlement Amount is $11,500,000, and the Net Settlement

6  Amount recovered by the class is approximately $7,497,202.97 after the following deductions: (1)

7  $86,250 in PAGA penalties; (2) $30,000 in enhancement payments to the named plaintiffs; (3)

8  $84,000 for the claims administration's expenses; (4) $3,450,000 in attorney's fees; (5)

9  $54,356.17 in litigation costs; and (6) employer payroll taxes of $298,190.86.[12]

10  The class members will receive a settlement check without submitting a claim form.[13] Each

11  member's settlement share is calculated by multiplying the Net Settlement Amount by a fraction. The

12  numerator is the total number of credited workweeks the class member worked for the defendant in

13  California during the applicable time period as a member of a class, and the denominator is the total

14  number of credited workweeks for the class members who worked for the defendant in California

15  during the applicable class period as members of a class. Each class member's credited workweeks

16  will be calculated by the settlement administrator by multiplying the member's base workweeks by

17  the following subclass-specific factors: 1.00 (for Harrison Class members); 1.66 (for Mendoza Class

18  members); and 1.27 (for Kaffishahsavar Class members). Any plaintiff who opts out of the settlement

19  will not receive a share of the settlement proceeds.[14]

20

21

22  [11] *Id.* at 8 (¶ 14). The settlement agreement excluded the certified claims in *Frausto v. Bank of America*, No. 3:18-cv-01983-LB, and *Suarez v. Bank of America*, No. 3:18-cv-11202-LB. On June 17, 2021, the

23  court reconsidered its class-certification order and denied class certification. *Suarez*, 2021 WL 2476902 (N.D. Cal. June 17, 2021). On November 8, 2021, the Ninth Circuit denied the *Frausto* plaintiff's petition

24  for leave to appeal the June 17 order. Order, *Frausto v. Bank of Am.*, No. 21-80073 (9th Cir. Nov. 8, 2021). Thus, the settlement excludes only the individual claims of the named plaintiffs in *Frausto* and *Suarez*.

25  [12] Butler Suppl. Decl., *Harrison v. Bank of Am., N.A.*, No. 3:19-cv-00316-LB – ECF No. 83-3 at 3 (¶

26  8); Butler Suppl. Decl., *id.* – ECF No. 88-1 at 3 (¶ 8). As discussed below, the court reduces the enhancement payments from $40,000 to $30,000, which increases the class recovery by $10,000.

27  [13] Settlement Agreement, *Mendoza v. Bank of Am. Corp.*, No. 3:19-cv-02491-LB – ECF No. 74-2 at 15 (¶ 30).

28  [14] *Id.* at 15–16 (¶ 32).

Settlement checks will be mailed within ten days after the occurrence of both the effective date of the settlement and the defendant's deposit of the Gross Settlement Fund into a qualified settlement-fund account created by the settlement administrator. The checks are valid for 180 days.[15] Funds from checks that expire or are returned as undeliverable will be transmitted to the State of California Unclaimed Property Fund.[16]

The plaintiffs did a damages assessment that is summarized in the motion and supporting declarations. For each class, the plaintiffs analyzed damages for overtime and regular wages, meal breaks, rest breaks, unreimbursed business expenses, and derivative claims. For each category, they calculated full value and then applied discounts for litigation risk, depending on the bucket and the class.[17] The $11,500,000 settlement amount is approximately twenty percent of the estimated recoverable damages (exclusive of the derivate claims) in light of the litigation risks.[18] The settlement results in immediate payment to members of the classes in meaningful amounts (with an average recovery of $460 at an average blended hourly rate of $18.35).[19]

Under the settlement terms (with thirty percent of the settlement fund allocated to attorney's fees), the highest recovery is $1,634.20 and the average recovery is $370.93.

### 2.3   Release

The release is, in short, (1) a release of all class claims under federal or state law for all claims that were pleaded or could have been pleaded under the facts alleged in the complaint, (2) a release of the PAGA claims for claims that were pleaded or could have been pleaded under the facts alleged in the complaint, and (3) a general release by the named plaintiffs.[20]

---

[15] *Id*. at 19 (¶ 37), 20 (¶ 40).

[16] *Id*. at 20 (¶ 40).

[17] Saltzman Decl., *id.* – ECF No. 74-1 at 4–6 (¶¶ 13–20).

[18] *Id.* at 6 (¶ 19); Markham Decl., *id.* – ECF No. 74-5 at 11 (¶ 35).

[19] Markham Decl., *id.* – ECF No. 74-5 at 11 (¶ 35); Saltzman Decl., *id.* – ECF No. 74-1 at 6 (¶ 20).

[20] Settlement Agreement, *id.* – ECF No. 74-2 at 22–24 (¶¶ 43–44); Mot., *Harrison v. Bank of Am., N.A.*, No. 3:19-cv-00316-LB – ECF No. 80-1 at 22.

### 2.4    Administration

The court previously approved Simpluris, Inc. to administer the settlement in accordance with the procedures in the Settlement Agreement. It complied with the procedures. On July 19, 2021, it mailed the notices to 19,895 class members informing them of the lawsuit, the settlement, and their right to opt out or object to its terms. As of September 23, 2021, no class members objected and five class members opted out.[21] On September 23, 2021, the parties reported an error that resulted in 295 Mendoza class members not receiving notice.[22] The parties presented the court with two solutions, and the court selected the following solution. The notice was amended to give the 295 class members 35 days from the mailing of the notice to opt out of the class or object to the terms of the settlement. The notices were to be sent to the most recent home address that the Bank has for each class member, or an updated address obtained by Simpluris. If a notice was undeliverable, Simpluris called the class member on the most current phone number that the Bank has on record for that class member. The parties agreed to report to the court within four days after expiration of the opt-out and objection period about whether any of the 295 class members objected or opted out.[23] Ultimately, notice was successful for all, and no class member objected to the settlement or opted out.[24]

### ANALYSIS

### 1.   Jurisdiction

The court has diversity jurisdiction under CAFA. 28 U.S.C. 1332(d).

### 2.   Certification of Settlement Class

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the

---

[21] Butler Decl., *Harrison v. Bank of Am., N.A.*, No. 3:19-cv-00316-LB – ECF No. 83-3 at 2–3 (¶¶ 4–6).

[22] Joint Statement, *id.* – ECF No. 84; Joint Report, *id.* – ECF No. 85.

[23] Joint Report, *id.* – ECF No. 85, Order, *id.* – ECF No. 86.

[24] Joint Status Report, *id.* – ECF No. 88 at 3; Butler Suppl. Decl., *id.* – ECF No. 88-1 at 2–3 (¶¶ 5–7).

United States District Court
Northern District of California

1    court will not have the opportunity to adjust the class based on information revealed at trial. *Staton*

2    *v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*,

3    521 U.S. 591, 620 (1997)); *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d

4    539, 557 (9th Cir. 2019) (en banc).

5        Class certification requires the following: (1) the class must be so numerous that joinder of all

6    members individually is "impracticable;" (2) there must be questions of law or fact common to the

7    class; (3) the claims or defenses of the class representatives must be typical of the claims or

8    defenses of the class; and (4) the person representing the class must be able to fairly and adequately

9    protect the interests of all class members. Fed. R. Civ. P. 23(a); *In re Hyundai & Kia*, 926 F.3d at

10   556; *Staton*, 327 F.3d at 953. Also, the common questions of law or fact must predominate over any

11   questions affecting only individual class members, and the class action must be superior to other

12   available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

13       The court finds (for settlement purposes only) that the Rule 23(a) factors — numerosity,

14   commonality, typicality, and adequacy — support the certification of the class. Also, under Rule

15   23(b)(3) (for settlement purposes only) the common questions predominate over any questions

16   affecting only individual members, and a class action is superior to other available methods.

17       First, there are 20,190 class members.[25] The class is numerous. *Nelson v. Avon Prods.*, No. 14-

18   cv-02276-BLF, 2015 WL 1778326, at *5 (N.D. Cal. Apr. 17, 2015).

19       Second, there are questions of law and fact common to the classes that predominate over

20   individual issues. The members of each class perform the same jobs. Common questions include:

21   whether the defendant's policies or practices forced the plaintiffs to work off the clock; whether

22   they failed to pay for pre-shift, post-shift, and overtime work; whether they impeded the plaintiffs

23   from taking statutory meal breaks and paid them for missed breaks; and whether these violations

24   violated Labor Code §§ 201–203, 226, 512, 1197, 2802, and California Business and Professions

25   Code § 17200.[26] Because the claims arise from the defendant's uniform practices applied to

26

27   [25] Joint Report, *id.* – ECF No. 85 at 2.

28   [26] Mot., *Mendoza v. Bank of Am. Corp.*, No. 3:19-cv-02491-LB – ECF No. 74 at 39–41.

ORDER – Nos. 19-cv-00316-LB, 19-cv-02491-LB, 20-cv-02119-LB                           7

1   employees with the same job responsibilities, liability can be determined on a class-wide basis.

2   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Betorina v. Ranstad US, L.P.*, No. 15-

3   cv-03646-EMC, 2017 WL 1278758, at *4 (N.D. Cal. Apr. 6, 2017).

4       Third, the claims of the representative plaintiffs are typical of the claims of their respective

5   subclasses. The representative plaintiffs and all class members allege wage-and-hours violations

6   based on similar facts. They possess the same interest and suffer from the same injury. *Betorina*,

7   2017 WL 1278758, at *4.

8       Fourth, the representative plaintiffs fairly and adequately protect the interests of their classes.

9   The factors relevant to a determination of adequacy are (1) the absence of potential conflict

10   between the named plaintiffs and the class members, and (2) counsel chosen by the representative

11   party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai*

12   *and Kia*, 926 F.3d at 566 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

13   The factors exist here: the named plaintiffs have shared claims and interests with their classes (and

14   no conflicts of interest) and have retained qualified and competent counsel who have prosecuted

15   the case vigorously. *Id.*; *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands,*

16   *Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

17       Finally, a class action is superior to other available methods for fairly and efficiently

18   adjudicating the controversy. The class members have relatively small monetary claims, and the

19   class action resolves many substantially identical claims efficiently, avoiding a waste of resources,

20   to advance the individual members' interests.

21       The court's denial of class certification in the related *Frausto* and *Suarez* actions does not

22   change this analysis. Certifying a Rule 23(b)(3) class for settlement purposes does not raise the

23   same manageability issues that certifying a litigation class does. *In re Hyundai and Kia*, 926 F.3d

24   at 556–57 ("The criteria for class certification are applied differently in litigation classes and

25   settlement classes. In deciding whether to certify a litigation class, a district court must be

26   concerned with manageability at trial. However, such manageability is not a concern in certifying

27   a settlement class where, by definition, there will be no trial.").

28

United States District Court
Northern District of California

In sum, the prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) are met. The court certifies the class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only.

### 3. Approval of Settlement

The approval of a class-action settlement has two stages: (1) the preliminary approval, which authorizes notice to the class; and (2) a final fairness hearing, where the court determines whether the parties should be allowed to settle the class action on the agreed-upon terms.

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *In re Hyundai and Kia*, 926 F.3d at 556. A court may approve a proposed class-action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiff's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1026–27 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: "[(1)] the strength of the plaintiff's case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class-action status throughout trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceeding; [(6)] the experience and views of counsel; [(7)] the presence of a government participant; and [(8)] the reaction of the class members to the proposed settlement." *Id.* at 1026 (cleaned up).

When parties "negotiate a settlement agreement before the class has been certified, "settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt.*, 944 F.3d 1035, 1043 (9th Cir. 2019) (quotation omitted). "Specifically, such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id.* at 1049 (quotation omitted).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that approval is appropriate. Overall, the settlement appears fair. The settlement agreement was the result of an adversarial, non-collusive, and arms-length

United States District Court
Northern District of California

negotiation process. It provides good value, given the risks of litigation, the parties' disputes about damages, and the value of money to the plaintiffs now. As discussed above, the parties reached the settlement only after obtaining discovery and conducting a robust damages assessment.[27] Also, off-the-clock claims can be difficult to certify because they can involve individualized determinations. *In re AutoZone, Inc., Wage & Hours Emp't. Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019).

The PAGA allocation is within the range of reasonable settlements. *See, e.g.*, *Viceral v. Mistras Grp.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8–9 (N.D. Cal. Oct. 11, 2016).

### 4.   Class Representatives, Class Counsel, and Claims Administrator

The court appointed Andrea Harrison, Miguel Mendoza, Kimberly Jaco, and Kiarash Kaffishahsavar as the class representatives for their respective classes. The plaintiffs are an adequate representative of the other members of their subclasses and have claims that are typical of the other members' claims.

The court also appointed the Markham Law Firm (for the Harrison Class), Marlin & Saltzman, LLP (for the Mendoza Class), and Quintilone & Associates (for the Kaffishahsavar Class) as counsel for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1). They have the requisite qualifications, experience, and expertise in prosecuting class actions.

The court approves Simpluris's costs of $84,000, which will be paid out of the Gross Settlement Fund.[28]

### 5.   Class Notice

Simpluris provided notice to the members of the class in the form that the court approved previously. The notice met the legal prerequisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the

---

[27] Saltzman Decl., *id.* – ECF No. 74-1 at 3 (¶ 8).

[28] Saltzman Decl., *Harrison v. Bank of Am., N.A.*, No. 3:19-cv-00316-LB – ECF No. 80-4 at 5 (¶ 19).

United States District Court
Northern District of California

settlement agreement, met the requirements of due process, and complied with the court's order regarding court notice. The form of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do so; (6) the date and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards. Ultimately, the service plan addressed the service issues for the inadvertently omitted 295 class members.

## 6. Service Awards

Recognizing the presumption in this district of a $5,000 award, but recognizing the work of the named plaintiffs, the court awards $7,500 each as a service award to the four named plaintiffs, for a total of $30,000 (not the requested $40,000).

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (cleaned up). "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice . . . ." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164. In this district, a $5,000

United States District Court
Northern District of California

incentive award is presumptively reasonable. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases).

The named plaintiffs collectively spent approximately 180 hours on this case, helping to achieve recoveries for the classes and incurring a reputational risk.[29] Under the circumstances of this case, and considering the presumptive $5,000, the court determines that $7,500 is justified. *See, e.g., Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7–8 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 where the plaintiff spent "more than 100 hours on this case (which included being deposed twice)" and the defendant "pursued disclosure of her private information"); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. at 326, 335–36 (N.D. Cal. 2014) (awarding $10,000 where the plaintiff was deposed, attended a four-day mediation (which required her to travel and miss work), and spent "more than 200 hours assisting in the case"); *Bellinghausen.*, 306 F.R.D. at 267–68 (awarding $15,000 where the plaintiff spent 73 hours on the case, attended mediation, and was rejected by potential employers because of his status as class representative); *Bolton v. U.S. Nursing Corp.*, No. 12-cv-4466-LB, 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013) (approving $10,000 as an incentive award where the average recovery was $595.91 but "the largest settlement recovery is estimated to be $4,602.67, and 204 class members will receive more than $1,500").

### 7. Attorney's Fees and Costs

The plaintiffs' counsel asks for $3,450,000 in attorney's fees (thirty percent of the settlement fund) and $54,356.17 in costs.[30] The court awards the fees and costs.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Fee provisions in class-action settlements must be reasonable. *In re Bluetooth.*, 654 F.3d at 941. The court is not bound by the parties' settlement agreement as to the amount of fees. *Id.* at 942–43. The court must review fee awards with special rigor:

---

[29] Harrison Decl., *id.* – ECF No. 80-8 at 5–6 (¶¶ 12–16); Mendoza Decl., *id.* – ECF No. 80-9 at 2–4 (¶¶ 4–9); Kaffishahsavar Decl., *id.* – ECF No. 80-10 at 3–4 (¶¶ 9–11).

[30] Mot., *id.* – ECF No. 80-1 at 6.

United States District Court
Northern District of California

1

2  > Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

3

4  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (cleaned up).

5      When counsel recovers a common fund that confers a "substantial benefit" on a class of

6  beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v.*

7  *Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts

8  may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*;

9  *Hanlon*, 150 F.3d at 1029.

10      Where the settlement involves a common fund, courts typically award attorney's fees based on

11  a percentage of the settlement fund. The Ninth Circuit has established a "benchmark" that fees

12  should equal 25 percent of the settlement, although courts diverge from the benchmark based on

13  factors that include "the results obtained, risk undertaken by counsel, complexity of the issues,

14  length of the professional relationship, the market rate, and awards in similar cases." *Morales v.*

15  *Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013);

16  *Morris v. Lifescan, Inc*., 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33-percent fee award); *In*

17  *re Pac. Enter. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

18      Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total

19  benefits being made available to class members rather than the actual amount that is ultimately

20  claimed. *Young v. Polo Retail, LLC*, No. C-02-4547-VRW, 2007 WL 951821, at *8 (N.D. Cal.

21  Mar. 28, 2007) ("district court abused its discretion in basing attorney fee award on actual

22  distribution to class" instead of amount being made available) (citing *Williams v. MGM-Pathe*

23  *Commc'ns Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997).

24      If the court applies the percentage method, then it typically calculates the lodestar as a "cross-

25  check to assess the reasonableness of the percentage award." *See, e.g.*, *Weeks v. Kellogg Co.,* No. CV-

26  09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v.*

27  *Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters., Inc.*, 111 Cal. App. 3d 215, 226–

28  27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by

United States District Court
Northern District of California

counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id.*; *accord Laffitte v. Robart Half Internet, Inc.*, 1 Cal. 5th 480, 503–06 (2016) (under California law, "the percentage method to calculate [attorney's] fees in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

Based on counsel's submissions, the fee award is appropriate as a percentage of the common fund and is supported by a lodestar cross-check, given the results obtained, the case itself, the lack of objections to the settlement, and counsel's litigating the case on a contingency basis. *Cf. e.g., Bellinghausen*, 306 F.R.D. at 259–65 (N.D. Cal. Mar. 20, 2015) (approving attorney's fees equal to the benchmark 25 percent of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the settlement fund as attorney's fees "given the extensive litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarded one-third of the settlement fund as reasonable attorney's fees because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and strong result for the case").

As to the lodestar cross-check, the billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work.[31] *Cuviello v. Feld Entm't, Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation"); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020). Counsel provided billing records justifying the hours worked in the case and allowing a conclusion about a multiplier, which falls within the range of multipliers that

---

[31] Markham Decl., *id.* – ECF No. 80-2 at 8–10 (¶¶ 17–22); Quintilone Decl., *id.* – ECF No. 80-3 at 10–11 (¶¶ 9–10); Saltzman Decl., *id.* – ECF No. 80-4 at 6–7 (¶¶ 21–28); Avakian Decl., *id.* – ECF No. 80-5 at 3 (¶¶ 8–9); Haines Decl., *id.* – ECF No. 80-6 at 3–4 (¶¶ 6–9).

United States District Court
Northern District of California

1    courts approve. *Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently

2    awarded in common fund cases when the lodestar method is applied").

3        The court awards the requested thirty percent of the common fund (or $3,450,000) in fees. The

4    court also awards the reasonable out-of-pocket costs of $54,356.17. Fed. R. Civ. P. 23(h); *see*

5    *Harris v Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover reasonable expenses

6    that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl.*

7    *Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action

8    settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by

9    law or by the parties' agreement." Fed. R. Civ. P. 23(h). Counsel has expended $54,356.17 in

10   litigation costs to date, which is less than the $100,000 estimated by the Settlement Agreement.[32]

11

12                                    **CONCLUSION**

13       The court (1) certifies the classes for settlement purposes only, (2) approves the settlement and

14   authorizes the distribution of funds set forth above, (3) confirms the appointments of the class

15   representatives, class counsel, and Simpluris, Inc., (4) approves $3,450,000 in attorney's fees,

16   $54,356.17 in costs, $84,000 for Simpluris's administration costs, $7,500 service awards to each

17   of the four named plaintiffs ($30,000 total), and (5) orders the parties and Simpluris to carry out

18   their obligations in the settlement agreement. The court incorporates by this reference the terms in

19   the proposed order at ECF No. 88-2.

20       This disposes of ECF Nos. 80 and 83.

21       **IT IS SO ORDERED.**

22       Dated: November 24, 2021

23                                                _____

24                                                LAUREL BEELER
                                                  United States Magistrate Judge
25

26

---

27   [32] Markham Decl., *id.* – ECF No. 80-2 at 8–10 (¶¶ 17–23); Quintilone Decl., *id.* – ECF No. 80-3 at 10–
     11 (¶¶ 6–9); Saltzman Decl., *id.* – ECF No. 80-4 at 6–7 (¶¶ 21–29); Avakian Decl., *id.* – ECF No. 80-5
28   at 3 (¶¶ 8–9); Haines Decl., *id.*– ECF No. 80-6 at 3–4 (¶¶ 4–10).